```
 1                      UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF FLORIDA
 2
                        CASE NO. 4:13-CR-10034-JEM-1
 3


 4
     UNITED STATES OF AMERICA          Miami, Florida
 5
                                       Monday
 6         vs.                         November 9, 2015

 7

     FRED DAVIS CLARK, JR.
 8                                     Scheduled 9:00 a.m.
                                       10:01 a.m. to 5:08 p.m.
 9   ----------------------------------------------------------

10                           JURY TRIAL
                            (PAGES 1 - 267)
11              PROSPECTIVE JURORS VOIR DIRE

12          BEFORE THE HONORABLE JOSE E. MARTINEZ
                 UNITED STATES DISTRICT JUDGE
13


14
     APPEARANCES:
15


16
     FOR THE GOVERNMENT:      THOMAS AUSTIN WATTS-FITZGERALD, ESQ.
17                            JERROB DUFFY, ESQ.
                              United States Attorney's Office
18                            99 Northeast 4th Street
                              Miami, Florida  33132
19

20                            MICHAEL D. PADULA, ESQ.
                              U.S. Department of Justice
21                            Criminal Division Fraud Section
                              Bond Building
22                            1400 New York Avenue NW
                              Washington, D.C.  20530
23

24

25
```

```
 1   APPEARANCES (continued):

 2

 3   FOR THE DEFENDANT:        VALENTIN RODRIGUEZ, JR., ESQ.
                               Law Offices Valentin Rodriguez, P.A.
 4                             120 S. Dixie Highway, Suite 204
                               West Palm Beach, Florida  33401
 5
                               TODD FOSTER, ESQ.
 6                             ASHLEY NICOLE RECTOR, ESQ.
                               Todd Foster Law Group
 7                             1881 West Kennedy Boulevard
                               Tampa, Florida  33606
 8
 9                             LINDA MORENO, ESQ.
                               Doughty Street Chambers
10                             Post Office Box 10985
                               Tampa, Florida  33679
11

12

13   STENOGRAPHICALLY:        GLENDA M. POWERS, RPR, CRR, FPR
     REPORTED BY:             Official Federal Court Reporter
14                            United States District Court
                              400 North Miami Avenue
15                            Miami, Florida 33128

16

17

18

19

20

21

22

23

24

25
```

```
 1                    I N D E X

 2

 3                                                    PAGE

 4

 5    PROSPECTIVE JUROR INDIVIDUAL VOIR DIRE

 6       By The Court                                   7

 7

 8    JUDGE MARTINEZ INTRODUCTIONS                     127

 9    OATH TO PROSPECTIVE JURORS                       131

10    ATTORNEYS  INTRODUCTIONS                         137

11

12    PROSPECTIVE JURORS VOIR DIRE

13       By The Court                                 139

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Call to order of the Court:)

2          THE COURT:  Be seated, please.

3          COURTROOM DEPUTY:  Case Number 13-10034-CR-Martinez,

4    United States of America versus Fred Davis Clark.

5          Counsel, please state your appearances.

6          MR. DUFFY:  Good morning, Your Honor.  Jerrob Duffy,

7    Thomas Watts-Fitzgerald and Michael Padula for the United

8    States.

9          THE COURT:  Good morning, gentlemen.

10         MR. WATTS-FITZGERALD:  With us at counsel table this

11   morning is Special Agent Joe Perera and Special Agent David

12   Capizola.

13         THE COURT:  Good morning.

14         MR. RODRIGUEZ:  Good morning, Your Honor.  I'm Val

15   Rodriguez, along with Todd Foster over here, if you remember

16   us, Linda Moreno, she's a lawyer handling jury selection, and

17   Ashley Rector.

18         THE COURT:  Good morning.  All right.

19         MR. RODRIGUEZ:  And Mr. Clark.

20         THE COURT:  Okay.  I know him, I recognize him.

21         MR. RODRIGUEZ:  Okay.

22         THE COURT:  Be seated, please.

23         We've distributed that short questionnaire that

24   basically just asks them to tell me which of them doesn't feel

25   like giving up the rest of their natural life to be involved in

1    this case, and we have 80 prospective jurors.

2            Of those, 43 said they can't possibly serve, so I'm

3    going to call them in individually and talk to them about that.

4    I suspect that most of them probably really can't for some

5    reason or other; and in that case, we'll excuse them.

6            After we get those done, then we will bring the people

7    in and just do a pretty much regular jury selection.  I haven't

8    looked through these lists, so I don't know if some of them are

9    ludicrous.  We do have -- this time of year, we have a lot of

10   problems with having a full week.  We're not going to have a

11   full week very often.  This week we're off Wednesday because

12   it's a federal holiday and we're off Friday because I want to

13   be off Friday.

14           And then next week is, I think, pretty much a full

15   week.  I don't think I'll take a day off this early in the

16   trial next week; but the following week is Thanksgiving, which

17   means that my inclination is to go until noon Wednesday.

18           And then break for the rest of the week, and I'll tell

19   them that, and then, following that, December, we'll just take

20   the Friday off of the week after Thanksgiving and then maybe

21   the Friday off the week after that.  Let's see how we're doing,

22   but that's what my inclination is, to try to take a Monday or

23   Friday off each week.

24           All right.  Wanda, are we ready to go?

25           All right.  The first person that says that he can't

1    possibly serve is Sevilla Belen.

2         I have no idea if that's a male or a female, I never

3    heard that first name before.  I want the ones that cannot.  I

4    want to do it one by one.  Oh, we've got to get them.  Okay.

5         I think the lectern because I don't think they'll be

6    here that long.  I just want to inquire.

7         Belen.

8         COURTROOM DEPUTY:  She'll be upstairs, Your Honor.

9         THE COURT:  Bring a bunch of them all up.

10        COURTROOM DEPUTY:  I'm so glad you're doing it one by

11   one.  Where do you want them, here or there?

12        THE COURT:  Lectern.

13        One at a time at the lectern.

14        COURTROOM DEPUTY:  Okay.  Good.

15        Belen.

16        THE COURT:  I've never heard of an aesthetician.

17   Somebody in here is an aesthetician.  I am aesthetically

18   challenged, but I didn't know there were people that were

19   available to fill that gap.

20        Oh, well, you learn something every day.

21        MR. DUFFY:  Cheap Botox shots in a storefront.

22        THE COURT:  I know, I figured that out, but I don't

23   need that kind of aesthetics.

24        MR. DUFFY:  Not from personal experience, Your Honor.

25        THE COURT:  No, I know, I thought -- I wondered why you

1   knew her.  It didn't work.

2          MR. RODRIGUEZ:  We agree.

3          COURT SECURITY OFFICER:  All rise for the juror.

4          (Prospective juror entered courtroom.)

5          THE COURT:  Just need one, okay.  Come forward, please,

6   to the lectern.

7          Yes, ma'am, please raise your right hand.

8          (Prospective juror duly sworn.)

9          PROSPECTIVE JUROR:  Yes, I do.

10         THE COURT:  Please, tell us your name.

11         PROSPECTIVE JUROR:   Belen Sevilla.

12         THE COURT:  Can you pull those microphones over in

13  front of your face?  There's two of them.  That's good.

14         You can get in front of one of them.

15         What is an SAP specialist?

16         PROSPECTIVE JUROR:   Well, it's a system that control

17  the accuracy --

18         THE COURT:  Of what?

19         PROSPECTIVE JUROR:  -- on every component that we use

20  in the factory where I work for.

21         THE COURT:   Of what?

22         PROSPECTIVE JUROR:   And I need to issue every

23  component every time that we complete a batch.

24         THE COURT:  My question is, what's an SAP?

25         What's S-A-P stand for?

1              PROSPECTIVE JUROR:   System Accuracy Procedure.

2              THE COURT:   And who do you work for?

3              PROSPECTIVE JUROR:   Dosal Tobacco Corporation.

4              THE COURT:   In Opa-Locka or did they move?

5              PROSPECTIVE JUROR:  Opa-Locka.

6              THE COURT:   How big is Dosal Tobacco Corporation?

7              PROSPECTIVE JUROR:  Well, there is two shifts, 16

8    operators in each shift.

9              THE COURT:  How big is the company, how many employees

10   does the company have?

11             PROSPECTIVE JUROR:  We are probably, like, 54.

12             THE COURT:  Okay.  And -- see, I think they have to pay

13   you.

14             PROSPECTIVE JUROR:  I hope so.

15             THE COURT:  I'm pretty sure that the law requires them

16   to pay you.  And you say that you're the only person that can

17   do your job in that company; and if you're not there -- what

18   happens if you're sick?

19             PROSPECTIVE JUROR:  Well, I have to continue the next

20   day, but that get us on hold.  The production doesn't -- every

21   time that I hit the transaction is saving the system on the

22   date and the time, there's no way that I can erase that.  If I

23   don't do that, the only thing I can do is a backdate, but the

24   reason why I'm backdating that transaction --

25             THE COURT:  Okay.

1          PROSPECTIVE JUROR:  -- the production continue, but

2     there's nobody else that can do the issue of every component

3     when we finish the batch.

4          THE COURT:  All right.  Well, I mean, I understand that

5     it might be a little bit of a hardship for your company.  I

6     also know they're doing quite well because I represented them

7     in all of the tobacco cases, I was their lawyer when they got

8     sued by everybody in the world, and they're still in business,

9     and they're doing fine; because the handyman that works at my

10    house leaves DTC tobacco or cigarette packs all over my house.

11         PROSPECTIVE JUROR:  As you know as well, they are just

12    starting with this SAP transaction.

13         THE COURT:  No, I don't know that.  I haven't --

14         PROSPECTIVE JUROR:  Because before -- I been with them

15    three years.  Before, SAP wasn't in the system, they were doing

16    manually, and I was doing closing the work order manually,

17    investigating every single product that we were using and

18    following the batch.  Now, we using computer.

19         THE COURT:  Okay.  Does either side have any particular

20    questions of this subject only?

21         MR. DUFFY:  (No verbal response.)

22         THE COURT:  They shook their head no.

23         Does defense have any?

24         MR. RODRIGUEZ:  No.

25         THE COURT:  If you will wait outside.  Wanda, wait and

1    I will tell you who to call next.

2              Thank you, ma'am.

3              PROSPECTIVE JUROR:  Thank you.

4              (Prospective juror exited courtroom.)

5              THE COURT:  Unfortunately, I know more about the

6    tobacco business than anyone should, especially somebody that

7    has never smoked.  But I know what they're doing is they have

8    to keep track of everything that goes into their product or

9    else somebody will decide that they allowed a carcinogen into a

10   product that is apparently inherently carcinogenic.

11             Anyway, I think she probably does need to stay out.  I

12   don't think she can possibly concentrate.  I don't have a

13   problem with letting her go.

14             Does either side have a problem with letting her go?

15             MR. DUFFY:  No objection from the Government,

16   Your Honor.

17             MR. FOSTER:  No, sir.

18             THE COURT:  We will excuse her.

19             Now the next one is a business owner who has an airline

20   ticket on -- he's got airline tickets from November 24th, which

21   is Tuesday, I believe, until the -- throughout the following

22   Monday.  I don't think we need to have him come in.

23             If he does that, I doubt that he would lie to me about

24   that on something that I could check.

25             Does anybody have any problem with just excusing him

1   without talking to him?

2           MR. DUFFY:  Not the Government, Your Honor.

3           MR. FOSTER:  No, sir.

4           COURTROOM DEPUTY:  Judge, the name, please.

5           THE COURT:  Ygor Montes is excused.

6           The next one -- I think we need to find out where this

7   person works.  Dunia Silva.  Please bring in Dunia Silva.

8           COURTROOM DEPUTY:  Okay.

9           (Prospective juror entered courtroom.)

10          THE COURT:  Please come in, Ms. Silva.  Yes, ma'am.

11  Would you swear the witness, please?

12          COURTROOM DEPUTY:  Raise your right hand.

13          (Prospective juror duly sworn.)

14          PROSPECTIVE JUROR:  Yes.

15          THE COURT:  Tell us your name, please.

16          PROSPECTIVE JUROR:  My name is Dunia Silva.

17          THE COURT:  And Ms. Silva, what is your -- where do you

18  work?

19          PROSPECTIVE JUROR:  I work at a school.

20          THE COURT:   What school?

21          PROSPECTIVE JUROR:   La Scuola.  It's a private school.

22          THE COURT:   And where is it located?

23          PROSPECTIVE JUROR:   It's by The Falls.

24          THE COURT:   And you're a receptionist at the school?

25          PROSPECTIVE JUROR:   Yes.

1    THE COURT:   How big a school -- how big is -- how many

2  people work there?

3    PROSPECTIVE JUROR:   About 30 employees.

4    THE COURT:   I think they probably have to pay you.

5  There's a law that says that employers over a certain size, I

6  honestly don't remember what the size is, but I think 30 meets

7  it.   I think it's over six or eight, but I'm sure that my crack

8  clerk staff will be looking it up just as we speak since they

9  can hear me.

10    If you do not get paid at your job, I think that you

11  absolutely do have a hardship; but if you will be paid, I don't

12  see how that's a hardship.   I understand that you have three

13  kids and that you have to help them.   You work anyway.

14    What are your hours at work?

15    PROSPECTIVE JUROR:  I usually work from 7:00 in the

16  morning until 3:30 in the afternoon.

17    THE COURT:  Do your kids go to the school, to the same

18  school?

19    PROSPECTIVE JUROR:  They go to the same school, yes.

20    THE COURT:  Any other questions from the lawyers in the

21  case?  I'm leaning towards excusal, but I'm not committed at

22  this point.

23    Do either of you have any questions?

24    MR. FOSTER:  We don't have any objection to the Court

25  determination.

```
 1            THE COURT:  Thank you, ma'am.

 2            PROSPECTIVE JUROR:  You're welcome.

 3            (Prospective juror exited courtroom.)

 4            THE COURT:  The next one is --

 5            COURTROOM DEPUTY:  Judge, are we excusing Ms. Silva?

 6            THE COURT:  Yes.

 7            Mercedes Hernandez, who's a teacher, says she has two

 8   kids that she takes care of, she's the one that does all for

 9   them, it's difficult to leave her class for so long.  I am not

10   concerned about that aspect; I do not have anyone to assist me

11   at the moment with her children.

12            I mean, we don't often stay until very late.  I guess

13   we should talk to her.  Have her come in, please, Mercedes

14   Hernandez.

15            COURTROOM DEPUTY:  Yes, he's getting her.

16            (Prospective juror entered courtroom.)

17            THE COURT:  Please swear her in.

18            (Prospective juror duly sworn.)

19            PROSPECTIVE JUROR:  I do.

20            THE COURT:   Please tell us your name.

21            PROSPECTIVE JUROR:   Mercedes Hernandez.

22            THE COURT:   Where do you work?

23            PROSPECTIVE JUROR:   Somerset Gables Academy.

24            THE COURT:   And is that a private school?

25            PROSPECTIVE JUROR:   It's a charter.
```

1           THE COURT:   Charter school?

2           PROSPECTIVE JUROR:   Uh-huh.

3           THE COURT:   How long have you worked there?

4           PROSPECTIVE JUROR:   This is my fourth year.

5           THE COURT:   What is their policy, as far as jury duty

6    is concerned, do you know?

7           PROSPECTIVE JUROR:   Not completely, no.

8           THE COURT:  How old are your kids?

9           PROSPECTIVE JUROR:  I have an 11-year=old and a

10   10-year-old.

11          THE COURT:  And they go to school, obviously, also;

12   correct?

13          PROSPECTIVE JUROR:  Yes.

14          THE COURT:  Do they go to school at the same school?

15          PROSPECTIVE JUROR:  No, they do not.

16          THE COURT:   Where do they go to school?

17          PROSPECTIVE JUROR:  They go to Florida Christian.

18          THE COURT:  How do they get to and from school?

19          PROSPECTIVE JUROR:  My husband takes them in the

20   morning and I pick them up.

21          THE COURT:  What time do they get out of school?

22          PROSPECTIVE JUROR:  They get out of school at 3:00.

23          THE COURT:  What time do you get out of school?

24          PROSPECTIVE JUROR:  I get out at 3:00, so I am 15

25   minutes, I'm not far from picking them up.

1          THE COURT:  Any questions from either side, Government?

2     Go ahead.

3          MR. FOSTER:  Do I address the Court or do I address the

4     witness?

5          THE COURT:  Ask the witness.

6          Yes.  Ms. Hernandez, good morning.

7          PROSPECTIVE JUROR:   Good morning.

8          THE COURT:   Would your husband or possibly another

9     family member be available to pick up your children if you were

10    here serving on the jury until 4:30 or 5:00?

11         PROSPECTIVE JUROR:   My husband works downtown, he gets

12    out at 6:00, and then my parents are leaving on a trip to

13    New York so I don't have anyone to pick them up.

14         THE COURT:  They're not going to be in New York

15    forever.  Nobody can be in New York forever.

16         PROSPECTIVE JUROR:   They're there for a week.

17    Unfortunately, it's the timing.

18         THE COURT:  When is that?  When is that?

19         PROSPECTIVE JUROR:   They're leaving tomorrow and they

20    come back next Wednesday or Thursday, I believe is what she

21    said.

22         THE COURT:  Government, nothing.  Thank you.  Thank

23    you, ma'am.

24         (Prospective juror exited courtroom.)

25         THE COURT:  I propose to excuse her.  Any objection?

1          MR. FOSTER:  No, sir.

2          THE COURT:  Okay.  She's excused, Wanda.

3          Next one is -- I can't read this writing, I'm sorry.  I

4    work with mentally ill -- maybe veterans?  Maybe.  -- who

5    depend on me for transportation to appointments.  If I am to

6    serve -- I think we have to see who she works for, because it

7    doesn't seem like -- bring Megan -- I can't even read her

8    name -- Noicely-Moulton in.

9          Good thing she doesn't write their papers for them.

10         "Willing to serve on weekends."  I don't know who's

11   going to be presiding.  I know who's not, at least until after

12   football season.

13         (Prospective juror entered courtroom.)

14         (Prospective juror duly sworn.)

15         PROSPECTIVE JUROR:   Yes, I do.

16         THE COURT:  Please tell us your name.

17         PROSPECTIVE JUROR:   My name is Megan Noicely-Moulton.

18         THE COURT:  And Ms. Moulton, where do you work?

19         PROSPECTIVE JUROR:   I work for VA.

20         THE COURT:  And the Veteran's Administration is a

21   federal agency; correct?

22         PROSPECTIVE JUROR:   It is, yes.

23         THE COURT:   They have to pay you.  I understand that

24   you have -- that you have a very important job there, and I

25   understand that it's got to be done, but -- when you're not

1    there, who does it?

2         PROSPECTIVE JUROR:  I try -- I've been here for four

3    years, and I try to coordinate my schedule with my time off.

4    We each have caseloads.  Nobody's going to manage my caseload

5    when I'm not there.  I try to coordinate my time where I get

6    everything done with my beds and their equipments and

7    scheduling and everything.

8         THE COURT:   All right.  Well, I think that while this

9    might cause a problem for your employer, I don't think it's

10   going to cause a problem for you.  I think that you have --

11   you're pretty well protected as a federal employee during

12   federal jury duty.

13        I understand that your employer's going to have to make

14   some adjustments, and that goes with the territory.  I know

15   that they're not real famous for making adjustments, but I

16   think they might have to suck it up and do something about it.

17   It will not -- they're not allowed to fire you, they're not

18   allowed to discipline you for jury duty.  It's a responsibility

19   that's probably as important as any other citizen's

20   responsibility, so --

21        PROSPECTIVE JUROR:   Yes, Your Honor, I'm not really

22   concerned about that.  I'm just not really concerned.  I work

23   with vets, as you see, with severe mental illness,

24   schizophrenia and stuff like that, and Wednesday is Veteran's

25   Day and, you know --

```
 1              THE COURT:  We're not meeting Wednesday, I can assure

 2   you of that.

 3              MR. DUFFY:  Oh, okay.

 4              THE COURT:  I'm probably the only veteran in the

 5   building, I'm more than happy to take the day off and work

 6   around the house.  I appreciate that.  Thank you, ma'am.

 7              (Prospective juror exited courtroom.)

 8              THE COURT:  The next person -- not excused.

 9              The next person is Casandra Pastrana, 23-year-old

10   receptionist, who drops off and picks up her middle sister at

11   school.  I don't know where she works.  She's missing a quiz if

12   she goes to school.  I'm not really sure I understand her

13   working process, so...

14              (Prospective juror entered courtroom.)

15              COURTROOM DEPUTY:  Please raise your right hand.

16              (Prospective juror duly sworn.)

17              PROSPECTIVE JUROR:  Yes.

18              THE COURT:  Please tell us your name.

19              PROSPECTIVE JUROR:  Casandra Pastrana.

20              THE COURT:  And Ms. Pastrana, where do you work?

21              PROSPECTIVE JUROR:  I work at Sugarman & Susskind.

22   It's a law firm in Coral Gables.

23              THE COURT:   And how long have you been working there?

24              PROSPECTIVE JUROR:   It's going to be three years in

25   January.
```

1          THE COURT:   And what are your hours?

2          PROSPECTIVE JUROR:   I work from eight to five, and I

3     go to class from seven to ten.

4          THE COURT:   I can promise you that we're not meeting

5     from seven to ten.  If you are, it will be with a totally

6     different judge because I will have jumped out the window.

7          Well, you actually would be working here less hours

8     than that, and I really can't believe that a law firm

9     would even try to take advantage of you for sitting on jury

10    duty, which is one of our most important duties.

11         I've reviewed your request and your hardship and at

12    this point, my answer is we'll try to work around it and do the

13    best we can to keep you from being inconvenienced or not being

14    able to do your other duties, but I am confident you will be

15    able to do your exams and everything else, okay.

16         Thank you.

17         PROSPECTIVE JUROR:   Thank you.

18         (Prospective juror exited courtroom.)

19         THE COURT:  Wanda, don't bring the next one in until we

20    finish talking, okay?

21         The next one is Alexi Richards, project manager, 27,

22    month of November is the busiest month on his or her job, the

23    end of the fiscal year, work longer hours and extra days as

24    expected.  Kind of has the ring of truth to it.

25         Any comments from either side before -- my inclination

1    is that that's probably true, as much as I think that a person

2    like this would be very helpful in sitting and reviewing the

3    facts of this case, it sounds like it would be a problem.

4              Government, any comments?

5         MR. DUFFY:  I think we want to just hear the juror's

6    responses to your questions, if that's okay.

7         THE COURT:  Defense?

8         MR. FOSTER:  Judge, I personally am inclined to agree

9    with you, but I don't know -- for example, does the gentleman

10   work for the Government, and if he works for the Government or

11   the city, it may be a different story than if he's in the

12   private sector.

13        THE COURT:  If he works for the city, we're all in

14   trouble, I think, because that's a different problem.

15             Bring in Mr. Alexi Richards.

16             (Prospective juror entered courtroom.)

17        COURTROOM DEPUTY:  Please raise your right hand.

18             (Prospective juror duly sworn.)

19        PROSPECTIVE JUROR:  Yes.

20        THE COURT:  Please tell us your name.

21        PROSPECTIVE JUROR:  Alexi Richards.

22        THE COURT:  See, I told you guys that I wasn't sure if

23   it was a guy or a girl.  Now I'm pretty sure.

24        PROSPECTIVE JUROR:  I hope so.

25        THE COURT:  Where do you work?

1        PROSPECTIVE JUROR:  Where?  I work for a national

2   homebuilder and I'm in West Kendall.

3        THE COURT:   What is the name of the national home

4   builder?

5        PROSPECTIVE JUROR:   Lennar, Lennar Homes, Lennar

6   Corporation.

7        THE COURT:   And Lennar, obviously, is huge, large,

8   very.  Tell me about why November is a bad month.

9        PROSPECTIVE JUROR:   It's the last year -- it's the

10  last month of our fiscal year, and I'm a project manager out in

11  a community.

12        THE COURT:  What does that do?  What does that mean,

13  project manager, tell me.

14        PROSPECTIVE JUROR:  I'm a construction manager, so

15  basically I'm on site every day managing the actual

16  construction of our homes to make sure that they get completed

17  timely and delivered to the customers, to homeowners.

18        I'm managing subcontractors.

19        THE COURT:  This is going to be a hardship on your

20  employer, but how is it going to be a hardship on you?

21        PROSPECTIVE JUROR:  You're right, it's a hardship on my

22  employer that I wouldn't be there.

23        THE COURT:  I have a lot less sympathy for Stewart than

24  I do for you.  If I were to call Stewart and tell him that I

25  need you, would that do it?

1          PROSPECTIVE JUROR:  You can go right ahead, give it a

2     whirl, why not?

3          THE COURT:  He usually answers my phone calls.

4          PROSPECTIVE JUROR:  He'll huff and puff, but I don't

5     know what would happen.

6          THE COURT:  No, he wouldn't do that.  Questions by the

7     lawyers, either side?

8          MR. FOSTER:  No, thank you.

9          MR. DUFFY:  Not from the Government, Your Honor.

10          THE COURT:  Ms. Richards, I'm not going to excuse you

11     at this time, but if -- I know your employer can be difficult,

12     and if they are, I need to know about it right away, okay, so

13     then I will deal with it.

14          PROSPECTIVE JUROR:  Okay.  Thank you.

15          THE COURT:  Thank you, ma'am.

16          (Prospective juror exited courtroom.)

17          THE COURT:  Okay.  Next one, I can't read this one

18     either.  Michelle Avalos, media industry professional, one of

19     two employees at a small company.  Presence is absolutely

20     necessary to keep the company afloat.  Extended -- may lose her

21     job.  Also attending graduate school.

22          These people I'm excusing, I'm not excusing from the

23     entire jury pool.  I'm excusing them from this case.  They need

24     to go and be dealt with on an individual basis.

25          I don't have a problem with talking to this person but

1   my inclination is that it probably is an excuse that we can't

2   get around.

3           Bring him or her in, but I think it's a Michelle; not

4   that there's anything wrong with that, but it could be

5   whatever.

6           (Prospective juror entered courtroom.)

7           COURTROOM DEPUTY:  Please raise your right hand.

8           (Prospective juror duly sworn.)

9           THE COURT:  Please tell us your name.

10          PROSPECTIVE JUROR:  Michelle Avalos.

11          THE COURT:   And Ms. Avalos, where do you work?

12          PROSPECTIVE JUROR:  I work at a small company called

13   "Pomodoro Stories."  "Tomato" in Italian.

14          THE COURT:   The second word is what, Stories?

15          PROSPECTIVE JUROR:   Stories.

16          THE COURT:  What do they do?

17          PROSPECTIVE JUROR:  We buy and sell --

18          THE COURT:   Tell stories about tomatoes?

19          PROSPECTIVE JUROR:   No.  We buy and sell television

20   re-makes, we deal with television rights and licensing.

21          THE COURT:   How many people work there?

22          PROSPECTIVE JUROR:   Two people, the managing director

23   and myself.

24          THE COURT:   And how long have you been working there?

25          PROSPECTIVE JUROR:   Full-time, since June 2014, but I

1    was an intern for a year-and-a-half before that.

2              THE COURT:   Who worked there before you?

3              PROSPECTIVE JUROR:   I was the first intern hired and

4    there were student interns throughout, and I was the first

5    full-time hire when I graduated.

6              THE COURT:   You were the first full-time employee?

7              PROSPECTIVE JUROR:   Yes.

8              THE COURT:   What's your graduate degree going to be

9    in?

10             PROSPECTIVE JUROR:   Master of Arts in Liberal Studies.

11             THE COURT:   What can you do with that?

12             PROSPECTIVE JUROR:   I don't know yet.

13             THE COURT:   I think it would be very interesting.

14             Government, questions?

15             MR. DUFFY:  No questions, Your Honor.

16             THE COURT:  Defense, questions?

17             MR. FOSTER:  No, sir.

18             THE COURT:  Thank you, Ms. Avalos.  Thank you.  I will

19   let you know in just a second.

20             (Prospective juror exited courtroom.)

21             THE COURT:  Any objection to excusing her?

22             MR. DUFFY:  No objection.

23             MR. FOSTER:  No objection.

24             THE COURT:  She is excused, Wanda.

25             Rojas, very limited, plumber's helper, 47.  No one's

1   going to pay him.  A plumber is never going to pay a helper for

2   this, but I will bring him in to see if he really does speak --

3   when I excuse him, in English, if he leaves, we will know that

4   he really does, in fact, speak enough.

5           Bring Mr. Manuel Rojas in.

6           If he doesn't answer to hello, we'll know he's faking.

7   But he still might not be able to speak English.

8           (Prospective juror entered courtroom.)

9           COURTROOM DEPUTY:  Please raise your right hand.

10          (Prospective juror duly sworn.)

11          PROSPECTIVE JUROR:  Yes.

12          COURTROOM DEPUTY:  Say it louder.

13          THE COURT:  Please tell us your name.

14          PROSPECTIVE JUROR:  Manual Rojas.

15          THE COURT:  And Mr. Rojas, where do you work?

16          PROSPECTIVE JUROR:  I work in Coral Gables Plumbing.

17          THE COURT:  That's a good size company.  That's the one

18  on Coral Way; isn't it?

19          PROSPECTIVE JUROR:  Yes.

20          THE COURT:  Pink building, they still have a little

21  pink building?

22          PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Okay.  How long have you been in the United

24  States?

25          PROSPECTIVE JUROR:  I been 21 years.

1           THE COURT:  And you don't think you speak English well

2     enough to be a juror?

3           PROSPECTIVE JUROR:  No.

4           THE COURT:  All right, sir.  You're excused.  Thank

5     you.

6           PROSPECTIVE JUROR:  You're welcome.

7           (Prospective juror entered courtroom.)

8           THE COURT:  I don't think he really was faking because

9     he didn't even move when I said you're excused.  He didn't go

10    until I said "thank you," and then he said "you're welcome" and

11    left.  Any objection to my having excused him?

12          MR. DUFFY:  Not from the Government, Your Honor.

13          MR. RODRIGUEZ:  No, Your Honor.

14          THE COURT:  Okay.  Joshua Cardona.  He's a sales rep.

15    Half of his income is commission-based.  I can bring him in and

16    have him agree to that; but if he does tell us under oath that

17    that's true, I do not see any alternative but to excuse him.  I

18    can't make income up, and I suspect that half his income is

19    more than $40.

20          Bring him in, please, Joshua Cardona.

21          (Prospective juror entered courtroom.)

22          COURTROOM DEPUTY:  Please raise your right hand.

23          (Prospective juror duly sworn.)

24          PROSPECTIVE JUROR:  Yes.

25          THE COURT:  All right, sir.  Please tell us your name.

1          PROSPECTIVE JUROR:  Joseph Kenneth Cardona.

2          THE COURT:  And Mr. Cardona, where do you work?

3          PROSPECTIVE JUROR:  AT&T.

4          THE COURT:  What do you do at AT&T?

5          PROSPECTIVE JUROR:  I'm a retail sales consultant.

6          THE COURT:  Is that the guys at the stores that you go

7   in and you buy your phones from?

8          PROSPECTIVE JUROR:  Yes.

9          THE COURT:  And you said that -- tell us about the

10  source of your income there.  What do they pay?  I mean, I

11  don't know how much they pay, but how do they pay you?

12         PROSPECTIVE JUROR:  They pay a flat hourly, which is,

13  for me, personally, $16 an hour, and then commission sales.

14         THE COURT:  And what percentage of your commission --

15  of your salary is commission sales?

16         PROSPECTIVE JUROR:  Approximately, 40 percent, maybe 35

17  to 40 percent.

18         THE COURT:  All right.  What are your hours at the AT&T

19  store?

20         PROSPECTIVE JUROR:  Since it's retail, it fluctuates

21  week to week.  I'm full-time employee, so 40 hours a week, but

22  my hours during the day fluctuate.

23         THE COURT:  What are the hours of the store?

24         PROSPECTIVE JUROR:  Anywhere from nine in the morning

25  until nine at night.

1          THE COURT:  All right.  And is there a time when there

2    are more than -- when you sell better than other times?  I

3    mean, are there dead times, are there light?

4          PROSPECTIVE JUROR:  Yeah.  It fluctuates during the

5    time of year, but typically, in the afternoon, anywhere from

6    two or three in the afternoon until closing; during the

7    morning, it tends to be slower with the exception of the

8    weekends.

9          THE COURT:  Have you discussed jury service with your

10   supervisor?

11         PROSPECTIVE JUROR:  I asked him some general questions

12   and when I got the summons in terms of how it would affect me,

13   like if they would pay me and whatnot.

14         THE COURT:  And what did they say?

15         PROSPECTIVE JUROR:  They would pay me my hourly but,

16   from my understanding, I wouldn't get commission sales.

17         THE COURT:  What are your commission sales on a daily

18   basis?

19         PROSPECTIVE JUROR:  I can tell you on a grander scale

20   because some days are slower than others, but the commission

21   daily would probably be, on average, if I divided it, probably

22   between 60 and $70.

23         THE COURT:  It's going to be a little bit of a hardship

24   on you, but the days that you will be sitting on the jury, you

25   will be getting $40; and then, I think, after the first week, I

1    think you get more than that.  I think it goes to $50 a day

2    after you served ten days; and not only that, but we're not

3    going to be sitting everyday.

4         First of all, you can go work in the afternoons and

5    evenings, if they permit you, and we're not going to sit every

6    day.  We're not going to sit on weekends, which I'm sure you

7    work periodically and we are probably going to take at least

8    one day off a week.

9         For example, this week, we're going to take Wednesday

10   and Friday off, and so I'm not sure that you're -- I'm not sure

11   it's going to be that much of a hardship.

12        I'm not saying it's going to be fun because the whole

13   thing necessarily isn't going to be fun, but I don't think

14   that -- I don't think I'm going to excuse you at this time,

15   sir, all right?

16        PROSPECTIVE JUROR:  Well, no.  I wasn't aware that the

17   pay that you gave me overlaps with work.  I thought it was

18   either/or, depending on the situation.

19        THE COURT:  Well, it can be.  It can be.  But,

20   generally, when you've lost something like your income, they

21   don't chinch you that way; and if you want, I'll write them a

22   strong, nasty letter, for all the good that will do.  It will

23   as much good as me complaining to my wife; it makes me feel

24   better.  But most employers do not subtract the $40 you get

25   from the federal jury duty from your salary.

1        PROSPECTIVE JUROR:  Like I said, if I'm not sure.  If

2    that's the case, then yes, it's not going to be a considerable

3    difference.

4        THE COURT:  All right.  Well, why don't you check with

5    your employer and let us know as the process goes on, call them

6    and tell them that I told you most employers don't take that

7    off and that way you could probably afford to do it and

8    continue to work, in other words, in the afternoons or

9    evenings.

10        Wanda, are you trying to tell me something?

11        COURTROOM DEPUTY:  No.  Sorry.

12        THE COURT:  Oh, you're just moving your hands around?

13    Okay.

14        Why don't you check with them and tell them that, you

15    know, you're still going to be able to work, it might not be a

16    full shift, but you might be able to -- you can be there no

17    later than 5:30.  Which store do you work at?

18        PROSPECTIVE JUROR:  On Kendall and 122nd.

19        THE COURT:  It takes forever to get there.  I don't

20    think that -- I think you can be there by 6 o'clock any day,

21    because I try to let people out before rush hour starts --

22    that's not true -- rush hour starts before noon, but you know,

23    before 5 o'clock, let's put it that way; and, as I say, we're

24    going to take one or two days off a week because this is not

25    for a short haul, and you will have the weekends.

1        So talk to your employer during the break here and see

2    what you can find out before we call you back in to ask you

3    more questions, okay?

4        PROSPECTIVE JUROR:  All right.

5        THE COURT:  Thank you very much.

6        (Prospective juror exited courtroom.)

7        THE COURT:  So I will say "no" at this time, but

8    prepared to revisit.

9        This is a registered nurse, Maricel Converti, short and

10   sweet.  Can't afford to do it, too many bills to pay.  I think

11   we have to look into this.  Bring her in, please.

12       I'm guessing Maricel is a woman.

13       (Prospective juror entered courtroom.)

14       THE COURT:  Hello.

15       PROSPECTIVE JUROR:  Good morning.

16       COURTROOM DEPUTY:  Please raise your right hand.

17       (Prospective juror duly sworn.)

18       PROSPECTIVE JUROR:  I swear.

19       THE COURT:  All right.  Please tell us your name.

20       PROSPECTIVE JUROR:  Maricel Converti.

21       THE COURT:  And Ms. Converti, where do you work?

22       PROSPECTIVE JUROR:  I work at Skin Associates of South

23   Florida.

24       THE COURT:  And where is that located?

25       PROSPECTIVE JUROR:  Merrick Park in Coral Gables.

 1          THE COURT:  And how long have you been employed there?

 2          PROSPECTIVE JUROR:  Seventeen years.

 3          THE COURT:  How many employees do they have, total?

 4          PROSPECTIVE JUROR:  About 32.

 5          THE COURT:  Okay.  And you say you can't afford to be

 6     in a trial that lasts this long that -- what makes you think

 7     they're not going to pay you?

 8          PROSPECTIVE JUROR:  They're not going to pay me, I'm

 9     not a salary.

10          THE COURT:  You're not a salaried employee?

11          PROSPECTIVE JUROR:  No.

12          THE COURT:  How are you paid?

13          PROSPECTIVE JUROR:  I'm paid on hour.

14          THE COURT:  You're an hourly employee?

15          PROSPECTIVE JUROR:  Yes, sir.

16          THE COURT:  How do they get away with that?  That's a

17     different problem; isn't it?  That's a wage-and-hour problem,

18     but that's not my problem.

19          So they're not going to pay you, and you are saying

20     that you are only paid on the basis of every hour you work?

21          PROSPECTIVE JUROR:  Yes, I work 40 hours a week.

22     Today -- I'm not going to get paid for today; I don't have any

23     sick hours left or vacation hours.

24          THE COURT:  But you're basically a full-time employee;

25     aren't you?

1           PROSPECTIVE JUROR:  Yes.

2           THE COURT:  Although we've had this fight before with

3     employers -- and we usually win, as a matter of fact, we always

4     do -- there is a Dade County ordinance that says no employer

5     shall withhold wages or salary from a full-time employee.  I

6     think if you work there 40 hours a week, you're a full-time

7     employee, whether they want to admit it or not, or whether they

8     want to claim some part-time, full-time status, I don't know,

9     but they can't do it if they have more than ten employees, or

10    it's a crime.

11          Huh.  They shall not withhold pages or salary.  I

12    suspect that hourly wages are wages.  That's interesting.  I

13    would ask you to call your employer and ask them if they're

14    aware of this Dade County ordinance that says that you will not

15    withhold a -- I guess they could be claiming that you're an

16    independent contractor, that would be tough.  It's possible; it

17    would be tough.

18          PROSPECTIVE JUROR:  I'll ask.

19          THE COURT:  Government, do you have any questions?

20          MR. DUFFY:  No, Your Honor.

21          THE COURT:  Defense?

22          MR. FOSTER:  No, sir.  The lady said she'd call over

23    lunch and then provide it.

24          THE COURT:  Call and we will talk about it, I'm not

25    excusing you at this time.

1          PROSPECTIVE JUROR:  Thank you.

2          (Prospective juror exited courtroom.)

3          THE COURT:  Next one is our aesthetician.

4          MR. WATTS-FITZGERALD:  Full disclosure, Skin Associates

5     of Merrick --

6          THE COURT:  Worked on you, too.

7          MR. WATTS-FITZGERALD:  Yes, Your Honor.  Actually, when

8     she turned to go, I recognized her, I don't know if she

9     recognizes me or not, but my dermatologist is in that group.

10         THE COURT:  Okay.  Do you think they're trying to write

11    her off as independent contractor for some reason that involves

12    wages and withholding?

13         MR. WATTS-FITZGERALD:  The dermatologist is good.  How

14    they run their practice, I have no idea, but I would suspect

15    it's an independent contractor.

16         THE COURT:  I would think they would try to do that for

17    liability purposes, but I don't know that that affects their

18    ability to have to pay her but --

19         Well, if you've had personal contact with this lady,

20    then maybe we should excuse her.

21         Does the defense want her excused?

22         MR. FOSTER:  Yes, sir.

23         THE COURT:  I think it's more trouble than it's worth,

24    let's just excuse her.  Wanda, you can tell her she's excused,

25    she's off the hook.  But I don't think she's an independent

1    contractor, I think she's an hourly employee that they have to

2    pay, but that's a different problem.

3          The next one is the aesthetician, and so this is

4    another one that you go to, Mr. Watts-Fitzgerald.

5          MR. WATTS-FITZGERALD:  Apparently, they have nothing

6    good to say about me.

7          THE COURT:  Apparently, they should not use you in

8    their ads.

9          Bring in Carmen Veras or Veras.

10         COURTROOM DEPUTY:  That's Carmen Ucros?

11         THE COURT:  Beg your pardon?

12         COURTROOM DEPUTY:  Number 22?

13         THE COURT:  Yes.

14         COURTROOM DEPUTY:  It looks like "Veras" to me.  It

15    could be "U."  Whatever it is, he'll tell us.  This is so much

16    fun.  That is why I wanted to become a Judge.

17         COURT SECURITY OFFICER:  She went to the restroom.

18         THE COURT:  Stand out there and when she comes out

19    snatch her and bring her in, and let's look at the next ones

20    just in case.

21         The next one is -- I don't know what Valley Crest is.

22    What's Valley Crest, does anybody know?

23         Sir, does anybody know what Valley Crest is?  It's not

24    another dermatologist you go to; is it?

25         MR. WATTS-FITZGERALD:  There is a stationery "Valley

1   Crest," but I have no idea if it's the same company.

2          THE COURT:  That's true.  I have no idea.

3          (Prospective juror entered courtroom.)

4          COURTROOM DEPUTY:  Raise your right hand.

5          (Prospective juror duly sworn.)

6          PROSPECTIVE JUROR:   I do.

7          THE COURT:  Tell us your name.

8          PROSPECTIVE JUROR:  Carmen Ucros.

9          THE COURT:  Ms. Ucros, what is your occupation?

10         PROSPECTIVE JUROR:   I'm an aesthetician.

11         THE COURT:   What does that mean?

12         PROSPECTIVE JUROR:   I do with dermatology, I did skin

13  cancer treatments for patients.

14         THE COURT:   Who do you work for?

15         PROSPECTIVE JUROR:   Dr. Juana Julien.

16         THE COURT:   Where is Dr. -- what is it, Ajulien?

17         PROSPECTIVE JUROR:   Kendall, Kendall Drive.

18         THE COURT:   What is his last name?

19         PROSPECTIVE JUROR:  Julien.

20         THE COURT:  Dr. Julien?

21         PROSPECTIVE JUROR:   Uh-huh.

22         THE COURT:  Where on Kendall Drive?

23         PROSPECTIVE JUROR:  8950 Southwest --

24         THE COURT:  Is that the Baptist Hospital area?

25         PROSPECTIVE JUROR:   Close to Baptist, uh-huh.

1          THE COURT:   And how big an office is it?

2          PROSPECTIVE JUROR:   Excuse me?

3          THE COURT:   How many people work there?

4          PROSPECTIVE JUROR:   Twelve.

5          THE COURT:   And have you discussed with your

6     supervisor the fact that you've got a jury duty summons?

7          PROSPECTIVE JUROR:   Yes.

8          THE COURT:   And what were you told, to try to get out

9     of it; but other than that?

10         PROSPECTIVE JUROR:   It's hard for me and for her

11    because there's patients with skin cancer and I need to

12    reschedule the appointments.

13         THE COURT:   Are you the only aesthetician there?

14         PROSPECTIVE JUROR:   No.

15         THE COURT:   How many are there?

16         PROSPECTIVE JUROR:   One more.

17         THE COURT:   Okay.   What are the hours of the office?

18         PROSPECTIVE JUROR:   Nine to five, six.

19         THE COURT:   And it's five days a week, Monday through

20    Friday?

21         PROSPECTIVE JUROR:   Uh-huh.

22         THE COURT:   You've got to say yes or no, because

23    uh-huh is spelled very similarly to uh-huh.

24         PROSPECTIVE JUROR:   Yes.

25         THE COURT:   What -- questions?   Any further questions

 1   by the -- yes, sir?

 2            MR. FOSTER:  Just if she's a full-time employee.

 3            THE COURT:  Yeah, how many hours a week do you work?

 4            PROSPECTIVE JUROR:  I am full-time, 40.

 5            THE COURT:  You're full-time, 40 hours?

 6            PROSPECTIVE JUROR:  Uh-huh.  But they pay me by

 7   commission, not by salary.

 8            THE COURT:  I don't understand how that works.

 9            How do they pay you, by commission and not by salary?

10            PROSPECTIVE JUROR:  They don't pay salary.  They pay by

11   patients.

12            THE COURT:  Okay.  And does that mean if you don't see

13   any patients, they don't pay you?

14            PROSPECTIVE JUROR:  No.

15            THE COURT:  How do they get away with the minimum wage?

16   If you don't happen to see any patients and you're there for 40

17   hours, how do they get away without committing a crime?

18            PROSPECTIVE JUROR:  Usually, she has a lot of patients.

19            THE COURT:  Yeah.  I don't understand how people do

20   this.  I don't understand how they do it over and over again

21   publicly and openly and think it's fine.  I'm not an employment

22   lawyer, I'm not giving you legal advice, I will just thank you

23   very much.

24            PROSPECTIVE JUROR:  Thank you.

25            (Prospective juror exited courtroom.)

1          MR. FOSTER:  Is she excused, sir?

2          THE COURT:  I think so.  I don't really feel like

3    picking a fight for her with her employer.  I don't think that

4    would be productive.

5          Gerardo Pesina, Valley Crest manager, account manager.

6    Let's find out what he does.  Bring him in.

7          We are more than halfway through.  So we're making

8    progress.

9          (Prospective juror entered courtroom.)

10         THE COURT:  Tell them the next one is Steve Williams,

11    to have him ready so we don't waste all this time.

12         (Prospective juror entered courtroom.)

13         COURTROOM DEPUTY:  Please raise your right hand.

14         (Prospective juror duly sworn.)

15         PROSPECTIVE JUROR:  Yes.

16         THE COURT:  Please tell us your name.

17         PROSPECTIVE JUROR:  Gerardo Pesina.

18         THE COURT:  And Mr. Pesina, what is your occupation?

19         PROSPECTIVE JUROR:  Landscape supervisor for Valley

20    Crest Landscape Company.

21         THE COURT:  And what is Valley Crest Landscape Company,

22    how big is it?  How many employees total?

23         PROSPECTIVE JUROR:  Pretty big, it's about 20,000

24    employees.  They have people in 42 states in the United States.

25         THE COURT:  Okay.  And what do you do for them?

1            PROSPECTIVE JUROR:  I'm the account manager for

2    Ocean Reef Club in The Keys.

3            THE COURT:  What does the account manager do?

4            PROSPECTIVE JUROR:  Supervise about 30 people, like

5    four different crews, you know, deal with all the property

6    managers, different areas.

7            THE COURT:  What do they do when you're not there --

8    I'm sure you don't work 52 weeks a year.

9            PROSPECTIVE JUROR:  I have, like, a crew leader.  I

10   have a couple assistant account managers as well.

11           THE COURT:  And have you discussed this with your

12   supervisor at all?

13           PROSPECTIVE JUROR:  Yes, I did, with the branch

14   manager.

15           THE COURT:  And what did he have to say about it?

16           PROSPECTIVE JUROR:  He said if you have to go, you

17   have --

18           THE COURT:  Other than try to get out of it, what did

19   you have to say?

20           PROSPECTIVE JUROR:  No, he said if you have to go, he

21   says, not a problem, it's like --

22           THE COURT:  Well, I'm not going to excuse you.  I will

23   tell you that we are probably going to not sit five days a

24   week.  We will try to be done well before five so that people

25   can leave, and just make sure if that's going to cause a

1    problem to you, you will be available at least one or two days

2    a week in the afternoons late to talk to your crew chief or

3    whatever it is, and then -- but if that's going to cause a

4    problem, you will get your 40 or $50 a day from here and -- on

5    the days that we sit, and then you'll be able to go and kind of

6    take care of things on the other days.

7            All right?

8            PROSPECTIVE JUROR:  No problem, sir.  Thank you, sir.

9    I appreciate it.

10           THE COURT:  They're a big enough company that they

11   probably should be able to do this.

12           PROSPECTIVE JUROR:  They do.  Thank you.

13           THE COURT:  Thank you, sir.

14           (Prospective juror exited courtroom.)

15           THE COURT:  Have them bring in Steve Williams.

16           (Prospective juror entered courtroom.)

17           (Prospective juror duly sworn.)

18           THE COURT:  Please tell us your name.

19           PROSPECTIVE JUROR:  Steve Williams.

20           THE COURT:  And Mr. Williams, where do you work?

21           PROSPECTIVE JUROR:  I work for an insurance company.

22   It's called Responsive Auto Insurance.

23           THE COURT:  And how long have you been working for

24   them?

25           PROSPECTIVE JUROR:  Five years.

1             THE COURT:  How big is the insurance company?

2             Where are they headquartered?

3             PROSPECTIVE JUROR:  In Plantation.  It's a small one.

4             THE COURT:  How big, how many employees do they have,

5    total?

6             PROSPECTIVE JUROR:  35.

7             THE COURT:  And what -- what -- how are you paid?

8             PROSPECTIVE JUROR:  How am I paid?  Salary.

9             THE COURT:  Are you on a salary?

10            PROSPECTIVE JUROR:  Yes, sir.

11            THE COURT:  Okay.  And you say you pick up your son

12   from school.  When do you do that, what time?

13            PROSPECTIVE JUROR:  2:45.

14            THE COURT:  What are your hours at work?

15            PROSPECTIVE JUROR:  My hours, I'm in the field and I

16   pick up my son, and then I actually finish work at home.

17            THE COURT:  Okay.  You're not a single parent; are you?

18            PROSPECTIVE JUROR:  No.

19            THE COURT:  What does your wife do?

20            PROSPECTIVE JUROR:  My wife actually -- she's a

21   computer programer, but she works very far.

22            THE COURT:  Where does she work?

23            PROSPECTIVE JUROR:  She works like in North Doral.

24            THE COURT:  Okay.  Where does your son go to school?

25            PROSPECTIVE JUROR:  He goes to school in Coconut Grove,

1    close to where we live.

2           THE COURT:  Where do you live, in Coconut Grove, also?

3           PROSPECTIVE JUROR:  Yeah, North Grove.

4           THE COURT:   We're not going to be sitting everyday --

5    where does he go to school in the Grove?

6           PROSPECTIVE JUROR:  At St. Hugh.

7           THE COURT:  St. Hugh on Main Highway?

8           PROSPECTIVE JUROR:  Yeah.

9           THE COURT:  Do they have any after-hour care there?

10          I thought they did in that other building over there.

11          PROSPECTIVE JUROR:  They do, but, I mean, it's like --

12   I think it's a little bit after five, if you're not on time,

13   too, they charge you by the minute.

14          THE COURT:  They get hostile?

15          PROSPECTIVE JUROR:  Yeah.

16          THE COURT:  Questions?

17          MR. FOSTER:  Just briefly.  May I address?

18          THE COURT:  You may.

19          MR. RODRIGUEZ:  Mr. Williams, good morning.  You state

20   on your form that there may be an option for picking your child

21   up.  Is that realistic, is it not realistic?

22          PROSPECTIVE JUROR:  It's a little bit tough because,

23   like, today, I had another mom I know, I asked her to pick him

24   up and -- I mean, it's not --

25          THE COURT:  Speak into the microphone because it's hard

1    to hear.

2         PROSPECTIVE JUROR:  Today I asked her, like, you know,

3    texted her if she can pick him up, but, I mean, I don't know

4    usually what the duration is, how long the case.

5         THE COURT:  You are a parent of another child, I

6    thought you were talking about the other parent of your child.

7         PROSPECTIVE JUROR:  No, it's my son.  Another parent to

8    pick up my son.

9         THE COURT:  I didn't understand your note.  Thank you

10   for clearing that up.  All right.  Thank you, sir.

11        PROSPECTIVE JUROR:  All right.  Thank you.

12        (Prospective juror exited courtroom.)

13        THE COURT:  I think I'm going to excuse him.  Any

14   objection?

15        MR. FOSTER:  No, sir.

16        THE COURT:  Okay.  Excused, Wanda.

17        Now, this is a guy that got advice from an attorney on

18   how he can get out of being on jury duty, which really gets me.

19        This is the hardship.  Bring him in, please.

20        Bring in Manuel Diaz, I want to discuss with him what

21   his comment has to do with the length of the trial.

22        But I am going to excuse him because I don't think

23   either side will be very happy with him after we're done.

24        (Prospective juror entered courtroom.)

25        PROSPECTIVE JUROR:  Yes, sir.

1          THE COURT:  Please be sworn and testify under oath.

2          (Prospective juror duly sworn.)

3          PROSPECTIVE JUROR:  Yes, sir.

4          THE COURT:  Okay.  Tell us your name, please.

5          PROSPECTIVE JUROR:   Manuel Diaz, Junior.

6          THE COURT:   Where do you work?

7          PROSPECTIVE JUROR:   11th Avenue Auto Recyclers.

8          THE COURT:   Say it again, 11th Avenue Auto Recyclers?

9          PROSPECTIVE JUROR:   Auto Recyclers, yes, sir.

10         THE COURT:   Can you please explain to me what your

11    gratuitous statement that 'it is hard for you to find a person

12    guilty' has to do with the length of the trial?

13         PROSPECTIVE JUROR:   It depends, because I always try

14    to get everybody -- you know, I always think everybody --

15         THE COURT:   You were asked if the length of the trial

16    would cause any hardship for you.

17         PROSPECTIVE JUROR:   No, no.

18         THE COURT:   What does that comment have to do with the

19    length of the trial?

20         PROSPECTIVE JUROR:   It has nothing to do with that.  I

21    just think that --

22         THE COURT:   Did a lawyer tell you that that's what you

23    had to say to get out of jury duty?

24         PROSPECTIVE JUROR:   No, no, no, no.  I just --

25         THE COURT:   Because I tell you what, I will tell all

1    jurors; and that is, if you come in with a comment that a

2    lawyer has given you -- I heard them all -- and you will not

3    serve on the jury, but you will be summoned every day to sit in

4    the room and get a civics listen on how important jury service

5    is.

6         PROSPECTIVE JUROR:   I understand that.

7         THE COURT:   Because this is not a funny thing.

8         PROSPECTIVE JUROR:   I --

9         THE COURT:   How do you know that you could never find

10   anybody guilty?

11        PROSPECTIVE JUROR:   I could, but I'm just saying, I

12   don't have the heart to just, say, walk up here and say he's

13   guilty, that what I meant to say.

14        THE COURT:   Well, of course not.   He's not guilty.

15   Everybody that comes into this courtroom is not guilty.

16        PROSPECTIVE JUROR:   I understand that.

17        THE COURT:   So why would you think that that was part

18   of your job, to come in and say "guilty?"

19        PROSPECTIVE JUROR:   No, I never said that.   I probably

20   understood the question wrong.

21        THE COURT:   What question?   I never asked you a

22   question about this.   This is a totally gratuitous statement --

23        PROSPECTIVE JUROR:   I know, on the paper.

24        THE COURT:   -- that implies to me that somebody primed

25   you to say that so that you could get out of jury duty.

1          PROSPECTIVE JUROR:  No, sir.  No, sir.

2          THE COURT:  You are not getting out of jury duty.  Put

3   him back in the pool, he will sit and come in every day during

4   the two-week period.

5          Thank you, sir, you're excused.

6          (Prospective juror entered courtroom.)

7          MR. FOSTER: Judge --

8          THE COURT:  Yeah, I know, go ahead.  Make a record.

9          MR. FOSTER:  Respectfully, I think under your

10  questioning you cured what he expressed in the paper.  He said

11  that he could find people guilty and he believes that --

12         THE COURT:  He said he couldn't come in and say -- no,

13  he was all over the place and I don't -- I don't have time for

14  him.  I hear you.  Thank you.  You've made a record.  I excused

15  him.

16         Next would be Cristy Rivero.  Cristy is

17  commission-based sales; with sales, not being made unless he or

18  she is there.  Bring 'em in so we can get the details.

19         (Prospective juror entered courtroom.)

20         (Prospective juror duly sworn.)

21         THE COURT:  Tell us your name, please.

22         PROSPECTIVE JUROR:  Cristy Rivero.

23         THE COURT:  Where do work?

24         PROSPECTIVE JUROR:  Carnival Cruise Lines.

25         THE COURT:  And what do you do?

```
 1              PROSPECTIVE JUROR:  Sales.

 2              THE COURT:   So what does that mean, you sell ships?

 3              PROSPECTIVE JUROR:   I sell vacations on ships.

 4              THE COURT:  You sell cruises and things?

 5              PROSPECTIVE JUROR:  Yes.

 6              THE COURT:   How long have you been doing that?

 7              PROSPECTIVE JUROR:   Thirteen years.

 8              THE COURT:   And your salary is entirely on a

 9   commission?

10              PROSPECTIVE JUROR:   Pretty much, yes.

11              THE COURT:   What does "pretty much" mean?

12              PROSPECTIVE JUROR:   It's commission-based, like, we

13   get a small, small salary, that's like $200 every two weeks,

14   but everything else is commission.

15              THE COURT:   All right.  And if you're not selling --

16   what are your hours, do you work from home or do you work

17   there?

18              PROSPECTIVE JUROR:   I work in the office, ten to

19   seven.

20              THE COURT:   What time do you have to be there?

21              PROSPECTIVE JUROR:  Ten to seven.

22              THE COURT:   Is there a time that's better for sales

23   than other times?

24              PROSPECTIVE JUROR:  Usually, the afternoons.  All

25   day -- there's not really any specific times, since we do phone
```

 1    sales, so we sell, like, throughout the whole country.

 2          THE COURT:  You're not the one that calls me at dinner

 3    time; are you?

 4          PROSPECTIVE JUROR:  That's probably me, actually.

 5          THE COURT:  Okay.  Well, I am on a no-call list, so

 6    maybe I don't get yours.

 7          All right.  Questions from the lawyers?

 8          MR. FOSTER:  Sir.  Good afternoon.  If we were to sit

 9    in court from 9:30 to 4:30 or 5 o'clock during the day, could

10    you make up your hours in the evening or on the weekends?

11          PROSPECTIVE JUROR:  No, no.

12          MR. FOSTER:  Answer to the Judge.

13          PROSPECTIVE JUROR:  No.

14          THE COURT:  Thank you, ma'am.  Thank you.  You are

15    excused.  You're excused from the jury.

16          PROSPECTIVE JUROR:  Thank you.

17          (Prospective juror exited courtroom.)

18          THE COURT:  The next one is Alexis Mogollon, restaurant

19    manager.  Bring him or her in, and the next one after that is

20    Chris Morales.

21          (Prospective juror entered courtroom.)

22          COURTROOM DEPUTY:  Please raise your right hand.

23          (Prospective juror duly sworn.)

24          PROSPECTIVE JUROR:  I swear.

25          THE COURT:  Yes, sir.

1                  PROSPECTIVE JUROR:  My English, very bad.

2                  THE COURT:  Your English is very bad.  Tell us your

3       name.  You can put your hand down.  What is your name?

4                  PROSPECTIVE JUROR:   Alexis.

5                  THE COURT:  What is your last name?

6                  PROSPECTIVE JUROR:   Mogollon.

7                  THE COURT:  And what is occupation, what do you do for

8       a living?

9                  PROSPECTIVE JUROR:  I work in the restaurant.

10                 THE COURT:  What restaurant?

11                 PROSPECTIVE JUROR:  Old El Paso from Venezuela, in

12      Doral.

13                 THE COURT:   In Doral?

14                 PROSPECTIVE JUROR:   Yes, sir.

15                 THE COURT:   How many people work at the restaurant?

16                 PROSPECTIVE JUROR:  Fourteen, 15 people.

17                 THE COURT:  And what is your occupation at the

18      restaurant?  What is it that you do?

19                 PROSPECTIVE JUROR:  The manager.

20                 THE COURT:  And what does the manager do?

21                 PROSPECTIVE JUROR:  The operation.

22                 THE COURT:  How long have you been the manager?

23                 PROSPECTIVE JUROR:  Four years.

24                 THE COURT:  And do you have an ownership interest in

25      this restaurant?

```
1              PROSPECTIVE JUROR:  I'm sorry?

2              THE COURT:  Do you have an ownership interest in this

3    restaurant?

4              PROSPECTIVE JUROR:  The owner, yes.  Not me.

5              THE COURT:  Do you have any ownership of the

6    restaurant?

7              PROSPECTIVE JUROR:  No, I don't.

8              THE COURT:  Do you have any part of the business?

9              Does any part of the restaurant belong to you?

10             PROSPECTIVE JUROR:  No -- I'm sorry, I don't

11   understand.

12             THE COURT:  Okay.  Who is the owner of the restaurant?

13             PROSPECTIVE JUROR:  Luis Chile.

14             THE COURT:  Does he own 100 percent of the restaurant?

15             PROSPECTIVE JUROR:  Yes, sir.

16             THE COURT:  Who runs the restaurant on your days off?

17             PROSPECTIVE JUROR:  The owner.

18             THE COURT:  He's there when you're not there?

19             PROSPECTIVE JUROR:  Yes, sir.

20             THE COURT:  How are you paid, on an hourly basis?

21             PROSPECTIVE JUROR:  No, I have salary.

22             THE COURT:  What do you get paid, on a weekly basis, a

23   monthly basis, what?

24             PROSPECTIVE JUROR:  Biweekly.

25             THE COURT:  Biweekly, every other week?
```

1              PROSPECTIVE JUROR:  Yes, sir.

2              THE COURT:  Questions?

3              PROSPECTIVE JUROR:  No.

4              THE COURT:  No, I'm asking the lawyers.

5              PROSPECTIVE JUROR:  No, I'm sorry.

6              MR. FOSTER:  No, sir.

7              THE COURT:  Thank you, sir, you're excused.

8              PROSPECTIVE JUROR:  Thank you.

9              (Prospective juror exited courtroom.)

10             THE COURT:  He's excused.  Any objection?  Couldn't

11    fake it for that long.  We can usually get them sometimes.

12             All right.  The next one will be -- I can't read this

13    one either -- Chris Morales.

14             (Prospective juror entered courtroom.)

15             COURTROOM DEPUTY:  Please raise your right hand.

16             (Prospective juror duly sworn.)

17             PROSPECTIVE JUROR:  Yes, ma'am.

18             THE COURT:  Please tell us your name.

19             PROSPECTIVE JUROR:  My name is Chris Morales.

20             THE COURT:  And Mr. Morales, what is your occupation?

21             PROSPECTIVE JUROR:  I'm an information security

22    engineer.

23             THE COURT:  And what does that mean?

24             PROSPECTIVE JUROR:  Basically, I deal with, like,

25    computers in a security environment and I'm dealing with

1    PCI-DSS on a daily basis.

2              THE COURT:  What is PCI-DSS?

3              PROSPECTIVE JUROR:   Payment and credit card industry

4    and that's the data -- I forgot the "DSS" part, but basically

5    securing the consumers' credit card data.

6              THE COURT:   Who do you work for?

7              PROSPECTIVE JUROR:   The European Wax Center.

8              THE COURT:   And where are they located?

9              PROSPECTIVE JUROR:   Hallandale Beach, Florida.

10             THE COURT:   And how many people work there?

11             PROSPECTIVE JUROR:   In the office, I believe it's

12   going to be 100 to 125, nationwide; it's a franchise, so

13   there's about 500 stores.

14             THE COURT:   And you might be really good with

15   computers but your writing stinks, I can't read it.  So tell me

16   what you said why this is a hardship to you.

17             PROSPECTIVE JUROR:  I'm sorry, what?

18             THE COURT:  Why would this, sitting on here, be a

19   hardship?  It's a hardship on everybody.

20             Why would it be a special hardship to you?

21             PROSPECTIVE JUROR:  No, I understand.  Basically, I

22   wrote it's a hardship because I have to monitor and address any

23   issues on a daily basis, as far as, like, security compromises

24   and such.

25             THE COURT:  How do you do that?  How do they get this

1   to you?

2        PROSPECTIVE JUROR:  By, for instance, if a store goes

3   underneath an audit, if it's seen as a -- I'm a little bit

4   nervous right now.

5        THE COURT:  No, don't be.  We're all trying to figure

6   out what the heck you do.  You're the one who knows what you

7   do, so tell us.

8        PROSPECTIVE JUROR:  So, for instance, if, like, a store

9   is seen as a common point purchase for fraudulent transactions,

10  we get notified; and from there, the investigation begins at

11  our end, and back and forth.

12       THE COURT:  And where do you work from, the store or

13  the --

14       PROSPECTIVE JUROR:  The corporate office down in

15  Hallandale Beach, Florida.

16       THE COURT:  Hallandale Beach?

17       PROSPECTIVE JUROR:  Yes.

18       THE COURT:  And what are your hours?

19       PROSPECTIVE JUROR:  My hours are eight to five.

20       THE COURT:  Eight in the morning until five in the

21  afternoon?

22       PROSPECTIVE JUROR:  Yes.

23       THE COURT:  Are you salaried?

24       PROSPECTIVE JUROR:  Yes, I'm salaried, and sometimes on

25  call and sometimes work on the weekend as well.

1          THE COURT:   Is it possible for you to arrange to -- do

2     people work in the evenings?

3          PROSPECTIVE JUROR:   The office is usually closed in

4     the evenings, but sometimes, like, I'm on call after hours,

5     it's like I said, I'm on call.

6          THE COURT:   Okay.  Do they work on weekends?

7          PROSPECTIVE JUROR:   Generally, no, the office is

8     usually closed on the weekends, but there's always some store

9     calling.  I also noted that I'm on probation because recently I

10    had a -- I guess, like a reckless driving thing that went on.

11         THE COURT:  Reckless driving, and they put you on

12    probation?

13         PROSPECTIVE JUROR:  For a year.

14         THE COURT:  Who put you on probation?

15         PROSPECTIVE JUROR:  That was Judge Solomon.

16         THE COURT:  In Broward County?

17         PROSPECTIVE JUROR:  Yes.

18         THE COURT:  Okay.

19         PROSPECTIVE JUROR:  And according to them, I have to

20    report once a month to my probation officer.

21         THE COURT:  That we can deal with, I can promise you

22    that -- we can tell them where you are.

23         PROSPECTIVE JUROR:  Okay.

24         THE COURT:  Questions?

25         PROSPECTIVE JUROR:  Um --

```
 1            THE COURT:  No, I'm asking them, not you.

 2            MR. FOSTER:  No, Judge, I don't have anything.

 3            THE COURT:  All right, sir, thank you.

 4            PROSPECTIVE JUROR:  Thank you.

 5            (Prospective juror exited courtroom.)

 6            THE COURT:  Comments?

 7            MR. FOSTER:  Judge, I think he's fine.

 8            THE COURT:  I don't think he's so bad either.

 9            MR. WATTS-FITZGERALD:  He had further questions, he had

10     issues and other questions.

11            THE COURT:  I don't have to talk to him on a regular

12     basis, but he's too fast for me.  Okay.

13            Edgar Restrepo.

14            I get the printed one and it's hard sometimes.

15            We weren't halfway through, I was going by the wrong

16     numbers.

17            (Prospective juror entered courtroom.)

18            COURTROOM DEPUTY:  Please raise your right hand.

19            (Prospective juror duly sworn.)

20            PROSPECTIVE JUROR:  Yes.

21            THE COURT:  Please tell us your name.

22            PROSPECTIVE JUROR:  Edgar Restrepo.

23            THE COURT:  What is your occupation?

24            PROSPECTIVE JUROR:   I'm an ocean flight logistics

25     coordinator.
```

```
 1              THE COURT:   What does that mean?
 2              PROSPECTIVE JUROR:   I work in the freight forwarding
 3    business.
 4              THE COURT:   Who do you work for?
 5              PROSPECTIVE JUROR:   DB Shankar.
 6              THE COURT:   What is DB Shankar?
 7              PROSPECTIVE JUROR:  It's a worldwide freight forwarder
 8    that specializes in ocean freight, air freight, and land.
 9              THE COURT:   Where are they located, physically?
10              PROSPECTIVE JUROR:   Doral, Florida, but the main
11    headquarters are in Germany.
12              THE COURT:  And where do you work?
13              PROSPECTIVE JUROR:  In Doral, Florida.
14              THE COURT:   And how many people work in that office?
15              PROSPECTIVE JUROR:   Well, in the whole branch?
16              THE COURT:   No, in that office in Doral, starting
17    there.
18              PROSPECTIVE JUROR:   The office in Doral is more than
19    150 people, but in my department, it's only, I will say, six
20    people.
21              THE COURT:   And what exactly do you do there?
22              PROSPECTIVE JUROR:   I do documentation, meaning that I
23    have to send documents to the carriers, I have to send the
24    documents to the people receiving the cargo and import.
25              And also, we ship normally to South America and Asia.
```

```
1              THE COURT:   And what hours do you work?

2              PROSPECTIVE JUROR:   I get there around 8:30 and I

3    leave no earlier than, like, 7:00 p.m.

4              THE COURT:   And do you work Monday through Friday?

5              PROSPECTIVE JUROR:   Yes, sir.

6              THE COURT:   And you don't work on weekends?

7              PROSPECTIVE JUROR:   No, sir.  Well, if I need to, I

8    can go to the office on Saturdays, but it's not mandatory.

9              THE COURT:   Okay.  Well, let me ask you this:  We're

10   going to be trying to take at least one day off a week, and

11   like, for example, this week we'll be off Wednesday and Friday.

12   Next week, we'll be off Friday, maybe, maybe not, since it's so

13   early in the trial.  The week after that is Thanksgiving, I

14   quit at noon on Wednesday.

15             Can you arrange a schedule so that you could at least

16   help your employer out and get, you know, some work done while

17   you were serving on a jury?  Because the problem is that nobody

18   really wants to sit on an eight-week trial, but we got to try

19   to do it, we got to try to fill it, and the more people -- look

20   at it this way, if you were in trouble, wouldn't you want

21   people that were busy but took time out of their day to come

22   and help you rather than -- help you resolve the case rather

23   than only people that had nothing better to do?

24             PROSPECTIVE JUROR:   Yes.

25             THE COURT:   Is it possible that you could make
```

1    accommodations with your job so that you could serve on a -- it

2    might be eight weeks, it might be six weeks, it might be nine

3    weeks, you know, we don't know, we don't know for sure.

4           Is it possible you might be able to make accommodations

5    for sitting on a jury?

6           PROSPECTIVE JUROR:  I could give it a try, I mean, I

7    could talk to --

8           THE COURT:  Why don't you try to do that now when you

9    get out of the here and try to do it before we'll see you

10   again, and we'll try to see if there's -- if it's impossible,

11   tell us it's impossible.  If it's just difficult, let's try to

12   work around it.  Okay?

13          PROSPECTIVE JUROR:  Thank you.

14          THE COURT:  All right.  You're excused.  Thank you,

15   sir.

16          (Prospective juror exited courtroom.)

17          THE COURT:  I say, not now.  Any objection to that?

18          MR. WATTS-FITZGERALD:  No, sir.

19          THE COURT:  Okay.  The next one is new business owner.

20   "I'm in the licensing process for a car dealer license,

21   unexpected appointments will occur.  No way to really alleviate

22   my hardship.  I'd love to serve as a juror, but I may miss a

23   day or two."

24          He's a student, he's trying to get a license as a car

25   dealer.  I'm not sure how much I need to hear.

1          Anybody feel strongly to bring him?

2          MR. FOSTER:  The only thing I would say, Judge, is that

3     the day or two may be the day or two you're planning on taking

4     off each week anyway.

5          THE COURT:  Yeah.  Yeah.  And besides, if he needs to

6     come in late one day, they do that periodically anyway without

7     permission, so we can work around it.

8          But let me call.  I guess, call him in, we'll talk to

9     him, give him a little pep talk.

10         (Prospective juror entered courtroom.)

11         (Prospective juror duly sworn.)

12         PROSPECTIVE JUROR:  Yes.

13         THE COURT:  Please tell us your name.

14         PROSPECTIVE JUROR:  Neil Mooloo.

15         THE COURT:  Mr. Mooloo, what is your occupation?

16         PROSPECTIVE JUROR:   Business owner and student.

17         THE COURT:  What business do you own?

18         PROSPECTIVE JUROR:   I recently opened a business and

19    I'm in the process of getting a car dealer license.

20         THE COURT:   And what's that procedure involved in

21    that?

22         PROSPECTIVE JUROR:  Well, during this week, I have to

23    see about my insurance and go to collect the application and --

24    not the application, the actual license at the DMV, and I have

25    two appointments in school.

 1              THE COURT:   What are the appointments in school?

 2              PROSPECTIVE JUROR:   It's to meet with my advisor to

 3    plan my next semester.

 4              THE COURT:   Where do you go to school?

 5              PROSPECTIVE JUROR:   FIU.

 6              THE COURT:   And who are you meeting with, what is the

 7    advisor, what department?

 8              PROSPECTIVE JUROR:   I just switched my majors, so I am

 9    not familiar with my new advisor's name.

10              THE COURT:   I'm don't want to know his name; what

11    department?

12              PROSPECTIVE JUROR:   It's business management.

13              THE COURT:   And when is your appointment?

14              PROSPECTIVE JUROR:  I haven't made it yet.

15              THE COURT:   Okay.  Well, we're probably not going to

16    sit every day all week, and so you'll probably have a day or

17    so, sometimes two days.  This week, for example, we're not

18    sitting on Wednesday or Friday.

19              PROSPECTIVE JUROR:  That would be fine with me.

20              THE COURT:  So next week, we might sit all week because

21    it's so early.  But the week after that, for example, it's

22    Thanksgiving, so we're going to break at noon on Wednesday and

23    not work on Friday, so we'll have -- and then after that we'll

24    probably take a Friday or a Monday off each week, if we can.

25              So I don't think you'll have a problem with you getting

1    your business licenses and having your meetings with your

2    people at FIU, but if you do, please let me know and I will

3    intercede on your behalf if you're selected for the jury.

4              PROSPECTIVE JUROR:  Okay.

5              THE COURT:  And we'll work around it.

6              Okay.  Thank you.

7              PROSPECTIVE JUROR:  Okay, sounds good.  Thank you.

8              (Prospective juror exited courtroom.)

9              THE COURT:  The next one wrote over onto the back page.

10   Can somebody give me have the Cliff Notes version?  She got a

11   new job, mortgage in foreclosure, son in the Air Force, tugging

12   on all the right heart strings, the veteran, everything else,

13   single mom, not seen sergeant in two years, new job, my trip.

14   What trip is this?

15             MR. WATTS-FITZGERALD:  She has a trip planned to

16   Germany to visit her son in the Air Force, Your Honor.

17             THE COURT:  And when is she leaving on this trip to

18   Germany?

19             MR. WATTS-FITZGERALD:  "It is already planned.  We see

20   him on end of November."

21             THE COURT:  Yeah.  I'm thinking that she probably has a

22   pretty good excuse, but I will call her in and get it on the

23   record.  If it pans out, I will not let you have any questions,

24   I will just excuse her.

25             (Prospective juror entered courtroom.)

```
 1              COURTROOM DEPUTY:  Please raise your right hand.

 2              (Prospective juror duly sworn.)

 3         PROSPECTIVE JUROR:  I do.

 4         THE COURT:  Please tell us your name.

 5         PROSPECTIVE JUROR:  Elizabeth Estevez.

 6         THE COURT:  Ms. Estevez, what is your occupation?

 7         PROSPECTIVE JUROR:  I'm a medical tech.

 8         THE COURT:   What do you do as a medical tech?

 9         PROSPECTIVE JUROR:  We work for research for different

10    drugs, different medical devices.

11         THE COURT:   Where do you work?

12         PROSPECTIVE JUROR:   South Florida Clinical Trials in

13    Homestead, and I live in Homestead.

14         THE COURT:   And you say you started a new job, when?

15         PROSPECTIVE JUROR:   I just started.

16         THE COURT:   Right.

17         PROSPECTIVE JUROR:   It's been about nine days, a week

18    and a half ago.  I haven't even gotten my first paycheck.

19         THE COURT:   Okay.  Well, I hope you do soon.  When is

20    your trip to Germany?

21         PROSPECTIVE JUROR:   Okay.  My son, right now, is

22    deployed to Turkey and he's supposed to be back anywhere

23    between the end of November and December.  So the idea is -- I

24    haven't seen him for two years, he's been to Africa and from

25    Africa to Turkey, and then he'll be back in Germany, where he's
```

1    stationed.

2            So, basically, it's anywhere between the end of

3    November -- and he's the one paying for that -- to sometime in

4    the beginning -- the first two weeks of December, but I don't

5    have the -- like, it's not stone, the exact date.

6            THE COURT:   How long are you going to be there?

7            PROSPECTIVE JUROR:   Two weeks, two weeks, and that's

8    something that when I started the new job, I let them know that

9    just like I let them know about this, except they don't pay if

10   you're not working.

11           THE COURT:   How many people work there?

12           PROSPECTIVE JUROR:   It's -- you have two doctors and

13   one, two, three, four, about just four to five people.   Only me

14   and one lady work for the research, the actual research where

15   we have --

16           THE COURT:   I see, it's probably a different

17   corporation.

18           Thank you, ma'am, you're excused.

19           PROSPECTIVE JUROR:   Thank you, sir, I appreciate that.

20           (Prospective juror exited courtroom.)

21           THE COURT:  This last lady works.  I don't think her

22   excuse has been compelling at this time.  Bring Rebeca Castro.

23           (Prospective juror entered courtroom.)

24           COURTROOM DEPUTY:   Raise your right hand, please.

25           (Prospective juror duly sworn.)

1          PROSPECTIVE JUROR:  I do.

2          THE COURT:  Yes, ma'am.  Please tell us your name.

3          PROSPECTIVE JUROR:   Rebeca C. Castro.

4          THE COURT:   And Ms. Castro, what do you do for a

5    living?

6          PROSPECTIVE JUROR:  I'm a paraprofessional at a

7    Catholic school.

8          THE COURT:  Which one?

9          PROSPECTIVE JUROR:   St. Thomas the Apostle.

10         THE COURT:  Where's that?  That's on --

11         PROSPECTIVE JUROR:   On 73rd and 64th.

12         THE COURT:   And how long have you been working there?

13         PROSPECTIVE JUROR:   This is my ninth year.

14         THE COURT:   Okay.  What are your hours?

15         PROSPECTIVE JUROR:   I work from 7:15 to 3:15.

16         THE COURT:   And you take care of your grandchildren?

17         PROSPECTIVE JUROR:   Yes, sir.

18         THE COURT:   And when do you do that?

19         PROSPECTIVE JUROR:   After work, after, at 3:15, I get

20   home at 3:30, and my daughter's husband opened a pharmacy and

21   they work together, so I take care of the grand-kids after

22   school.

23         THE COURT:  What did they do before then?

24         PROSPECTIVE JUROR:  He used to work -- my daughter did

25   not work with him.

1            THE COURT:   No, I don't mean before that time, but

2     like 3:30, when you get home, what do they do?

3            PROSPECTIVE JUROR:  Oh, they go to school.

4            THE COURT:   How old are they?

5            PROSPECTIVE JUROR:  They're four and my granddaughter

6     is six years old.

7            THE COURT:   And they go to --

8            PROSPECTIVE JUROR:   Epiphany Catholic School.

9            THE COURT:   Oh, Epiphany?

10           PROSPECTIVE JUROR:   Yes, sir.

11           THE COURT:   When do they get out of that?

12           PROSPECTIVE JUROR:   I don't know, like around 3:00.

13           THE COURT:   How do they get home?

14           PROSPECTIVE JUROR:   My daughter goes, picks them up.

15           THE COURT:   What does your daughter do?

16           PROSPECTIVE JUROR:  She works with her husband, because

17    he just opened a pharmacy, so she works with him in the

18    pharmacy, in the new pharmacy.

19           THE COURT:   So she takes them home and waits for you?

20           PROSPECTIVE JUROR:   She takes them to the pharmacy and

21    then she takes them to my house so when I get home at 3:30, I

22    will take care of them.

23           THE COURT:   What time does she pick them up?

24           PROSPECTIVE JUROR:   Around 7:30, they close the

25    pharmacy.

1          THE COURT:   No, what time does she pick them up from

2     school?

3          PROSPECTIVE JUROR:   I don't know, 3:00, 2:45, 3:00.

4          THE COURT:   Okay.  Why couldn't she for just, you know,

5     a little while during the pendency of this trial, why couldn't

6     she keep them at the pharmacy until you're there, which would

7     be probably 4:30 or 5:00?  I mean, I know it's difficult but --

8          PROSPECTIVE JUROR:   No, I'm sorry.  They get very

9     rowdy.  The four-year-old is awful.

10         THE COURT:   Well, slap them around a little bit.

11         PROSPECTIVE JUROR:   He's awful.

12         THE COURT:   He's awful?  Then how did they do --

13         PROSPECTIVE JUROR:   I adore him, but he's awful.

14         THE COURT:   I would be doing you a favor then if I

15    kept you here until 7:00, but ordinarily we're done before

16    5:00.

17         PROSPECTIVE JUROR:   I love them too much, they're my

18    life.

19         THE COURT:   I understand, I have grandchildren, too;

20    but the bottom line is, everybody has something better to do

21    than be on jury duty.

22         PROSPECTIVE JUROR:  I understand.

23         THE COURT:   Any questions from the Government?

24    Defense?

25         MR. FOSTER:  No, sir, I think you covered it.

1          THE COURT:  Thank you, ma'am.  Wait outside, we will

2    let you know.

3          PROSPECTIVE JUROR:  Thank you, sir.  Thank you.

4          (Prospective juror exited courtroom.)

5          THE COURT:  I don't think that's a compelling reason to

6    excuse her; do you?

7          MR. FOSTER:  I agree, I think she can sit.

8          THE COURT:  Yeah, you do agree?  Okay.  No.

9          Wow, I can't read this.  Cristina Ballesteros, an

10   accountant.  Has a son, out of school at 3:00 and 2:00 p.m.

11   Starting her own business.  "I don't have the funds to hire a

12   baby-sitter at this time."

13         Let's hear what she has to say.  Cristina Ballesteros.

14         (Prospective juror entered courtroom.)

15         COURTROOM DEPUTY:  Raise your right hand, please.

16         (Prospective juror duly sworn.)

17         PROSPECTIVE JUROR:  Yes.

18         THE COURT:  Please tell us your name.

19         PROSPECTIVE JUROR:  Cristina Ballesteros.

20         THE COURT:  And Ms. Ballesteros, what do you do for a

21   living?

22         PROSPECTIVE JUROR:  I am an accountant, if you can call

23   it like that, yes.

24         THE COURT:  And where do you work?

25         PROSPECTIVE JUROR:  I used to work at FremantleMedia,

1    no longer there.  I'm trying to start up my own company.

2            THE COURT:   Okay.  And what are you doing to start up

3    your own company?  Tell me what you do.

4            PROSPECTIVE JUROR:   I want to bring children's theater

5    to the city.

6            THE COURT:   Ah-ha.  And how do you propose to do that?

7            PROSPECTIVE JUROR:   Through the schools.

8            THE COURT:  And who are you dealing with to do that?

9            PROSPECTIVE JUROR:   Right now, I'm doing a lot of

10   research, since I stopped working.

11           THE COURT:   How do you support yourself at this time?

12           PROSPECTIVE JUROR:   With the savings that I been

13   saving for many years.

14           THE COURT:   Well, we have a trial that looks like it's

15   going to take six, eight, nine weeks, something like that.  We

16   don't know for sure, it could be shorter, it could be longer,

17   but not forever.  But during the trial, because it's a long

18   one, we'll be breaking often.  Like, for example, this week,

19   we're off Wednesday because it's a federal holiday, and we're

20   off Friday for prearranged plans.

21           Next week we will probably not take any days off

22   because it's early.  The week after that is Thanksgiving, so we

23   will quit at noon on Wednesday and have the rest of the week

24   off, and after that we'll probably take either a Monday or a

25   Friday off, and I usually let people out between 4:30 and 5:00

1     so they can beat the traffic a little bit.

2          We do pay, not a lot, but we pay $40 a day; and then

3     after ten days, $50 a day, I think it is, and don't hold me to

4     that because I'm not the payor, but that's what I've heard.

5          And, you know, I would -- you know, I would think that

6     you could do your regular activities without much change in

7     this.  So, tell me why you think you have a severe hardship.

8          PROSPECTIVE JUROR:  Well, I'm a single mom.  The father

9     is not around, has never been.  I have a seven-year-old and,

10    right now, I cannot afford to pay a baby-sitter.  I'm asking --

11         THE COURT:  What do you do with your son, do you have

12    your child with you when you're preparing, when you're trying

13    to start your business; is that what you do?

14         PROSPECTIVE JUROR:  Pardon me?

15         THE COURT:  You take care of your child during the day?

16         PROSPECTIVE JUROR:  My child goes to school, but once

17    he's dismissed from school, he's with me.

18         THE COURT:  How do you get him home from school?

19         PROSPECTIVE JUROR:  I pick him up.

20         THE COURT:   How did you do that when you were working?

21         PROSPECTIVE JUROR:   Well, I arranged my hours from 8

22    o' clock in the morning, when I drop him off, until 3:00 or 2

23    o'clock in the afternoon, when I pick him up, so he's not in

24    after school because my savings are not going to last forever,

25    so...

```
1              THE COURT:   Where does he go to school?

2              PROSPECTIVE JUROR:   Ada Merritt.

3              THE COURT:   Ada Merritt?

4              PROSPECTIVE JUROR:   Yes, sir.

5              THE COURT:   Okay.  Questions by the lawyers?

6              MR. DUFFY:  Your Honor, just the issue of the -- I'm

7    not sure if the Court inquired about child care alternatives,

8    if the juror wishes it.

9              THE COURT:  Well, you know, the problem with that is

10   that it costs money and she's trying to save her money for her

11   future.

12             MR. DUFFY:  We agree, Your Honor.  We just wanted to

13   make sure to the extent you didn't have your concern addressed.

14             THE COURT:  Counsel?

15             MR. FOSTER:  We have no questions.  I think she said

16   what she had to say.

17             THE COURT:  Thank you, Ms. Ballesteros.  I will excuse

18   you.

19             PROSPECTIVE JUROR:  Thank you.  What does it mean?

20             THE COURT:  It means you're gone, you can go home.

21   Actually, I don't know where you go.  You might have to sit on

22   another case, but you will not sit on this case because it

23   would be a hardship on you.

24             PROSPECTIVE JUROR:  Thank you, Your Honor.

25             (Prospective juror exited courtroom.)
```

```
 1              THE COURT:  Felicia Jackson, school monitor, I don't

 2    know what that is.  We used to make fun of people and call them

 3    the hall monitor, but I don't know what a school monitor is.

 4    Make sure nobody steals the school.

 5              Let me read this.  Hold on.

 6              All right.  Bring her in.

 7              (Prospective juror entered courtroom.)

 8              COURTROOM DEPUTY:  Please raise your right hand.

 9              (Prospective juror duly sworn.)

10              PROSPECTIVE JUROR:  Yes.

11              THE COURT:  Please tell us your name.  You can put your

12    hand down.

13              PROSPECTIVE JUROR:  My name is Felicia Jackson.

14              THE COURT:  What do you do for a living?

15              PROSPECTIVE JUROR:   School monitor.

16              THE COURT:   Where are you a school monitor?

17              PROSPECTIVE JUROR:   Flamingo Elementary.

18              THE COURT:   Flamingo Elementary?

19              PROSPECTIVE JUROR:   Yes.

20              THE COURT:   You said you have how many kids?

21              PROSPECTIVE JUROR:   One.

22              THE COURT:   A ten-year-old daughter?

23              PROSPECTIVE JUROR:  Yes.

24              THE COURT:   Where does she go to school?

25              PROSPECTIVE JUROR:   John A. McKinney Christian
```

 1   Academy.

 2              THE COURT:   Where is that?

 3              PROSPECTIVE JUROR:   125th and 22nd Avenue.

 4              THE COURT:   Where is it in relation to Flamingo?

 5              PROSPECTIVE JUROR:   I'm sorry, can you repeat it?

 6              THE COURT:   Where is it in relationship to Flamingo,

 7   is it like far away, close?

 8              PROSPECTIVE JUROR:   It's not too far from Flamingo

 9   Elementary.

10              THE COURT:   What do you do with your daughter?

11              What are your hours at school?

12              PROSPECTIVE JUROR:   7:30 to 3:30, and then I get her

13   from school, then I go to my second job, Overtown Youth Center.

14              THE COURT:   What do you do at Overtown Youth Center?

15              PROSPECTIVE JUROR:   Teacher's assistant.

16              THE COURT:  What are your hours there?

17              PROSPECTIVE JUROR:   I get there about 3:45 to 7:00.

18              THE COURT:  Any questions?

19              MR. FOSTER:  No, sir.

20              THE COURT:  Ma'am, I'm going to excuse you, I think it

21   would be a hardship on you.  You're excused from this case.

22              PROSPECTIVE JUROR:  Okay.  Thank you.

23              (Prospective juror exited courtroom.)

24              THE COURT:  Any objection from anybody?

25              MR. WATTS-FITZGERALD:  No, sir.

1          THE COURT:  Next, "marketing manager, I have a

2    two-year-old; I pick him up from school daily, don't have

3    anybody to pick him up for six to eight weeks."

4          Bring her in, please.  I have sympathy for working

5    parents since there are so many people that aren't working.

6          (Prospective juror entered courtroom.)

7          COURTROOM DEPUTY:  Please raise your right hand.

8          (Prospective juror duly sworn.)

9          PROSPECTIVE JUROR:   Yes.

10         THE COURT:  Please tell us your name.

11         PROSPECTIVE JUROR:   Monica Berga Couso.

12         THE COURT:  Ms. Berga, what is your occupation?

13         PROSPECTIVE JUROR:   I'm a marketing manager.

14         THE COURT:  What does that mean, where do you work?

15         PROSPECTIVE JUROR:  I work for Tenet Hospitals, and I

16    work at Hialeah Hospital.

17         THE COURT:  And what does the marketing manager for a

18    hospital do, tell people if you're sick, come here?

19         You don't go out and make people sick; do you?

20         PROSPECTIVE JUROR:  We handle public relations,

21    marketing and advertising for the hospital, branding, and

22    things like that.

23         THE COURT:  Okay.  How long have you been doing that?

24         PROSPECTIVE JUROR:   Almost two years.

25         THE COURT:  That sounds kind of interesting.  What is

1   your hardship?

2         PROSPECTIVE JUROR:   I have three kids.  I have a two-

3   year-old daughter who's not in school full-time and I do pick

4   up daily.

5         THE COURT:   Okay, what are your hours at work?

6         PROSPECTIVE JUROR:   I work from nine to five.

7         THE COURT:   And when do you pick her up?

8         PROSPECTIVE JUROR:  I leave work to pick her up at

9   noon.

10        THE COURT:   And what do you do with her?

11        PROSPECTIVE JUROR:   I have her in an after care

12  program.

13        THE COURT:   Where is that?

14        PROSPECTIVE JUROR:   In another establishment, but they

15  charge me -- if I don't pick her up in time, they charge me

16  more money.

17        THE COURT:   What is "on time"?

18        PROSPECTIVE JUROR:   Five o'clock.

19        THE COURT:   How do you get from 5:00 work to 5:00

20  pickup?

21        PROSPECTIVE JUROR:   I manage.  I try to leave a little

22  bit earlier.

23        THE COURT:   Okay.  And where do you pick her up at --

24  she goes to -- you say she goes to one thing until noon and

25  then another one afternoon.

1           PROSPECTIVE JUROR:   Right, right.

2           THE COURT:   And where are those located in

3   relationship to each other?

4           PROSPECTIVE JUROR:   A few minutes, like 20, 25

5   minutes.

6           THE COURT:   You can't teach her to drive real quickly?

7           PROSPECTIVE JUROR:   Unfortunately.

8           THE COURT:   Isn't there any transportation available

9   between those two places?

10          PROSPECTIVE JUROR:   No, unfortunately, she's too

11  little, she's a baby, and I'm really nervous about leaving her.

12          THE COURT:   Yeah, I can fully understand that.  I

13  thought there was some exemption for people with babies; isn't

14  there, Wanda?  I thought there was.  I mean, it seems kind of

15  cruel and unusual to make somebody leave a two-year-old.

16          MR. RODRIGUEZ:  That's in State Court.

17          THE COURT:  It is?

18          MR. RODRIGUEZ:  Yes.

19          THE COURT:  We're behind in some areas.

20          PROSPECTIVE JUROR:  I have three, but she's the main,

21  since she's only two.

22          THE COURT:  Any questions from the lawyers?

23          MR. FOSTER:  No, sir.

24          THE COURT:  Thank you, ma'am.  I'm going to excuse you

25  because I feel for you.

1          PROSPECTIVE JUROR:  Thank you, sir.

2          THE COURT:  That doesn't mean you get out of jury duty

3     completely, but out of this case.

4          (Prospective juror exited courtroom.)

5          THE COURT:  Eric Barrios.

6          MR. WATTS-FITZGERALD:  Your Honor, does the Court have

7     the reverse of that?

8          THE COURT:  Yes.  But don't worry because I didn't read

9     it, I'm going to make him tell us.  Don't worry, I'm going to

10    make him tell us.  Don't worry.  I can't read a novel, so I

11    will just have him -- have him come in.

12         (Prospective juror entered courtroom.)

13         COURTROOM DEPUTY:  Please raise your right hand.

14         (Prospective juror duly sworn.)

15         PROSPECTIVE JUROR:  Yes.

16         THE COURT:  Please tell us your name.

17         PROSPECTIVE JUROR:   Eric Barrios.

18         THE COURT:   And Barrios, what do you do for a living?

19         PROSPECTIVE JUROR:  I work for a company called SP

20    Plus.  I manage pedestrian safety traffic control for the

21    University of Miami for their special events.

22         THE COURT:   Okay.  You wrote me a novel on the back of

23    your paper, so tell me what you said because I don't read

24    novels at this time of day.

25         PROSPECTIVE JUROR:   Okay.  When I'm working, I have to

1    oversee a staff of about 70 people, you know, making sure that

2    they're all in the right place and they all know what to do to

3    handle the amount of traffic that comes into that place;

4    because they have really large events at an arena there called

5    "BankUnited Center."

6              THE COURT:  Not too many of those are during the week

7    during the daytime, are they?

8              PROSPECTIVE JUROR:  Yes, most of them are during the

9    weekend.  They also have events during the week throughout the

10   University unrelated to the BankUnited Center.  But during the

11   week I have to do a lot of planning to make those happen, you

12   know, for those weekend events.

13             I have to draft operational plans and schedule people,

14   and it's a really big process, you know, because there's always

15   conference calls and meetings and I have to figure out, you

16   know, what are the needs of the events.

17             THE COURT:  What if you're sick, what happens then?

18             PROSPECTIVE JUROR:  Well, man, I usually come in when

19   I'm sick.  I do a lot of work.  I've been sick all last

20   weekend, I still went in, you know, to do four days of events.

21   I had ten events in four days, and it was just really crazy

22   doing 16 hours day.

23             THE COURT:  That's because the women's team played at

24   11:00 and they are playing at 11:00 on Friday, but that's not

25   normal.

1          PROSPECTIVE JUROR:  Do you know about the women's team?

2     Last week they had a double-header with the men and the women.

3          THE COURT:  Yeah, they have another one Friday.

4          PROSPECTIVE JUROR:  Yeah, it's coming.

5          THE COURT:  Yeah.  Yes, I do know, unfortunately.  My

6     wife and I go to all the women's games.  She won't go to the

7     men's games because it's too loud and she thinks it's damaging

8     her hearing, but that's neither here nor there.

9          Look, I'm familiar with the BankUnited Center, I'm

10    familiar with the work that you do.  You don't work inside it;

11    do you?  You work outside; don't you?

12         PROSPECTIVE JUROR:  Yea, I do a lot of work outside.

13         THE COURT:  Make sure that guy lets me into the

14    production lot when I come with my car late.

15         PROSPECTIVE JUROR:  Oh, my God, you know us too well.

16         THE COURT:  Because sometimes they're real nice when

17    you go there, but sometimes they don't let you in and then I

18    have to get hostile.

19         I tell you what, the University of Miami brags about

20    being the largest employer in the county.  They've got to be

21    able to work around.  We're not going to sit every day every

22    week.  We have -- it is going to be an inconvenience to you,

23    there's no question about it.

24         But, remember, if you were trying to have something

25    decided that was very important to you, wouldn't you rather

1   have people on the jury that had taken time out of their busy

2   schedule to come in and try to help resolve a matter than only

3   have people that had nothing better to do?

4           PROSPECTIVE JUROR:  Yeah.

5           THE COURT:  Think about it, you really would, wouldn't

6   you?

7           PROSPECTIVE JUROR:  I suppose so.

8           THE COURT:  So the problem is, it's a problem, but I

9   promise you that we will not stay late and that we will have

10  at least one day off a week.  This week, for example, we are

11  off Wednesday and Friday.  Next week, we may or may not because

12  it's the first week of the full week of the trial, we might go

13  for five days.

14          But after that, on Fridays, we're going to be closed;

15  Thanksgiving week, we're going to be closed noon on Wednesday

16  and closed the rest of the week; and after that, we will be

17  able to have a Friday or a Monday off.

18          So I'm going to ask you to stay with us and do your

19  best and if you get a hard time from either the client or the

20  employer, let me know and I'll call them and harass them and

21  give them a hard time.  All right?  Better yet, I'll have

22  Sergio Gonzalez or Dr. Frank call your boss and tell them that

23  they need you here.

24          PROSPECTIVE JUROR:  How do you know all of this?  You

25  know too much.

```
 1           THE COURT:  I know.  Well, that area I know.  It's,
 2   unfortunately, not an area that does me the slightest bit of
 3   good, though.
 4           Thank you very much, you will be with us, perhaps.
 5   Thank you.
 6           PROSPECTIVE JUROR:  Thank you.
 7           (Prospective juror exited courtroom.)
 8           THE COURT:  Let's see, next one.  This seems like
 9   economic hardship, we will try and flesh it out.
10           Ynes Pedroso.
11           The one after is Wayne Delgado -- Meck (sic) Delgado.
12   I never heard of that.  Wow.  It's Scottish.
13           (Prospective juror entered courtroom.)
14           COURTROOM DEPUTY:  Please raise your right hand.
15           (Prospective juror duly sworn.)
16           PROSPECTIVE JUROR:  Yes.
17           THE COURT:  Hi, there.  What's your name?
18           PROSPECTIVE JUROR:  Ynes Maria Pedroso.
19           THE COURT:  And, Ms. Pedroso, what is your occupation?
20           PROSPECTIVE JUROR:   I'm a billing supervisor.
21           THE COURT:   Where?
22           PROSPECTIVE JUROR:   At ChenMed.
23           THE COURT:   What is that?
24           PROSPECTIVE JUROR:   ChenMed Medical.
25           THE COURT:  What is ChenMed?
```

1          PROSPECTIVE JUROR:  It's a medical office.

2          THE COURT:   How big is it?

3          PROSPECTIVE JUROR:   Huge.

4          THE COURT:   How big?

5          PROSPECTIVE JUROR:  We're right now, currently, in

6    seven states.

7          THE COURT:   Uh-huh.  How about in Florida, how big are

8    you?

9          PROSPECTIVE JUROR:   Florida, there is, right now, 32

10   locations.

11         THE COURT:   How about the one in Dade County, how big

12   is it?

13         PROSPECTIVE JUROR:   Huge.

14         THE COURT:   How huge?

15         PROSPECTIVE JUROR:   There's about five locations in

16   Dade County.

17         THE COURT:   Okay.  And what is your job; you're a

18   billing supervisor?

19         PROSPECTIVE JUROR:  Correct.

20         THE COURT:   And what does that entail?

21         PROSPECTIVE JUROR:   Supervising over 30 employees,

22   in-house and from home.

23         THE COURT:   And have you discussed with your employer

24   the fact that you have a notice for jury duty?

25         PROSPECTIVE JUROR:  Yes.

1          THE COURT:   And what did they say -- other than "get

2    out of it," what did they say?

3          PROSPECTIVE JUROR:  It's up to if I get picked or not,

4    really.

5          THE COURT:  Why do you say -- tell me about this

6    economic hardship; you're "not paid your full salary," what

7    does that mean?

8          PROSPECTIVE JUROR:  Actually, I just found out that I

9    am.

10          THE COURT:  Okay, so you are going to get paid.  So you

11    don't have any problem at all?

12          PROSPECTIVE JUROR:  No, I just didn't know, I had to

13    confirm.

14          THE COURT:  No, I'm glad you did.  Thank you very much.

15          PROSPECTIVE JUROR:  You're welcome.

16          THE COURT:  Thanks.

17          (Prospective juror exited courtroom.)

18          THE COURT:  Okay.  Bring the next gentleman in.

19          COURTROOM DEPUTY:  Mr. Delgado.

20          THE COURT:  This next gentleman, I'm not even sure we

21    need to talk to him, but I will.  Oh, it's not a gentleman.

22    Mayra.  I thought it said "Wayne."

23          (Prospective juror entered courtroom.)

24          THE COURT:  That's all right.  You don't have to swear

25    her.

1        Ms. Delgado -- how do you say it?  What is your name?

2        PROSPECTIVE JUROR:   Mayra Delgado.

3        THE COURT:  Ms. Delgado, you have a doctor's

4    appointment on November 11th?

5        PROSPECTIVE JUROR:   Yes.

6        THE COURT:   We're closed November 11th.  You're fine.

7    Thank you.

8        PROSPECTIVE JUROR:  Okay.

9        THE COURT:  You can go to your doctor's appointment.

10   Thank you very much.  Meanwhile, just wait, we will continue

11   going.  All right.  Thank you.

12       (Prospective juror exited courtroom.)

13       THE COURT:  She's not excused.  She will be here,

14   except for the 11th.

15       Do we need to bring the next one in, Estrella

16   Esquenazi?  She says she has airplane ticket departing on

17   December the 3rd, there was a two-week period, but that was

18   beyond the two-week period.  If she actually does, we don't

19   have a problem with that.

20       Do we want to call her in and have her tell us under

21   oath?  I kind of believe that they would not make up something

22   that I could check on.  Anybody need to talk to her, otherwise,

23   I'm going to excuse her?

24       MR. FOSTER:  No.

25       THE COURT:  Next one is Christopher Fernandez, service

1    manager at a car dealership, I guess.  I think we need to talk

2    to him.  Bring him in, please.

3              (Prospective juror entered courtroom.)

4              (Prospective juror duly sworn.)

5              THE COURT:  Please tell us your name.

6              PROSPECTIVE JUROR:   Christopher Fernandez.

7              THE COURT:  And Mr. Fernandez, what do you look for a

8    living?

9              PROSPECTIVE JUROR:  I work as a service manager for

10   Toyota.

11             THE COURT:   Which Toyota?

12             PROSPECTIVE JUROR:   West Kendall Toyota.

13             THE COURT:   How long have you been doing that?

14             PROSPECTIVE JUROR:   About a year.

15             THE COURT:   What is your hardship?

16             PROSPECTIVE JUROR:   Outside of my own family, I have

17   five mechanics that work beneath me, so to speak.  Based on

18   what I sell is how they make their living.  If I don't work --

19             THE COURT:   Are you a service manager or a service

20   writer; what's the difference?

21             PROSPECTIVE JUROR:  Same thing at that facility.

22             THE COURT:   Same thing.  And --

23             PROSPECTIVE JUROR:   In other words, they only get paid

24   for what they actually do.  They don't have an hourly rate.

25             THE COURT:   Right, but what if you're sick, what if

1    you take a day off, who takes your place?

2         PROSPECTIVE JUROR:   One day is fine, but a whole bunch

3    of them I won't be able to do.

4         THE COURT:   Well, it would be a tremendous hardship to

5    your employer, but I'm not sure -- how do you get paid?

6         PROSPECTIVE JUROR:   I get paid based on my sales;

7    commission, six percent.

8         THE COURT:   Okay.  Questions from the attorneys?

9         MR. FOSTER:  My only question, sir, would be whether

10   he's discussed the jury summons with his employer.

11        THE COURT:  Yeah.  Did you discuss the fact that you

12   got the summons for this jury with your employer?

13        PROSPECTIVE JUROR:  Yes, I did.

14        THE COURT:  What did they say?

15        PROSPECTIVE JUROR:  They weren't happy about it, but

16   they had to let me go.

17        THE COURT:  Well, they have to let you go.  But did

18   they talk about the compensation?

19        PROSPECTIVE JUROR:  No, sir, I believe they mentioned

20   the $40 a day for showing up here, but outside of that, there

21   was nothing else.

22        THE COURT:  No.  I meant your employer, when you told

23   them that you might be on a jury for eight weeks, what, if

24   anything, did they say?

25        PROSPECTIVE JUROR:  For eight weeks?  They don't know

1    about that yet.  They only knew about jury duty for today and

2    luckily today was my regular day off.

3              THE COURT:  All right, sir.  Thank you.

4              PROSPECTIVE JUROR:  Thank you.

5              THE COURT:  Just wait outside, the court security

6    officer will tell you.

7              PROSPECTIVE JUROR:  All right.

8              (Prospective juror exited courtroom.)

9              THE COURT:  That dealership would never pay him.  I

10   know them well.  He would be on poverty row in a matter of

11   days.  I'm going to excuse him.  Any objection?

12             MR. FOSTER:  I think he did say that they told him $40

13   a day is what he's going to get.

14             THE COURT:  That's the clear impression and that's

15   certainly consistent.  All right.  We'll excuse him.

16             Armelle Hosty, registered nurse.  Don't know, just

17   started his or her Bachelor of Science degree in nursing last

18   week; and if the school doesn't go out of business by next

19   week, she will probably have the Bachelor's degree.

20             MR. DUFFY:  That trial is going on in a different

21   courtroom, Your Honor.

22             THE COURT:  That's a -- bring in Armelle Hosty.

23             (Prospective juror entered courtroom.)

24             (Prospective juror duly sworn.)

25             THE COURT:  Hi.  Tell us your name, please.

1          PROSPECTIVE JUROR:  My name is Armelle Hosty.

2          THE COURT:   And Ms. Hosty, what is your occupation?

3          PROSPECTIVE JUROR:  I'm a nurse.

4          THE COURT:  And what type of nurse are you?  I'm sure a

5     very fine one, but are you an LPN, RN?

6          PROSPECTIVE JUROR:   An RN.

7          THE COURT:   Okay.  And how long have you been a

8     registered nurse?

9          PROSPECTIVE JUROR:   Since 2006.

10         THE COURT:  And where do you work?

11         PROSPECTIVE JUROR:  Hialeah Hospital.

12         THE COURT:   And how long have you worked there?

13         PROSPECTIVE JUROR:   Since 2006.

14         THE COURT:  And tell me about this Bachelor of Science

15    degree, where are you going?

16         PROSPECTIVE JUROR:   It's an online program, WGU,

17    Western Governor's University.

18         THE COURT:   Western Governor's University.  And so,

19    it's online, so you can do it whenever you can; right?

20         PROSPECTIVE JUROR:   Yes, but I have to --

21         THE COURT:  We're not planning on working you until

22    midnight every day.  You will probably get a lot less hours

23    than you would as a nurse.  We were probably going to take two

24    or three days off a week and be done by 5:00, maybe 4:30,

25    quarter to 5:00 every day, and we will take time off during

1    this thing.

2          I don't think that you have a hardship in the real

3    sense of the word because I think that as an employee of a

4    large company, I think you are probably going to have to --

5    they're going to have to pay you, and I suspect that they will.

6          So if you have a problem, we'll deal with it, but

7    otherwise, I'm not excusing you at this time.  Okay?

8          PROSPECTIVE JUROR:  Okay.

9          THE COURT:  Thank you, ma'am.

10         PROSPECTIVE JUROR:  You're welcome.

11         THE COURT:  But you can tell your boss that you tried.

12         PROSPECTIVE JUROR:  Okay.  All right.

13         (Prospective juror exited courtroom.)

14         THE COURT:  Okay.  I want to get the dates on this

15    travel.  Farrah Wilson, please.  Bring him in -- bring -- I

16    don't want to say "her" in, but I think it might be a "her."

17         I won't even tell them which bathroom to use, but I

18    think it might be a "her."

19         (Prospective juror entered courtroom.)

20         COURTROOM DEPUTY:  Please raise your right hand.

21         (Prospective juror duly sworn.)

22         PROSPECTIVE JUROR:  Yes.

23         THE COURT:  Hi.  Tell us your name, please.

24         PROSPECTIVE JUROR:  Farrah Wilson.

25         THE COURT:   And Ms. Wilson, what is your occupation?

1            PROSPECTIVE JUROR:   I'm an evaluation coordinator for

2    the Broward County School District.

3            THE COURT:   How long have you been doing that?

4            PROSPECTIVE JUROR:   This is my third year in that

5    position.

6            THE COURT:   What exactly is an evaluation coordinator?

7            PROSPECTIVE JUROR:   Oversee all the employee

8    evaluations for the district, the teachers, administrators,

9    custodians and different departments within the school system.

10           THE COURT:   Tell me about this trip, what dates are

11   you planning on being gone?

12           PROSPECTIVE JUROR:   I'm actually leaving on

13   Thanksgiving, that morning, and coming back on Monday to

14   Houston, Texas.

15           THE COURT:   You're coming back Monday, the -- that

16   would be the 30th; correct?

17           PROSPECTIVE JUROR:   Yes, sir.

18           THE COURT:   What time do you get back?

19           PROSPECTIVE JUROR:   I want to say, like, noon.

20           THE COURT:   Okay.  And your tickets are prepaid.

21           Now, let me ask you this -- yeah, any questions from

22   the lawyers?

23           MR. FOSTER:  No, sir.

24           THE COURT:  All right.  Thank you, ma'am.

25           PROSPECTIVE JUROR:  Thank you.

1              (Prospective juror exited courtroom.)

2              THE COURT:  My inclination is to excuse her, I don't

3    want to start late the day after --

4              MR. WATTS-FITZGERALD:  We will have court that day;

5    correct?

6              THE COURT:  I'm hoping to.  I mean, it's conceivable

7    that something could come up, but I don't think -- excused.  I

8    was hoping she would be back Sunday and that would be nothing.

9              All right.  Nicholas Dalryanple.  It might be a guy.

10   Nicholas Dalryanple.

11             After we finish this group, we will take a break for

12   lunch and then come back and start the process.

13             (Prospective juror entered courtroom.)

14             (Prospective juror duly sworn.)

15             THE COURT:  Hi, there.  Tell us your name, please.

16             PROSPECTIVE JUROR:  Nicholas Dalryanple.

17             THE COURT:  Mr. Dalryanple, what do you do for a

18   living?

19             PROSPECTIVE JUROR:  A nurse.

20             THE COURT:  And what is your hardship?

21             PROSPECTIVE JUROR:  Well, I'm in school right now.

22             THE COURT:  Where are you in school?

23             PROSPECTIVE JUROR:  Miami-Dade.

24             THE COURT:  And what courses are you taking?

25             PROSPECTIVE JUROR:  I'm trying to upgrade my RN -- to

1   an RN license, so I'm currently an LPN, I'm trying to --

2          THE COURT:   You're trying to what -- your trying to do

3   your RN to a what?

4          PROSPECTIVE JUROR:  No, I'm an LPN trying to do the RN.

5          THE COURT:   Okay.  You're an LPN now?

6          PROSPECTIVE JUROR:   Yeah.

7          THE COURT:   And you want to upgrade to an RN?

8          PROSPECTIVE JUROR:   Yes.

9          THE COURT:   And what I meant by what are your courses,

10  what days and times do you have courses?

11         PROSPECTIVE JUROR:   Okay.  I'm doing anatomy and

12  physiology, and it's Monday, Wednesday and Friday.

13         THE COURT:   At what time?

14         PROSPECTIVE JUROR:   One class is 1:25 to 3:30 on

15  Monday, and then on Monday again is the lab.

16         THE COURT:   And how do you arrange that with your job?

17  Where do you work?

18         PROSPECTIVE JUROR:  I work at Rivera Health Resort.  I

19  work Thursday, Fridays, Saturdays, twelve hours overnight.

20         THE COURT:   Thursday, Friday, Saturday, you work 12

21  hours a day; is that what you said?

22         PROSPECTIVE JUROR:   Yeah, on the night shift, 7:00

23  p.m. to 7:00 a.m.

24         THE COURT:   Oh, you work from 7:00 p.m. to 7:00 a.m.?

25         PROSPECTIVE JUROR:   Yes, sir.

```
1              THE COURT:   That's Thursday, Friday, Saturday; from
2     Thursday night at 7:00 p.m. until -- okay.  So you're off
3     Mondays?  And when is the semester -- trimester or quarter or
4     whatever it is -- over?
5              PROSPECTIVE JUROR:  It should be over -- it's another
6     eight weeks, so it should be finished December 16th.
7              THE COURT:  Any questions from the lawyers?
8              MR. FOSTER:  No, sir.
9              THE COURT:  All right.  Thank you, sir.
10             PROSPECTIVE JUROR:  Thank you.
11             (Prospective juror exited courtroom.)
12             THE COURT:  We can resolve everything with a class.
13             COURTROOM DEPUTY:  One second, Judge.
14             First of all, is he a keeper?
15             THE COURT:  I don't know.  I was in the process.
16             What do you all think?  I don't think I can get around
17    that class.
18             MR. FOSTER:  That was only one class.
19             THE COURT:  He had a couple hours when I found I don't
20    think I can get around that one, I didn't see any sense in
21    pursuing it.  I'm going to excuse him.
22             What is it, Wanda?
23             COURTROOM DEPUTY:  In the "can" file, Ainee Dominguez,
24    number 34, she just got a phone call from the child's school,
25    the child has a rash, she's getting someone to pick the kid up
```

1    but then she's got to take her child to the doctor.

2         THE COURT:  Is this somebody that we have?

3         COURTROOM DEPUTY:  That can stay.

4         THE COURT:  One of the jurors that until this moment we

5    thought could, has just gotten a call from her child's

6    preschool that her child has a rash and she has to come pick

7    him up, and so she's leaving us and I suspect that I wouldn't

8    be able to stop her.  She's juror number 34 in the "can" and

9    she would be in the group that "can."  But it doesn't matter,

10   on the list, she's still 34.  Ainee Dominguez.

11        If we go more than one day selecting a jury, we may

12   call her back the second day, but I'm not stopping her from

13   going to get her child.

14        All right.  The next one is -- so I'm excusing Nicholas

15   Dalryanple.

16        Georgette Smith, nursery worker, "don't know if I can

17   be effective in arriving at an impartial decision."  I don't

18   know what that means.  I don't know what that means, but let's

19   find out.

20        COURTROOM DEPUTY:  Judge, I'm sorry, what are we doing

21   with Ms. Dominguez?

22        THE COURT:  Ms. Dominguez can go and pick up her child;

23   and if we're going to go more than one day, she needs to check

24   with you to see if we need her back tomorrow.  If we're going

25   more than one day, we may call her back tomorrow.

```
1              I don't know this means she plants or takes care of
2    kids, Ms. Smith.
3              (Prospective juror duly sworn.)
4              COURTROOM DEPUTY:  Raise your right hand.
5              (Prospective juror duly sworn.)
6              PROSPECTIVE JUROR:  Yes.
7              THE COURT:  Yes, ma'am.  Please tell us your name.
8              PROSPECTIVE JUROR:  Georgette Smith.
9              THE COURT:   Ms. Smith, what do you do for a living?
10             PROSPECTIVE JUROR:  I'm a nursery worker.
11             THE COURT:  Does that mean you plant trees or you take
12   care of children?
13             PROSPECTIVE JUROR:   Day care, day care nursery.
14             THE COURT:   How long have you been doing that?
15             PROSPECTIVE JUROR:   Since September.
16             THE COURT:   All right.  Tell me what your hardship is.
17             PROSPECTIVE JUROR:   Well, I don't know if I can be
18   impartial in any case right now.  My daughter's currently going
19   through a case hearing and I honestly don't know if I can be
20   impartial when it comes to make a judgment against anyone.
21             THE COURT:   Your daughter has -- is going through a
22   case hearing.  I don't know what that means.
23             What do you mean by that?
24             PROSPECTIVE JUROR:   She has a court case, yes.  She
25   has been accused of something.
```

1          THE COURT:   Okay.  And while we will get to that, do

2     you think that that might affect your ability to be fair and

3     impartial in a case that -- I don't know what your daughter's

4     charged with, but I'm certain it doesn't have anything to do

5     with your daughter's case.

6          PROSPECTIVE JUROR:   I'm sure it doesn't, sir, but what

7     I'm saying is -- I'm being honest with you -- that I don't know

8     if I can find someone guilty in this instance.

9          THE COURT:   Okay.

10          PROSPECTIVE JUROR:   Had it happened maybe years ago

11     that I was called, it would have been different, but right now,

12     I'm -- I'm very embroiled in the situation.

13          THE COURT:  All right, ma'am.

14          Questions, Government?  Defense?

15          MR. FOSTER:  I guess it comes down to, Judge, whether

16     she could follow your instructions after having heard the case.

17          THE COURT:  Yeah.  Do you think that if you heard the

18     evidence and were convinced one way or the other that you could

19     do -- follow my instructions and come to a true verdict?

20          PROSPECTIVE JUROR:  I would have to follow your

21     instructions, sir.  But what about my feelings?  This is what

22     I'm saying, I don't want to be in a situation that you're

23     telling me to do something, you're guiding one way, but in my

24     heart, I don't see it the way you are seeing it, because this

25     is what the situation is right now that I'm going through.

1          THE COURT:  Thank you, ma'am.  I will excuse you.  You

2     are excused.

3          PROSPECTIVE JUROR:  Thank you.  Thank you.

4          (Prospective juror exited courtroom.)

5          MR. FOSTER:  Judge, for the record we would like to

6     register an objection to that, I think the lady said that she

7     would follow your instructions.

8          THE COURT:  Yeah, but I don't think it was -- I think

9     it was pretty clear that she's very troubled and not in a

10    position to be fair and impartial.  I understand your

11    objection.  You've made your record.

12         Let's go.  I don't even know what this name is --

13    Jones, something Jones.  What is it, Wanda?  Number 65, what is

14    the first name?  Latanya Jones.

15         Bus operator, not available November 10th or 20th and

16    23rd.  How come she didn't tell them when it was on the

17    two-week calendar?

18         Bring her in, please.

19         (Prospective juror entered courtroom.)

20         COURTROOM DEPUTY:  Raise your right hand.

21         (Prospective juror duly sworn.)

22         THE COURT:  Please tell us your name.

23         PROSPECTIVE JUROR:   Latanya Jones.

24         THE COURT:   What is your occupation?

25         PROSPECTIVE JUROR:   Bus operator.

1          THE COURT:   Who did you operate a bus for?

2          PROSPECTIVE JUROR:   Broward County Transit.

3          THE COURT:   And you indicate that you'll be out of the

4    country November 20th through the 23rd?

5          PROSPECTIVE JUROR:   Yes.

6          THE COURT:   That is during the two-week period that you

7    were summoned for jury duty.   How can you do that?   How can you

8    get a ticket to go there when you're supposed to be --

9          PROSPECTIVE JUROR:   I been had the ticket before the

10   summons came.

11         THE COURT:   When did the summons -- the summons went

12   out when, Wanda, do you know?

13         COURTROOM DEPUTY:   I don't know when they go out,

14   Judge.

15         PROSPECTIVE JUROR:   Yeah, but my trip was already

16   planned.

17         THE COURT:   Well, it might have been planned, but when

18   were you ticketed?   When did you get your ticket?

19         PROSPECTIVE JUROR:   Which ticket?

20         THE COURT:   I don't know that we're discussing any

21   ticket, except your ticket to go out of the country between

22   November 20th to 23rd.

23         PROSPECTIVE JUROR:   It was beginning of September,

24   early September.

25         THE COURT:   All right.   You didn't just get the ticket

1    recently; did you?

2         PROSPECTIVE JUROR:   No, it wasn't recently.  It was

3    early September, right after the ticket, the summons came;

4    probably about a week after the ticket, the summons came.

5         THE COURT:   All right.  I will tell you what.  You'll

6    need to come back with your ticket, the date that it was

7    received, and I need to see the summons, we need to see the

8    date that the summons are.  If it checks out the way you said

9    it, I will be happy to excuse you.  If it does not check out,

10   that way we'll see.

11        So at this point I will excuse you from sitting on this

12   jury but I need to have you make arrangements with Wanda as to

13   when you will come back to show her the ticket and the summons

14   and give her the dates on the tickets and everything else, the

15   reservation and everything else.  Okay.

16        PROSPECTIVE JUROR:   Okay.

17        THE COURT:   And if it checks out, then you're fine.

18        If it doesn't check out, then you're in trouble.

19        PROSPECTIVE JUROR:   Okay.

20        THE COURT:   Thank you.

21        (Prospective juror exited courtroom.)

22        THE COURT:  Why am I so cynical?

23        Next would be Berta Rios, "I teach twice a week from

24   5:40 to 6:36 at Miami-Dade College, Saturday" -- oh, yeah, we

25   don't do that.  Okay.  Have her come in.

```
 1              With any luck, it will be the one right over here.

 2              (Prospective juror entered courtroom.)

 3              COURTROOM DEPUTY:  Raise your right hand.

 4              (Prospective juror duly sworn.)

 5              PROSPECTIVE JUROR:  Yes, I do.

 6              THE COURT:  Please tell us your name.

 7              PROSPECTIVE JUROR:  Berta Rios.

 8              THE COURT:   Ms. Rios, what is your occupation?

 9              PROSPECTIVE JUROR:   I'm a program manager at

10   Miami-Dade College and I teach two classes at Miami-Dade

11   College.

12              THE COURT:   What is a program manager, what do you do?

13              PROSPECTIVE JUROR:  I manage all the noncredit

14   offerings at the Miami-Dade West Campus.

15              THE COURT:   And where do you teach?

16              PROSPECTIVE JUROR:   I teach where or what?

17              THE COURT:   Where?

18              PROSPECTIVE JUROR:   At the Kendall campus.

19              THE COURT:   The one that's on 107th, is that more or

20   less?

21              PROSPECTIVE JUROR:   Yes, Your Honor.

22              THE COURT:   Right off the Turnpike?  It's right off

23   the Turnpike at 107th, the Turnpike extension?

24              PROSPECTIVE JUROR:   The one in Kendall, it's off of --

25   yes, 107th, yes.
```

1          THE COURT:   Okay.  What days do you teach?

2          PROSPECTIVE JUROR:   Monday -- I mean, Tuesdays and

3     Thursdays, 5:30 to 6:55, and on Saturdays.

4          THE COURT:   Okay.  Well, I don't think that we're

5     planning on going past 5:00.  I mean, it's possible that on a

6     very rare occasion, but if we have a reason not to, I think we

7     can probably avoid that.

8          So I think, if reminded, we will be able to deal with

9     your scheduling situation, okay?

10          PROSPECTIVE JUROR:  Certainly, Your Honor.

11          THE COURT:  Okay.  Thank you.

12          (Prospective juror exited courtroom.)

13          THE COURT:  Any comments on this next one before I call

14     her in?  I'm not real sure what I want to find out from her.

15     She states that she has difficulty paying attention to detail

16     and memory issues.  Not unusual at an age that is not as

17     advanced as mine.  I don't know how to deal with that.  What do

18     I do?  I guess that it's just something we need to know, but I

19     don't think it disqualifies her.

20          MR. FOSTER:  Well, Judge, I would think if she's got a

21     diagnosis or being treated or taking medication, there's some

22     clinical support for that.

23          THE COURT:  Yeah, I guess.  Any other comment from the

24     Government?  All right.  Bring her in, let me talk to her.

25     Let's talk to her.

1          (Prospective juror entered courtroom.)

2          COURTROOM DEPUTY:  Raise your right hand, please.

3          (Prospective juror duly sworn.)

4          THE COURT:  Please tell us your name.

5          PROSPECTIVE JUROR:  Yes.  My name is Wendy Walker.

6          THE COURT:  I'm sorry, what name do we have you listed

7     under because I can't read it?  Does that say "Walker?"

8          I can't read it, I apologize.

9          PROSPECTIVE JUROR:  It's Mamie Ree Walker.

10         THE COURT:  Yeah, that's okay.  No, it's my reading;

11    it's not your writing.

12         Tell me what you do for a living.

13         PROSPECTIVE JUROR:  I'm administrative assistant for

14    the Florida Department of Health.

15         MR. WATTS-FITZGERALD:  Your Honor, it's not the same

16    person.  The roster has the name Wendy S. Morhaim.

17         PROSPECTIVE JUROR:  No.

18         THE COURT:  That's not her.

19         PROSPECTIVE JUROR:  I'm Wendy Walker.

20         THE COURT:  Let me see if I can find a Wendy Walker and

21    we'll just take care of it right now.

22         PROSPECTIVE JUROR:  It's Mamie Walker, juror number 10.

23         MR. WATTS-FITZGERALD:  Mamie Walker.

24         THE COURT:  That's juror number 10.

25         That's not a juror that we're concerned with at this

 1   point.

 2          Ma'am, thank you.  I apologize for wasting your time,

 3   but we will have a lot of wasted time.  That's close.  Wendy

 4   Walker -- oh, forget it.

 5          (Prospective juror exited courtroom.)

 6          MR. FOSTER:  She didn't look 66.

 7          THE COURT:  No, but what do I know?  You know,

 8   sometimes, when we're smart and don't lose weight as we get

 9   older, we don't look as old because the wrinkles don't show up.

10          MR. WATTS-FITZGERALD:  Here I just thought she forgot

11   her last name.

12          (Prospective juror entered courtroom.)

13          (Prospective juror duly sworn.)

14          PROSPECTIVE JUROR:  I do.

15          THE COURT:   Please tell us your name.

16          PROSPECTIVE JUROR:  Wendy S. Morhaim.

17          THE COURT:  And Ms. Morhaim, what is your occupation?

18          PROSPECTIVE JUROR:   I'm a teacher.

19          THE COURT:   Who do you teach or what do you teach?

20          PROSPECTIVE JUROR:   I teach in a private school in

21   Aventura three-year-olds.

22          THE COURT:   And tell me what your hardship is.

23          PROSPECTIVE JUROR:   It's not exactly a hardship.  I

24   have a difficult time with paying attention over long periods

25   of time, and also my memory is not very good when it's involved

1   with details.

2          THE COURT:   And what -- have you ever been diagnosed

3   as having had a difficulty remembering?

4          PROSPECTIVE JUROR:   Actually, I've been suggested, my

5   doctor to go to the Wien Center at Mount Sinai to be tested.

6          THE COURT:   Okay, but you haven't had any diagnosis of

7   it?

8          PROSPECTIVE JUROR:   No.  No.

9          THE COURT:   And tell me where it is you work, the name

10  of the place.

11         PROSPECTIVE JUROR:  It's called Tauber Academy in

12  Aventura.  It's part of Aventura Turnberry Jewish Center.

13         THE COURT:  And how many people work there?

14         PROSPECTIVE JUROR:  Mmh, in the entire school?

15         THE COURT:  Yeah.

16         PROSPECTIVE JUROR:  Maybe 50.

17         THE COURT:  Okay.  Have you discussed with them that

18  you got this jury notice, your supervisor?

19         PROSPECTIVE JUROR:  I, of course, mentioned it, yes.

20         THE COURT:  And do they have any guidance for you as to

21  what they would be willing to do, pay your salary, not pay your

22  salary, what their intentions are?

23         PROSPECTIVE JUROR:  No, we didn't discuss it.  We

24  didn't talk about it.

25         THE COURT:  Okay, and are you a salaried employee?

1              PROSPECTIVE JUROR:  Yes, I am.

2              THE COURT:  Okay.  What are your hours during the week?

3              PROSPECTIVE JUROR:  8:00 to 3:30.

4              THE COURT:  Any other questions from --

5              MR. DUFFY:  Your Honor, yes.  If you would be inclined

6      to ask if the health condition --

7              THE COURT:  You can ask her.  She's right there.

8              MR. DUFFY:  Ma'am, does your health condition interfere

9      with your daily life in any way, the issues you raised about --

10             PROSPECTIVE JUROR:  I understand what you're saying.

11     Right now, insignificant ways, like I'll forget where I parked,

12     I'll forget where -- you know, things like that.  I'll forgot,

13     you know, not monumental things, but in terms of details, you

14     know, I watch a detail, I don't remember what it is; not major

15     things.

16             THE COURT:  All right.  Sir?

17             MR. FOSTER:  Yes, thank you.  Ms. Morhaim, would taking

18     notes help you remember things for details if you could write

19     notes?

20             PROSPECTIVE JUROR:  I take notes on everything.

21             MR. FOSTER:  Does that help you with your memory, by

22     referring back to notes?

23             PROSPECTIVE JUROR:  Sure.

24             THE COURT:  Anything else?  Thank you, ma'am.  If you

25     wait outside we will get right back to you.

1          Thank you very much.

2          PROSPECTIVE JUROR:  Thank you.

3          (Prospective juror exited courtroom.)

4          THE COURT:  I'm not real sure that she will be

5   compensated and that she's the only person in her home that

6   works.  I have mixed feeling about this.  I don't feel strongly

7   about it one way or the other.

8          Government, what's your position?

9          MR. DUFFY:  Your Honor, we move to strike for cause.  I

10  think that her -- she said a couple times that it interferes --

11  her memory condition and her ability to remember interferes

12  with her daily life and she gave an example of --

13         THE COURT:  In insignificant ways, she said, though.

14         MR. DUFFY:  She also said if she watches a television

15  program, she can't remember what happened in the television

16  program.

17         THE COURT:  That's not what she said.  She said if she

18  watches the television program, she doesn't know what it is.

19  She didn't say that she --

20         MR. DUFFY:  I misheard her then myself, Your Honor.

21         THE COURT:  Can't remember, yeah.

22         MR. DUFFY:  But with regard to her condition, she said

23  that a doctor had suggested that she go to a specialist and she

24  hasn't done that.  Nonetheless, that's the record that we have

25  before us and this is a case that requires the ability over a

1    period of weeks to remember at least some significant detail if

2    you're going to be able to serve as a juror adequately.  So we

3    move to strike.

4         THE COURT:  I'm still going to figure out whether I'm

5    going to let them take notes or not.  I'm inclined to probably

6    do it, but I'm not wedded to it.

7         MR. DUFFY:  The instruction are that notes are not

8    supposed to control, and it's your memory that's supposed to

9    control, that's the standard instruction and, I think, just

10   another factor here.

11        THE COURT:  Let me hear from the defense.

12        MR. FOSTER:  Well, the instruction is also that the

13   notes are for your memory and not to share with the other

14   people.

15        Judge, she said that she has some issues but she

16   continues to function, she drives, she works, she's a teacher,

17   she went to see her doctor and the doctor recommended she go

18   get testing, which she hasn't seen fit yet to receive.

19        THE COURT:  I'm not going to excuse her at this point.

20   She forgets where she parks her car.  If I didn't have a

21   reserved space, I would forget where I parked my car, too, and

22   nobody has seen to remove me from here in a straight jacket

23   yet.

24        No, I will deny your motion.

25        The next one is Maria Rosa Diaz, tax preparer.  Don't

1    think her employer pays, single mother, two children.  What I

2    earn is not enough to cover my household expenses and jury duty

3    pays less than my employer.

4          I'm not sure I fully understand that, but I get the

5    impression that she's claiming an economic hardship.  Let's

6    hear from her.

7          (Prospective juror entered courtroom.)

8          (Prospective juror duly sworn.)

9          THE COURT:  Please tell us your name.

10         PROSPECTIVE JUROR:  Maria Diaz.

11         THE COURT:  Ms. Diaz, what is your occupation?

12         PROSPECTIVE JUROR:  Tax preparer.

13         THE COURT:  Who do you work for?

14         PROSPECTIVE JUROR:  H&R Block.

15         THE COURT:  Are you independent contractor with H&R

16   Block or are you a salaried employee?

17         PROSPECTIVE JUROR:  Salaried.

18         THE COURT:  On what basis do you get paid, a weekly

19   basis?

20         PROSPECTIVE JUROR:  Weekly, biweekly, but I'm seasonal

21   employee.

22         THE COURT:  You're a seasonal employee?

23         PROSPECTIVE JUROR:  Uh-huh.

24         THE COURT:  Which means that come January, you will be

25   busy?

1          PROSPECTIVE JUROR:   Yeah.

2          THE COURT:   But right now are you working on a regular

3     basis?

4          PROSPECTIVE JUROR:   Three days a week.

5          THE COURT:   Do you get to pick what days or do they

6     tell you what days?

7          PROSPECTIVE JUROR:   I'm sorry?

8          THE COURT:   Do you get to pick what days you go to

9     work or do they tell you what days you go to work?

10         PROSPECTIVE JUROR:   I have to work Monday, Thursday

11    and Saturday.

12         THE COURT:   Monday, Thursday and Saturday?

13         PROSPECTIVE JUROR:   Uh-huh.

14         THE COURT:   Did you talk to your supervisor about this

15    jury notice that you got?

16         PROSPECTIVE JUROR?  No, no.

17         THE COURT:   They don't have any idea that you're here?

18         PROSPECTIVE JUROR:   No.

19         THE COURT:  Then how do you know that you won't be paid

20    your salary?

21         PROSPECTIVE JUROR:  But I never hear that they pay for

22    jury duty.

23         THE COURT:  Well, you never asked them.

24         PROSPECTIVE JUROR:  No.

25         THE COURT:  Why would they volunteer that to you if you

1   didn't ask them?  Why would they tell you that?

2          PROSPECTIVE JUROR:  I didn't know that I had to ask

3   them that.  I didn't know, this is my first time.

4          THE COURT:  You don't have to ask them, but if you're

5   telling me no, like you know that you're not going to be paid,

6   that implies that you know, rather than that you're guessing,

7   that they're not going to pay you.

8          PROSPECTIVE JUROR:  But I don't think that they're

9   going to pay me.  I'm not sure.

10         THE COURT:  Okay.  Will you be paid your salary while

11  you serve jury duty; no.  And that's based on conjecture?

12         PROSPECTIVE JUROR:  Yes.

13         THE COURT:  And you never discussed this with your

14  supervisor?

15         PROSPECTIVE JUROR:  No.

16         THE COURT:  Well, I tell you what, I think you maybe

17  better discuss it with him during the lunch hour; afterwards,

18  tell us again what you found out.

19         But it's my understanding, if they have more than a

20  certain number of employees, they have to pay.

21         PROSPECTIVE JUROR:  Okay.

22         THE COURT:  They don't have to pay your full salary;

23  they can deduct the $40 that you get here, but check with them

24  and see what their policy is on jury duty.

25         PROSPECTIVE JUROR:  Okay.

1         THE COURT:  Tell them it might be as much as six or

2    eight weeks.

3         PROSPECTIVE JUROR:  Yes, sir.

4         MR. DUFFY:  Your Honor, would the Court be inclined to

5    ask about the child care issue that was raised on the form?

6         THE COURT:  Where?

7         MR. DUFFY:  In form -- in the form for this juror,

8    Your Honor, it was indicated that the juror is a single mother

9    with two children.

10        THE COURT:  So a lot of people are, she doesn't say she

11   had anything.

12        MR. DUFFY:  I inferred from the child care.

13        THE COURT:  No, there's nothing there.  Thank you,

14   ma'am.  Please check so we can talk to you after lunch, okay?

15        PROSPECTIVE JUROR:  But I have two child that I have to

16   pick up from school.

17        THE COURT:  Of course, that was a good suggestion.  So

18   do a lot of people.  Thank you very much.

19        (Prospective juror exited courtroom.)

20        THE COURT:  The next one is Mary Behne.

21        (Prospective juror entered courtroom.)

22        COURTROOM DEPUTY:  Please raise your right hand.

23        (Prospective juror duly sworn.)

24        PROSPECTIVE JUROR:  I do.

25        COURTROOM DEPUTY:  Please speak up.

1          THE COURT:  Yes, ma'am.  Please tell us your name.

2          PROSPECTIVE JUROR:   Mary Behne.

3          THE COURT:  Can you pull that microphone up a little

4    bit and speak up as much as you can?  Thank you.  Pull the

5    other one up, too, they're kind of stereo.

6          What do you do for a living?

7          PROSPECTIVE JUROR:  I'm a copy editor at the Miami

8    Herald.

9          THE COURT:  And how long have you been there?

10         PROSPECTIVE JUROR:   Since 1987.

11         THE COURT:  And I've read your hardship and I'm not

12   sure it really is firmed up at this point.  You don't know if

13   you're going to be -- have difficulty.  I suspect that the

14   Miami Herald would love to have a juror in a long case, but

15   that's their business.

16         But the bottom line is, you don't know that -- well,

17   let me put it to you this way:  Your hours are regular hours;

18   correct, generally?

19         PROSPECTIVE JUROR:   Yes.

20         THE COURT:  Generally, from nine to five, or something

21   like that.

22         PROSPECTIVE JUROR:  I work the afternoon/evening shift.

23         THE COURT:  Oh, you work afternoon and evening shift?

24         PROSPECTIVE JUROR:  Yes.

25         THE COURT:  What time do you start?

1          PROSPECTIVE JUROR:   I either work like one to ten or

2     three to midnight, and I work Tuesday through Saturday,

3     usually.

4          THE COURT:   Well, this trial may take six to eight

5     weeks, and it may be -- we will probably take days off because

6     we need to, like this first week, Wednesday is a federal

7     holiday and Friday is a preexisting arrangement, so we're only

8     going to work -- you know, we're going to work, Monday, Tuesday

9     and Thursday; and then next week, we will probably work every

10    day because it's the first week of the trial.

11         But after that, I think we'll have Fridays off or

12    Mondays off during the thing.  I try to get everybody out of

13    here by 4:30, quarter to 5:00 to try to avoid most of the rush,

14    although, as you know, in Miami, that's probably impossible.

15         So then we're kind of flexible, if there's something

16    that has to come up.  I can see that it would be an

17    inconvenience for you and for your employer, although honestly

18    I thought they fired all of their editors when I keep seeing

19    misspelled words and things.

20         PROSPECTIVE JUROR:  They have cut back a lot which

21    makes it harder for any one person being gone.

22         THE COURT:  I'm sure it's impossible.  I'm sure it

23    would be very difficult.  I'm not sure it reaches the level of

24    hardship that we should excuse for that purpose.

25         Questions from the lawyers?

1          MR. FOSTER:  Judge, she mentions a trip as well.

2          THE COURT:  Oh, yeah, that's right.  The trip.  You got

3    a trip from next Sunday; correct, a week from Sunday?

4          PROSPECTIVE JUROR:   A week from Sunday.

5          THE COURT:  All the week of Thanksgiving, is that what

6    it is?

7          PROSPECTIVE JUROR:  Yes.

8          THE COURT:   How long have you had those tickets?

9          PROSPECTIVE JUROR:   I've got those tickets about ten

10   days ago when my supervisor finally told me I had the week off.

11         THE COURT:  The problem you got is that you had your

12   jury duty before then, didn't you?

13         PROSPECTIVE JUROR:  I did, but I was told at the

14   beginning of the year that there was no way I would be able get

15   Christmas off this week [sic] so I had requested Thanksgiving

16   and they told me it was likely.

17         THE COURT:  See, I don't have a problem with plane

18   tickets that were purchased, you know, a long time ago, or

19   travel arrangements that were made a long time ago, because

20   that -- but when you take a travel arrangement in the middle of

21   your two-week trial period, it makes it very difficult because

22   you were told you're going to have jury duty from these two

23   weeks.

24         PROSPECTIVE JUROR:  Yes, and I considered saying that I

25   already had this trip planned back then and perhaps I should

1   have.

2          THE COURT:  But you just told me that you didn't get

3   permission to do until --

4          PROSPECTIVE JUROR:  Official permission, yes.  My

5   supervisor had a death in his family and he put off doing our

6   schedules.

7          THE COURT:  All right, ma'am.  If you will wait

8   outside, we will get right back to you.

9          PROSPECTIVE JUROR:  Thank you.

10          (Prospective juror exited courtroom.)

11          THE COURT:  I have been corrected by my efficient

12   courtroom deputy this is the second week of the two-week trial

13   period, so next week is not in the two-week trial period so

14   they could have very easily made the arrangements.  I will,

15   therefore, excuse Ms. Behne.

16          Next is Cristina Elizabeth Garcia, worked for a family

17   business, a lot of paperwork, in charge of the paperwork,

18   length of absence, big detriment to my family's business.  Also

19   I have a trip coming up November 26th to December 3rd.  I can

20   take other shorter trials that are spaced apart.

21          MR. WATTS-FITZGERALD:  Your Honor, if we may.

22          MR. DUFFY:  Just briefly.

23          MR. WATTS-FITZGERALD:  Your Honor, the earlier witness

24   that you directed to go get the tickets and bring everything

25   back, I double-checked, she falls into that same group.  Her

1    travel was set for November 20th which would be outside this

2    area.

3            THE COURT:  Okay.  I still want to see it.  Okay.

4            Next, let's talk about Cristina Garcia.  A lot of

5    whining, a lot of can't do it, can't do it, not a lot of

6    substance.  Bring her in, let's hear it.  Let's hear it in

7    person.

8            (Prospective juror entered courtroom.)

9            COURTROOM DEPUTY:  Please raise your right hand.

10           (Prospective juror duly sworn.)

11           PROSPECTIVE JUROR:  I do.

12           THE COURT:  Please tell us your name.

13           PROSPECTIVE JUROR:  Cristina Elizabeth Garcia.

14           THE COURT:  You're going to have to speak up.  I'm

15   sorry, I can barely hear you.

16           What do you do for a living?

17           PROSPECTIVE JUROR:  I'm a secretary.

18           THE COURT:   Who are you a secretary for?

19           PROSPECTIVE JUROR:   Miami Industrial Motors, Inc.

20           THE COURT:   And what is Miami Industrial Motors, Inc.?

21           PROSPECTIVE JUROR:  It's a family business, we're

22   located in Doral and we fix things, like electrical motors,

23   pumps, generators.

24           THE COURT:   Okay.  And I've read your hardship; it

25   appears that it would be inconvenient but not impossible; isn't

1    that a more accurate way of putting it?

2            PROSPECTIVE JUROR:  It would be a very, very, very big

3    inconvenience, because I'm in charge of payroll, sales logs,

4    et cetera, and a lot of the computer support my -- it's run by

5    my uncle and my father and they're not that technology -- savvy

6    with technology.

7            THE COURT:  All right.  Tell me about your trip.

8            PROSPECTIVE JUROR:  So my trip is a family trip and

9    we've been planning it for maybe six months, and it's going to

10   be the whole clan, like 13 of us, and we're going to be going

11   to Georgia.

12           THE COURT:  Good Lord, you're planning for six months

13   to go to Georgia?  And how are you getting there?

14           PROSPECTIVE JUROR:  It's a Thanksgiving thing.

15           THE COURT:  How are you getting there?

16           PROSPECTIVE JUROR:  We're going in a van.

17           THE COURT:  In a van?

18           PROSPECTIVE JUROR:  Yes.

19           THE COURT:  Then you don't have refundable tickets or

20   anything, you're just going to drive?

21           PROSPECTIVE JUROR:  It's also the hotels, the parks

22   that we were going to go to and all that.

23           THE COURT:  Any questions from the lawyers?

24           MR. FOSTER:  No, sir.

25           THE COURT:  All right, ma'am, thank you.  If you'll

1   wait outside, we'll get right back to you.  Thank you.

2              (Prospective juror exited courtroom.)

3              THE COURT:  We only got four more to go before lunch,

4   so...

5              Comments?  I don't really think we want to force this

6   lady to be here.  Anybody -- any objection, folks?

7              MR. FOSTER:  I think the trip is the reason and not

8   the --

9              THE COURT:  Yeah, yeah.  I think it's a combination

10  that "trips" it over.  All right.

11             COURTROOM DEPUTY:  Is she excused, Judge?

12             THE COURT:  All right.  Eddie Toledo.

13             MR. FOSTER:  She is excused, sir; is that correct?

14             THE COURT:  Yes, she is excused.

15             I guess we will find out what he's talking about.  He's

16  an optician.

17             Bring him in.  Maybe this guy only gets paid if he

18  makes people wear glasses or something.

19             (Prospective juror entered courtroom.)

20             COURTROOM DEPUTY:  Raise your right hand.

21             (Prospective juror duly sworn.)

22             PROSPECTIVE JUROR:  Yes.

23             THE COURT:  Please tell us your name.

24             PROSPECTIVE JUROR:   Eddie Toledo.

25             THE COURT:   And Mr. Toledo, what is your occupation?

1              PROSPECTIVE JUROR:   I work at an optical, and my

2    parents own a business.

3              THE COURT:   Okay.   What -- where do you work?

4              PROSPECTIVE JUROR:   It's a company called For Eyes;

5    and my parents own a grocery store.

6              THE COURT:   And what do you do at For Eyes?

7              PROSPECTIVE JUROR:   I'm a sales associate.

8              THE COURT:   And what do you sell?

9              PROSPECTIVE JUROR:   Glasses.

10             THE COURT:   And how many hours a week do you work

11   there?

12             PROSPECTIVE JUROR:   Between 25 and 35.

13             THE COURT:   What are your hours?

14             PROSPECTIVE JUROR:   Usually, I'm on call, but I mostly

15   work during the week.

16             THE COURT:   What hours during the week do you work,

17   usually?

18             PROSPECTIVE JUROR:   Ten to six, nine to five.

19             THE COURT:   How do they call you to tell you to be

20   there?

21             PROSPECTIVE JUROR:   Usually, when someone's sick or

22   they're taking vacation, they will call me in.

23             THE COURT:   What does your parents' business have to

24   do with this?

25             PROSPECTIVE JUROR:   I also work there.

```
1              THE COURT:   What do they do for a living?

2              PROSPECTIVE JUROR:  They own a grocery store.

3              THE COURT:   And what do you do at the grocery store?

4              PROSPECTIVE JUROR:   Just a cashier.

5              THE COURT:   What are your hours for there?

6              PROSPECTIVE JUROR:   Whenever they need me, really.

7              THE COURT:   What are the hours of the grocery store?

8              PROSPECTIVE JUROR:   It's open from seven to 11.

9              THE COURT:   Seven in the morning to 11 at night?

10             PROSPECTIVE JUROR:   Yes, sir.

11             THE COURT:   We're not going to be working from seven

12     to 11, I promise you that.  And we are probably going to be

13     through by 4:30, quarter of five everyday, and we're only going

14     to work sometimes three, usually, four days a week.

15             And so, I don't think that your schedule would be

16     unduly influenced by our trial.  I think that you could -- we

17     could probably work around most of the stuff.

18             Questions by the lawyers?

19             MR. FOSTER:  Just the same question, sir, if this

20     gentleman asked his employer at the optical store --

21             THE COURT:  Yes, does the person at the optical store

22     that you work in as a sales associate know that you got jury

23     duty?

24             PROSPECTIVE JUROR:  No.

25             THE COURT:  Thank you, sir.
```

```
1              PROSPECTIVE JUROR:  You're welcome.

2              (Prospective juror exited courtroom.)

3              THE COURT:  Any comments?  I vote no and my vote counts

4    most.

5              MR. WATTS-FITZGERALD:  I vote no.

6              THE COURT:  I think he was trying to weasel out but not

7    real hard.

8              Next one, Alexandria Bastien, membership coordinator of

9    the Y.M.C.A., full-time student at Miami-Dade, Kendall;

10   full-time salary at Y.M.C.A.; can't miss any days of school

11   because of -- after three absences, you drop a letter.  Oh,

12   yeah, we can work on that.

13             For work, just got promoted as a coordinator and I have

14   duties, events to complete in the next few weeks.

15             Let's hear it, bring her in, please.  We only have two

16   after this -- one after this.

17             (Prospective juror entered courtroom.)

18             COURTROOM DEPUTY:  Raise your right hand.

19             (Prospective juror duly sworn.)

20             THE COURT:  Please tell us your name.

21             PROSPECTIVE JUROR:  Alexandra Bastien.

22             THE COURT:   And Ms. Bastien, what is your occupation?

23             PROSPECTIVE JUROR:   I work for the South Dade Y.M.C.A.

24   in Kendall.  I'm the membership coordinator.

25             THE COURT:   And how long have you been doing that?
```

1        PROSPECTIVE JUROR:  I just got a promotion with that

2    title, but I've been there for five years.

3        THE COURT:  Tell me about your hardship with the junior

4    college -- excuse me -- Miami-Dade College.  They're not a

5    junior college anymore.

6        PROSPECTIVE JUROR:  Right now, I'm studying business

7    in my Bachelor's, and I go to school Monday through Thursday.

8        THE COURT:  What are your hours?  What classes do you

9    have?  What time do you have classes?

10        PROSPECTIVE JUROR:  Like, today, I had class in the

11   morning at 8:25, and then I go to work, and then I have a class

12   again at 8:30 p.m.  That's my Monday and Wednesday schedule.

13        And Tuesday and Thursday, I have class 8:25 to 12:30.

14        THE COURT:  In the morning?

15        PROSPECTIVE JUROR:  Yes, and then I go to work after.

16        THE COURT:  So your hours at work are worked around

17   your school?

18        PROSPECTIVE JUROR:  School.

19        THE COURT:  How many people work at the Y?

20        PROSPECTIVE JUROR:  It's a big facility.

21        THE COURT:  Yeah, I know.

22        PROSPECTIVE JUROR:  We have different departments.

23        THE COURT:  How many people work at the Y.M.C.A.,

24   ballpark?

25        PROSPECTIVE JUROR:  Maybe 40.

1          THE COURT:   How many membership coordinators do they

2   have?

3          PROSPECTIVE JUROR:   Just one.

4          THE COURT:   You're it?

5          PROSPECTIVE JUROR:   Yeah.

6          THE COURT:   And your hours there are around your

7   school work?

8          PROSPECTIVE JUROR:  Yes.

9          THE COURT:   Why couldn't they be around your jury

10  duty?  In other words, if we quit at 4:30, 5:00 every day, you

11  could go in and do whatever, something.

12         How are you paid, on an hourly basis or on a --

13         PROSPECTIVE JUROR:   Salary.

14         THE COURT:  Is your salary computed on a weekly,

15  biweekly, monthly basis?

16         PROSPECTIVE JUROR:   Biweekly.

17         THE COURT:   All right.  Questions from the lawyers?

18         MR. FOSTER:  About her school and the effect of missing

19  the classes because she says that she's going four days a week;

20  is that correct?

21         PROSPECTIVE JUROR:  Yes.

22         THE COURT:  Monday, Tuesday, Wednesday, Thursday;

23  correct?

24         PROSPECTIVE JUROR:  Yes, Monday through Thursday.

25         THE COURT:  Yeah, I don't think I need that.  Anything

1    else?  If not, thank you, wait outside and we will get back

2    with you in just a second.  Thank you very much.

3         PROSPECTIVE JUROR:  Okay, thank you.

4         (Prospective juror exited courtroom.)

5         THE COURT:  I'm going to excuse her.  Any objection?

6         MR. FOSTER:  (No verbal response.)

7         THE COURT:  Okay.  Kelly Jane Olivella, maybe.

8         (Prospective juror entered courtroom.)

9         (Prospective juror duly sworn.)

10        THE COURT:  Tell us your name, please.

11        PROSPECTIVE JUROR:   My name is Kelly Olivella.

12        THE COURT:  And what is your occupation?

13        PROSPECTIVE JUROR:  I am curriculum coordinator at

14   St. Thomas Episcopal Parish School.

15        THE COURT:   How long have you been doing that?

16        PROSPECTIVE JUROR:  This is my second year.

17        THE COURT:   And tell me about this conference you're

18   attending.

19        PROSPECTIVE JUROR:  I'm attending a tech education

20   conference at St. Episcopal Parish School on Thursday and

21   Friday called "Miami Device."  I am the leader --

22        THE COURT:   And where is that located?  Where is it

23   going to be?

24        PROSPECTIVE JUROR:   In the Grove, in Coconut Grove.

25        THE COURT:   Okay.

```
 1              PROSPECTIVE JUROR:  I am the leader of my team, my

 2   school's team that is heading to Miami Device.

 3              THE COURT:   And tell me about this trip to

 4   Philadelphia; what's there?

 5              PROSPECTIVE JUROR:   My family.

 6              THE COURT:  And how long have you had this trip

 7   planned?

 8              PROSPECTIVE JUROR:   Months.  It's for Thanksgiving.

 9              THE COURT:   And are you flying?

10              PROSPECTIVE JUROR:   Yes.

11              THE COURT:   Any questions by the lawyers?

12              MR. WATTS-FITZGERALD:  No, sir.

13              THE COURT:  Thank you, ma'am.  You are excused from

14   jury service on this case.

15              PROSPECTIVE JUROR:  Thank you.

16              (Prospective juror exited courtroom.)

17              THE COURT:  Wanda, how many do we have now that you did

18   not excuse in this group?  I know we had 37 that said they

19   could serve and now --

20              COURTROOM DEPUTY:  I will tell you what we have, one,

21   two, three, four, five, six, seven -- I have 50 all together.

22              THE COURT:  We have 50 all together, prospective

23   jurors, which is probably a workable number so we probably will

24   not need to go back and get more.  But if we do, we do, we will

25   deal with it if we have to.
```

1          We will start right after lunch, let's go until 2:30,

2     this will give us enough time to get lunch and get back.  We

3     will line them up as we did the last time, the first four in

4     the front and then five, you know, serpentine, and we may need

5     another row on the other side or -- go ahead, do you think we

6     will be all right with that?

7          COURTROOM DEPUTY:  I have enough room for 80 people.

8          THE COURT:  That's if you use both sides, no, you're

9     not using both sides, you're going to go on this side.  Okay.

10    Then we will -- yeah.

11         MR. FOSTER:  Are you going to collapse all of them

12    together so there are no empty seats in between?

13         THE COURT:  Yes, and we will be clear as to who's who.

14    Thank you very much.  We will be back at 2:30.

15         Thank you.

16         (Lunch recess taken from 12:57 p.m. to 2:39 p.m.)

17         COURTROOM DEPUTY:  All rise.

18         THE COURT:  Be seated, please.  We don't have 80, we

19    have 78, because two of them are, apparently, in the middle,

20    and in the mountain time zone or something, and they --

21         COURTROOM DEPUTY:  We have 52.

22         THE COURT:  Fifty-two of the original 80, 78 and 80,

23    which are two of the last three, maybe we won't reach them.

24    Maybe we don't have to worry.  Yes, sir?

25         MR. WATTS-FITZGERALD:  One went to take care of their

1    child.

2         THE COURT:  No, we're not counting that one.  That one

3    is coming back later if we need her.  That's not one of the two

4    that just didn't show up, just didn't show up, and I am going

5    to be harsh.

6         Bring in the 50; is that what we have now?

7         COURTROOM DEPUTY:  Fifty-two.

8         THE COURT:  I thought you were missing two, so you got

9    50.

10        COURTROOM DEPUTY:  Fifty, Your Honor.

11        THE COURT:  That's the way it works.

12        COURTROOM DEPUTY:  All right.

13        (Prospective jurors entered courtroom at 2:40 p.m.)

14        COURTROOM DEPUTY:  Judge, 78 came.

15        THE COURT:  Okay.  Be seated, please.

16        The case set for trial today is that of USA versus Fred

17   Davis Clark, Junior, also known as Dave Clark, Case Number

18   13-10034-CR-Martinez.

19        Are counsel ready to proceed?

20        MR. DUFFY:  Yes, Your Honor.

21        MR. RODRIGUEZ:  Yes, Your Honor.

22        THE COURT:  Okay.  Ladies and gentlemen, I want to

23   welcome you to our courtroom.  I am District Judge Jose E.

24   Martinez, and I will be presiding over you in this case.

25        Wanda, you tell me that one of the jurors hasn't shown

1    up after lunch?

2              COURTROOM DEPUTY:  Yes, Judge.  That will be Number 80.

3              THE COURT:  Juror 80.

4              COURTROOM DEPUTY:  Number 80.

5              THE COURT:  Have the U.S. Marshal find them and bring

6    them to me during the next recess.

7              You know when you just don't show up after something

8    when you say you're going to show up, look how many people are

9    waiting for you and think how inconsiderate it is.  I mean, it

10   really is very inconsiderate, and it's just not right.

11             When everybody else gets here, you guys got here in

12   time, why can't everybody get here in time?

13             If they show up with a cast on, okay, I'll buy that.

14   If they don't have a really good excuse, they're in trouble,

15   it's just not right, and it happens all the time, not every

16   day, but after every recess we're waiting for somebody and it's

17   just not right, it's very frustrating to me, and I apologize

18   for being frustrated and I'm obviously not frustrated at you,

19   I'm frustrated at people who think -- I don't know what they

20   think.

21             Anyway, the jury is one of our most cherished rights.

22   It is recognized, preserved and protected by our Constitution.

23   Jury service is one of the most important duties that a citizen

24   can be called upon to perform.

25             Without you, our judicial system could not function.

 1          Hold on a second.

 2          I am aware that for some of you this is your first call

 3     to jury service, and that these proceedings are totally

 4     unfamiliar to you.  Please do not be apprehensive.

 5          As we go along, we do this a lot, if you have

 6     questions, hold on to them for a while because we probably will

 7     answer the question routinely as we go through.

 8          If you have questions, hold on to them.  You will be

 9     given an opportunity, please ask.

10          During the trial, you will be working with several

11     court personnel.  I would like to introduce them to you at this

12     time.

13          Our courtroom deputy is Wanda Holston, the lady that

14     has been herding you around, she runs my courtroom calendar.

15     She will make sure you have everything that you need.

16          Our official court stenographer isn't here, but we have

17     an equally competent one, Glenda Powers.  That's the lady

18     that's in front of me.  My regular court stenographer is Dawn

19     Whitmarsh, and she will be here -- I don't know when it is, but

20     I know she's getting married; next week she's getting married,

21     Saturday she's getting married.

22          COURTROOM DEPUTY:  No, her wedding was this past

23     Saturday.

24          THE COURT:  I missed that one, too.  I was at a

25     football game.  You know, you've got to have your priorities.

1          And she knew.  She invited me, but it was kind of,

2     like, formality.  Anyway, she's on her honeymoon and she'll be

3     here shortly.

4          She records everything that's said in the courtroom

5     including the statements that I'm now making, the questions

6     that will be asked of you, your answers, and all other matters

7     in this case.

8          But if she can't hear it, she can't write it down; and

9     you'll notice there is a substantial difference in the ability

10    to hear when you use the microphone or you don't use the

11    microphone.

12         So there is a handheld microphone that will be given to

13    you when it's time for you to answer questions, and I would

14    very much appreciate if you would make believe that this was a

15    few years ago and you were at karaoke night and you are having

16    a good time, project, talk, speak up, hold the microphone up

17    close to your mouth.  It's very important that you project

18    and -- I guess, I'm used to it, so I do -- so even without a

19    microphone, I can probably talk loud enough that most of you

20    can hear me, but most people don't and that's just not the way

21    they normally do.  They probably would be considered rude.

22         I do have an indoor voice so I don't use this voice all

23    the time.  The point is, please try to help us out and speak

24    loudly.

25         We also have a court security officer.  There's one

1    here, there's one in the back.  I was given the name Alan

2    Latourre and Luis Diaz-Ley, but I know Alan and he's not here;

3    so, they're kind of fungible, but you will see them wearing

4    their blue blazers with the badge of office on the outside and

5    gray flannel slacks.  Their job is to enforce my orders and

6    take charge of the jury.  They work for the United States

7    Marshal Service.

8             If you desire information concerning your personal

9    welfare, you should make your inquiries to the court security

10   officer or courtroom deputy, who will, if necessary, arrange

11   with me to hear you on such matters.  You can also ask the

12   court reporter, but you must not question any of them or

13   anybody else concerning the case.

14            As you'll hear over and over again until you're sick of

15   hearing it, the only evidence in this case which you may

16   consider is the evidence that you hear from the witness or the

17   evidence that is presented to you in the form of an exhibit, or

18   any stipulations that are entered into by the parties.

19            You will now be sworn.  Ms. Holston, would you please

20   administer the oath to the Panel?

21            COURTROOM DEPUTY:  Yes, Judge.  Would all prospective

22   jurors please rise, raise your right hand.

23            You and each of you do solemnly swear or affirm that

24   you will well and truly answer all questions propounded to you,

25   touching upon your qualifications to serve as jurors in the

1    case before this Court, so help you God?

2          PROSPECTIVE JURORS:  (Collectively.)  I do.

3          THE COURT:  Please be seated.  Ladies and gentlemen,

4    you're now under oath; that has significance, and I will tell

5    you what the significance is.

6          There was an article in the Miami Herald a couple of

7    years ago, they were very upset because a young man in Broward

8    County had been selected as a juror and when he was being

9    questioned, he forgot he had a felony conviction.

10         Now, I think I'd probably remember if I had a felony

11   conviction, but, you know, "I don't remember" is an acceptable

12   answer, but not if it's not true.

13         So you have to remember that you are under oath, and if

14   you answer questions falsely you can be subject to perjury or

15   serious charges, so please do your best.  "I don't know" is a

16   perfectly acceptable answer, "I don't remember" is a perfectly

17   acceptable answer, assuming it's true.

18         Some things are kind of hard to figure.

19         I remember a trial many, many years ago when a witness

20   was asked, isn't it true, sir, that you were in a DC-3 that

21   crashed with 40,000 pounds of marijuana on a strip in Colombia

22   and he said, "I don't remember," okay, I don't think so.

23         I mean, if you ask a parent, have you ever lost a

24   child, it's not the kind of thing you don't remember.  So,

25   please, if you don't remember, perfectly acceptable; but if you

1  do, give us the answer.

2       This part of the case is known as the "Jury Selection

3  Examination," where we question you touching on qualifications

4  to serve as jurors in this particular case.  It doesn't mean

5  you're not qualified to be a perfectly good juror in a

6  different kind of case, but it's just to give the lawyers a

7  little bit of a feel for your background.

8       If this were a rape case, it would be very difficult

9  for a person who had been the victim of a rape to be reasonable

10  about, you know, what the evidence is.  They may not be the

11  very best juror for that; they may be, but they may not be, and

12  it's something that I think the parties have a right to hear.

13       So we will ask you questions about your background.

14  It's not for -- it's for the purpose of determining if your

15  decision in this case might be affected in any way by opinions

16  you now hold, or by some personal experience or special

17  knowledge you may have concerning the case to be tried.

18       Our goal is to obtain jurors who will impartially try

19  the issues on this case upon the evidence presented in this

20  courtroom without being influenced by any other factors.

21       Please understand that this questioning is not meant to

22  pry into your affairs for personal reasons.  It's only for the

23  purpose of attempting to obtain an impartial jury.

24       I was a trial lawyer for 37 years.  I've been a judge

25  for over 13 years now.  I can honestly say I do not remember

1    the answer to one question that was given to me during a jury

2    selection examination.

3         You'll note the lawyers have pieces of paper in front

4    of them and will be writing things down.  You will be saying

5    something and they will write it down, it will go from their

6    brain through their arm to their pencil or pen, and then it

7    will be written down; and after you've been selected, it will

8    go in the briefcase and they will probably never look at it

9    again, unless an issue comes up on the jury selection.

10        But it's important that we get to hear so they have the

11   opportunity to exercise challenges, which they have and they

12   have a right to exercise.

13        Now, not all of you will have the privilege to sit as

14   your jurors in this case.  There are many reasons why a person

15   may not be selected as a juror.  Either side can ask that you

16   be excused without giving a reason, or I can excuse you without

17   any reason.

18        If you are excused, please do not be offended or feel

19   that your integrity is being questioned.  It is not.

20        Ladies and gentlemen, this case is expected to last

21   approximately five, six, seven weeks.  I'm going to do my best

22   to make it shorter.  You will hear me pushing both lawyers, and

23   it isn't because I'm mad at that, it isn't because I don't like

24   them -- I like all of the lawyers involved in this case, I've

25   had experience with all of them, they're good guys or ladies,

1    whatever they are -- but the bottom line is I'm going to push

2    them sometimes and you will hear me and you will see me.

3         So I'm going to try to get it done earlier, but we can

4    count on a few weeks, and we've already asked you if the length

5    of the case presents any particular problem, but I need you to

6    be honest with me before you are selected as a member of the

7    jury.

8         There is nothing more frustrating as a judge to go

9    through this procedure -- and you'll see that it takes a couple

10   hours and we ask each of you a lot of questions -- and then to

11   have somebody afterwards -- and the last question that we ask

12   you is:  "Can you think of any reason why you could not sit as

13   a fair and impartial juror in this case?"

14        And then, to have somebody selected as a juror and have

15   them, "Wanda, I can't be here tomorrow.

16        "What?  Why can't you be here?

17        "Well, I can't.

18        "You should have told the Judge."

19        By then, it's too late.  I don't want to hear about it

20   once you've been selected as a juror; do you understand what

21   I'm saying?  Tell me beforehand.  We will try to work with you.

22        If you have open heart surgery coming up tomorrow, I

23   will get you a couple aspirin you can chew, maybe you can get

24   by a couple days or something.  I'm kidding, but you know what

25   I'm saying, we can try to work around any problem that you have

1      if we know about it.

2             But if we don't know about it, there's not a blessed

3      thing I can do about it.  And I can tell you that when you face

4      the reality of, I have been selected to this jury and I have to

5      be here tomorrow, is not the time to start telling me about

6      real or imagined problems that keep you from being a juror.  At

7      that point, my ears shut up and my ears close up and I don't

8      hear a lot.

9             In this case, the United States has charged Defendant

10     Fred Davis Clark, Jr., with:  One count of violating Title 18,

11     United States Code, Section 1349, which makes it a federal

12     crime to conspire to commit bank fraud; three counts of

13     violating 18 USC, Section 1344, which makes it a federal crime

14     to commit bank fraud; three counts of violating 18 USC, Section

15     1014, which makes it a federal crime to knowingly make a false

16     statement or report to a federally-insured financial

17     situation (sic); one count of violating 18 USC, Section 1349,

18     which makes it a federal crime to conspire to commit mail fraud

19     or wire fraud; and three counts of violating 18 USC, Section

20     1341, which makes it a federal crime to commit mail fraud, and

21     one count of violating 18 USC, Section 1512(c)(2) -- and you

22     don't have to remember the numbers, they will be written down

23     for you -- which makes it a federal crime to corruptly try to

24     influence, obstruct or impede the due administration of the law

25     under which a pending proceeding is being conducted before an

1    agency of the United States, such as the United States

2    Securities and Exchange Commission.

3           Now, has anyone heard anything about this case?  Okay.

4    We'll get into more details later.

5           Before I ask you the questions listed on the

6    questionnaire that was given to you, I'm going to ask the

7    attorneys to introduce themselves and their clients, and please

8    tell me if you know any of the attorneys or parties.

9           Counsel.

10          MR. DUFFY:  Thank you, Your Honor.  Ladies and

11   gentlemen, my name is Assistant United States Attorney Jerrob

12   Duffy, along with Assistant United States Attorney Thomas

13   Watts-Fitzgerald, and Special Assistant United States Attorney

14   Michael Padula, and joined by one of our case agents, Special

15   Agent David Capizola.  We are the team prosecuting this case.

16   Thank you.

17          THE COURT:  Do any of you know any of those folks?

18   Okay.

19          Counsel.

20          MR. RODRIGUEZ:  Yes, good afternoon, Ladies and

21   Gentlemen of the Jury.  My name is Valentin Rodriguez and Todd

22   Foster over here, Ashley Rector over here, and Linda Moreno

23   helping out today, and this is the defendant, Fred Davis Clark.

24          THE COURT:  Do any of you know any of those folks?

25   Okay.

1          Now I'm going to ask the parties -- and the defense

2    does not have to do this -- to read you a list of the witnesses

3    that are expected to testify in this case.  Please listen

4    carefully and tell me whether you know any of these persons,

5    and if they say "Juan Garcia," I'm going to ask them to go into

6    a little more detail because I think there's probably more than

7    two of those in town.  Go ahead.

8          MR. WATTS-FITZGERALD:  Thank you, Your Honor.  The

9    United States likely will call, or at least potential witnesses

10   listed in this matter include the following:

11         Martin Abad, Diane Browning, Christine Clark, Luis

12   Garcia, William Lee, Keith Miles, David Newman, Rudolf Prajza,

13   Sherry Rinald, Larry Samaron, Debbie Smith, Patricia Sugar,

14   John Allison, Victoria Cabanela, Kathy Cody, David Gerchy,

15   Joann Levitt, Mary Minor, Joseph Perera, Deanna Priday, William

16   Robbins, Amy Sargent, Oleg Sokolov, Thomas Tatro, Martin

17   Borcheck, Jason Catarineau, Scott Diehl, Barry Graham, Amanda

18   Logan, Navadip Najjar, Ian Petagalong, Robert Ryan, Jerry

19   Salzer, Pritam Singh, Ricky Stokes, Stacy Thrasher, Fernando

20   Torres, Barry Waddell, Andrew Joe Zahn, Mirtha Valdes-Martin,

21   Nanci Wynn, Mary Zecca, Kathleen Val and Maria Yip.

22         THE COURT:  Do any of you know any of those folks that

23   were just mentioned?  All right.

24         Defense?  Okay.

25         There are certain legal principles that govern this and

1    every case.  I'm going to go through some of these now.

2              An accused is presumed to be innocent.

3              Is there any one of you who cannot fully accept that

4    principle in this case?

5              A defendant cannot be found guilty unless his or her

6    guilt is proved beyond a reasonable doubt.

7              Is there any one of you who cannot accept that

8    principle in this case?  Those are the rules under which we do

9    this -- the rules that we follow in this court.

10              A defendant need not testify in his own behalf, and if

11    he does not, you can draw no inference of guilt from that fact.

12              Is there any of you who cannot fully accept that

13    principle in this case?

14              A defendant can be convicted only upon evidence

15    presented against him in open court and not upon anything that

16    you may hear or read outside the courtroom.

17              You're going to hear that a lot.  Every time you leave

18    here, I'm going to tell you, don't try to read or listen to

19    anything about this case; if anybody tries to talk to you about

20    the case, let me know immediately.

21              This courtroom is the opposite of Vegas, if it doesn't

22    happen here, it didn't happen.  It's got to happen in here,

23    you've got to hear it from the witness stand or you've got to

24    hear it from a piece of evidence, or it has to be an agreement

25    between the parties.

1          If it didn't happen here, it didn't happen.

2          A juror must accept and apply the law as given to him

3   or her by the Court, even though you might think the law is or

4   should be different.

5          We have different functions.  You are the judges of the

6   facts.  You are the ones that are going to listen to the

7   testimony, listen to the people testifying, and at the end,

8   after you've heard all the evidence you're going to say, I

9   believe that one.  I don't believe that one.  I believe this.

10  I don't believe that.

11          You're going to decide who's telling the truth and

12  you're going to decide what the facts are in the case.  You are

13  the judges of the facts.  I am the judge of the law.

14          What I will do is when we get to a point I'll ask both

15  sides to give me their input on what they believe the law is.

16  I will check with my law clerks, both of whom are smarter than

17  I am, and they will tell me what I think the law is, and then I

18  will have to decide.

19          Once I decide, I will tell you what the law is that's

20  governing this case.  If I am wrong, there are judges in

21  Atlanta and several other cities that work for the Eleventh

22  Circuit that are happy to tell me that I am wrong and they will

23  do that if they think that I've made a mistake.  But we decide

24  what the law is, you decide what the facts are.

25          Is there any one of you who is not willing to accept

1    and apply the law as given to you by the Court?

2            Is there any of you who do not accept the jury system?

3            Is there any reason at all why you think you might be

4    in any way partial to the Government or to the defendant in

5    this case without knowing any more facts than you already know,

6    which is very little?

7            Is there any one of you who is not willing to decide

8    this case solely on the evidence and the law, because that's

9    your function.  I will tell you the law, you decide what the

10   evidence is.

11           Okay.  Now I'm going to ask each of you to stand and

12   individually answer the first few questions.  Let's start

13   with -- I don't know who it is I'm starting with, because I

14   don't have the list here.  Do I?

15           COURTROOM DEPUTY:  Yes.

16           THE COURT:  I want to know who's left because I know

17   that we don't have everybody here.  Okay.

18           Antonio Reyes, get the microphone and face the lawyers

19   because those are the ones that are going to have to make the

20   choice.

21           Yes, sir, please tell us your name.

22           PROSPECTIVE JUROR:   My name is Antonio Reyes.

23           THE COURT:  And what is your occupation?

24           PROSPECTIVE JUROR:  I'm a heavy-equipment technician.

25           THE COURT:  And how long have you been doing that?

1        PROSPECTIVE JUROR:  I've been working that now for 12

2  years on different workplaces.

3        THE COURT:  What part of the community do you live in?

4        PROSPECTIVE JUROR:  I live in Miami.

5        THE COURT:  The City of Miami?

6        PROSPECTIVE JUROR:  Specifically, Hialeah.

7        THE COURT:  Hialeah.  When I ask where you live, I

8  don't want your street address, your home.  I'd like, you know,

9  like maybe Coral Gables, South Miami, Hialeah, North Miami,

10  Little River, Allapattah, whatever, Little Haiti, Little

11  Havana, that's the general area just to give us an idea.

12        How long have you lived in the Greater Miami area?

13        PROSPECTIVE JUROR:  I living 12 years in Miami area.

14        THE COURT:  What is your marital status?

15        PROSPECTIVE JUROR:  I am divorced.

16        THE COURT:  How long have you been divorced?

17        PROSPECTIVE JUROR:  More than 20 years.

18        THE COURT:  We don't care what you did then.  How about

19  your -- do you have children?

20        PROSPECTIVE JUROR:  Yeah, I got a children.  I got a

21  daughter, seven-years-old daughter.

22        THE COURT:  Seven-year-old daughter?

23        PROSPECTIVE JUROR:  Yeah.

24        THE COURT:  Okay.  Thank you, sir.

25        Pass the microphone to your right.

1          Yes, sir.  Please face the lawyers and tell us your

2     name.

3          PROSPECTIVE JUROR:  My name is Joseph Simpson.

4          THE COURT:  And Mr. Simpson, what is your occupation?

5          PROSPECTIVE JUROR:  I am a management consultant, been

6     a management consultant for three-and-a-half years.

7          THE COURT:  Who do you work for?

8          PROSPECTIVE JUROR:  Myself.

9          THE COURT:  You're --

10         PROSPECTIVE JUROR:  Self-employed.

11         THE COURT:  How long have you been doing this kind of

12    work?

13         PROSPECTIVE JUROR:  I've been doing this for

14    three-and-a-half years.

15         THE COURT:  What did you do before that?

16         PROSPECTIVE JUROR:  Before that I was director of

17    operations for a luxury goods company.

18         THE COURT:  Which one?

19         PROSPECTIVE JUROR:  Louis Vuitton.

20         THE COURT:  What is it?

21         PROSPECTIVE JUROR:  Louis Vuitton.

22         THE COURT:  Oh, Vuitton.  I don't buy fancy stuff so I

23    wouldn't know, but I've heard that's really good stuff.

24         Tell me about the part of the community that you live

25    in.

```
 1                PROSPECTIVE JUROR:   I live in Miami Beach.

 2                THE COURT:   How long have you lived in the Greater

 3    Miami area?

 4                PROSPECTIVE JUROR:   I lived in the Greater Miami area

 5    for 11 years.

 6                THE COURT:   What is your marital status?

 7                PROSPECTIVE JUROR:   I am single.

 8                THE COURT:   Any children?

 9                PROSPECTIVE JUROR:   No children.

10                THE COURT:   Thank you.  Pass the microphone, please.

11                Hi, there.

12                PROSPECTIVE JUROR:   Hi.

13                THE COURT:   What's your name, please.

14                PROSPECTIVE JUROR:   My name is Megan Noicely-Moulton.

15                THE COURT:   And what is your occupation?

16                PROSPECTIVE JUROR:   I'm a licensed clinical social

17    worker for the VA.

18                THE COURT:   And how long have you been doing that type

19    of work?

20                PROSPECTIVE JUROR:   Twenty or so years, but I've been

21    with the VA three years.

22                THE COURT:   Where were you working before then?

23                PROSPECTIVE JUROR:   With Veteran's New Life Haven,

24    which is also working with veterans.

25                THE COURT:   What part of the community do you live in?
```

1          PROSPECTIVE JUROR:   I live on the county line, north

2     of here.

3          THE COURT:   Northeast, Northwest?

4          PROSPECTIVE JUROR:   Northwest.

5          THE COURT:   Northwest, okay.  And what is your marital

6     status?

7          PROSPECTIVE JUROR:   I'm married.

8          THE COURT:   Does your husband work outside the home?

9          PROSPECTIVE JUROR:   Yes, he does.

10         THE COURT:   What does he do?

11         PROSPECTIVE JUROR:   He works his own business.  He

12    makes clothing and drapes and everything.

13         THE COURT:   What about children?

14         PROSPECTIVE JUROR:   I have one daughter who's 15.

15         THE COURT:   She's probably still in school; right?

16         PROSPECTIVE JUROR:   She's in high school.

17         THE COURT:   You need to get her working.  Thank you.

18    Pass the microphone to your right, please.

19         PROSPECTIVE JUROR:   Hello.

20         THE COURT:  Hi, what's your name?

21         PROSPECTIVE JUROR:   Deborah Cross-Williams.

22         THE COURT:  Face them because they're the ones making

23    the choices.

24         What do you do for a living?

25         PROSPECTIVE JUROR:  I work at Miami-Dade College as a

1   program assistant.

2           THE COURT:  How long have you been doing that?

3           PROSPECTIVE JUROR:   Maybe ten years in December.

4           THE COURT:   What part of the community do you live in?

5           PROSPECTIVE JUROR:   Allapattah.

6           THE COURT:   How long have you lived in the Greater

7   Miami area?

8           PROSPECTIVE JUROR:   All my life.

9           THE COURT:  And what is your marital status?

10          PROSPECTIVE JUROR:   Married.

11          THE COURT:   And does your husband work outside the

12  home?

13          PROSPECTIVE JUROR:   Yes.

14          THE COURT:   What does he do?

15          PROSPECTIVE JUROR:   He works for the City of Miami --

16  City of North Miami.  He's a heavy-equipment operator.

17          THE COURT:   How about children?

18          PROSPECTIVE JUROR:   I have four.

19          THE COURT:   How old?

20          PROSPECTIVE JUROR:   My oldest is 36, my second is 27,

21  my third is 23, and the baby is 20.

22          THE COURT:   And are any of them working?

23          PROSPECTIVE JUROR:   Yes.

24          THE COURT:   Tell me what they do for a living, which

25  one, start with the youngest, the 20-year-old.

1           PROSPECTIVE JUROR:   The baby is in college.

2           THE COURT:   Still in college.  How about the next one,

3    the 23-year-old?

4           PROSPECTIVE JUROR:   23-year-old, he works for U.P.S.

5           THE COURT:   And how about the next one?

6           PROSPECTIVE JUROR:   He works for the restaurant,

7    Cheesecake Factory.

8           THE COURT:   I hope he brings a lot of stuff; they put

9    a lot of stuff on their plates.  What -- I don't go there

10   anymore.

11          What about the oldest?

12          PROSPECTIVE JUROR:   My oldest works at a bank in

13   Orlando.  I forgot the name of it.  He's a network specialist,

14   like an analyst.

15          THE COURT:   He works on computers and things?

16          PROSPECTIVE JUROR:  Yes.

17          THE COURT:   Thank you, ma'am.  Pass the microphone to

18   the court security officer, please.

19          Yes, ma'am, please tell us your name.

20          PROSPECTIVE JUROR:   Cassandra Pastrana.

21          THE COURT:   And Ms. Pastrana, what is your occupation?

22          PROSPECTIVE JUROR:   I work at Sugarman & Susskind, an

23   attorney's office in Coral Gables.

24          THE COURT:   What type of work do they do?  I'm sure

25   high-quality work, but what area do they work in?

1          PROSPECTIVE JUROR:   Labor law.

2          THE COURT:   And how long have you been working there?

3          PROSPECTIVE JUROR:   It's going to be three years in

4    January.

5          THE COURT:   What did you do before that?

6          PROSPECTIVE JUROR:   Before that I worked at a school,

7    I did after-school care.

8          THE COURT:   And how about the part of the community

9    that you live in?

10          PROSPECTIVE JUROR:   I live south of Kendall, so in

11    between Homestead and Kendall.

12          THE COURT:   And what -- is that the area -- is that

13    sometimes known as "Redlands" or is that north, the Redlands

14    area?

15          PROSPECTIVE JUROR:   It's around there.

16          THE COURT:   Close enough.   How long have you lived in

17    the Greater Miami area?

18          PROSPECTIVE JUROR:   All my life.

19          THE COURT:   What is your marital status?

20          PROSPECTIVE JUROR:   Single.

21          THE COURT:   Any children?

22          PROSPECTIVE JUROR:   No.

23          THE COURT:   Thank you, ma'am.   Pass the microphone to

24    your left, please.

25          Hi, there.   What's your name?

1          PROSPECTIVE JUROR:   My name is Mamie Walker.

2          THE COURT:   And Ms. Walker, what is your occupation?

3          PROSPECTIVE JUROR:   I'm administrative assistant for

4    the Florida Department of Health.

5          THE COURT:   And what does that mean?  I don't know

6    what that means.  Tell me what you do.

7          PROSPECTIVE JUROR:   I do various things for the health

8    department, as far as the administrator of the health

9    department itself, at 1350, I oversee the building maintenance.

10         THE COURT:   You're over near the -- near Jackson?

11         PROSPECTIVE JUROR:   Yes, by the criminal courthouse.

12         THE COURT:   And what exactly -- I'm just curious, I

13   don't know why I need to know this, but what does the

14   Department of Health do, other than close down restaurants once

15   in a while?

16         PROSPECTIVE JUROR:   I don't actually work for that

17   department.  I work for the health department.

18         THE COURT:   Oh, sorry.

19         PROSPECTIVE JUROR:   We do screenings at the location

20   that I work at, we do screenings for STDs, we give out birth

21   certificates, death certificates, tuberculosis, and we do

22   immunizations.

23         THE COURT:  And you told me how long you've been doing

24   that.

25         PROSPECTIVE JUROR:   No.  I've been there 20 years.

```
 1                THE COURT:   And what part of the community do you live

 2    in?

 3                PROSPECTIVE JUROR:   I live in Liberty City.

 4                THE COURT:   How long have you lived in the Greater

 5    Miami area?

 6                PROSPECTIVE JUROR:   All my life.

 7                THE COURT:   What is your marital status?

 8                PROSPECTIVE JUROR:   Single.

 9                THE COURT:   Any children?

10                PROSPECTIVE JUROR:   No.

11                THE COURT:   Thank you.  Pass the microphone.

12                Hi, there.  What's your name?

13                PROSPECTIVE JUROR:   Roberto Mieses-Robleto.

14                THE COURT:   Mr. Mieses-Robleto, I'm sorry, what is

15    your occupation?

16                PROSPECTIVE JUROR:  I work retail at Game Stop.

17                THE COURT:   And what is that?  What do they do there?

18                PROSPECTIVE JUROR:   Well, personally, I handle like

19    operations in the back and whatnot, but they just sell video

20    games.

21                THE COURT:   They sell what, video games?

22                PROSPECTIVE JUROR:   Yeah.

23                THE COURT:   And how long have you been doing that?

24                PROSPECTIVE JUROR:   Since June, I believe.

25                THE COURT:   Since June.  What did you do before that?
```

```
1              PROSPECTIVE JUROR:   I worked at Ross helping them open

2    a store.

3              THE COURT:   That's Ross --

4              PROSPECTIVE JUROR:  Yes, Dress-For-Less, the clothing

5    company.

6              THE COURT:   "Ross Dress-For-Less;" is that what they

7    call themselves?

8              PROSPECTIVE JUROR:   Yes.

9              THE COURT:   How long did you work there?

10             PROSPECTIVE JUROR:   Two months, I believe.

11             THE COURT:   What did you do before that?

12             PROSPECTIVE JUROR:   I was a student for a little bit.

13             THE COURT:   Where were you a student?

14             PROSPECTIVE JUROR:   Miami-Dade College.

15             THE COURT:  Okay.  And what part of the community do

16   you live in?

17             PROSPECTIVE JUROR:   Kendall.

18             THE COURT:   How long have you lived in the Greater

19   Miami area?

20             PROSPECTIVE JUROR:   My whole life.

21             THE COURT:   What is your marital status?

22             PROSPECTIVE JUROR:   Single.

23             THE COURT:   Any children?

24             PROSPECTIVE JUROR:   Nope.

25             THE COURT:   Thank you, sir.  Pass the microphone.
```

1              Hello, what's your name?

2              PROSPECTIVE JUROR:   Alexi Richards.

3              THE COURT:   And Ms. Richards, what is your occupation?

4              PROSPECTIVE JUROR:   I'm a construction manager for

5     Lennar Corporation.

6              THE COURT:   And how long have you been there?

7              PROSPECTIVE JUROR:  I've been there a little over a

8     year.

9              THE COURT:   And what part of the community -- well,

10    what did you do before that?

11             PROSPECTIVE JUROR:   I was in law school.

12             THE COURT:   And where did you go to law school?

13             PROSPECTIVE JUROR:   University of Miami.

14             THE COURT:   See, I knew we had a good Hurricane here.

15    I could tell.

16             PROSPECTIVE JUROR:   Go Canes.  Big win Saturday.

17             THE COURT:   That was a big win Saturday.  I'm really

18    sorry to hear the Dukies crying about their loss.

19             PROSPECTIVE JUROR:   I will hear them cry all day.

20             THE COURT:   I listen to them all the time, we will

21    give them that game when Ohio States gives us back our national

22    championship.

23             PROSPECTIVE JUROR:  There you go, exactly.

24             THE COURT:   Go ahead.  What part of the community do

25    you live in?

 1              PROSPECTIVE JUROR:   I live in Coral Gables.

 2              THE COURT:   How long have you lived in Greater Miami

 3    area?

 4              PROSPECTIVE JUROR:   Since I was a year old.

 5              THE COURT:  What is your marital status?

 6              PROSPECTIVE JUROR:   I'm married.

 7              THE COURT:   Does your spouse work?

 8              PROSPECTIVE JUROR:   Where?

 9              THE COURT:  Does he work?

10              PROSPECTIVE JUROR:  He's an attorney.  Yes, he works.

11              THE COURT:   What type of law does he practice?

12              PROSPECTIVE JUROR:   Construction and litigation,

13    mostly.  He represents a lot of condo associations.

14              THE COURT:   Is he by himself or does he have a firm?

15              PROSPECTIVE JUROR:   He works for a firm.

16              THE COURT:   What firm does he work for?

17              PROSPECTIVE JUROR:   Siegfried Rivera.

18              THE COURT:   What about children?

19              PROSPECTIVE JUROR:   Not yet.

20              THE COURT:   Thank you.  Pass the microphone, please.

21         Hi, there.  What's your name?

22              PROSPECTIVE JUROR:   All right, sir.  My name is

23    Alberto Leal.

24              THE COURT:   And what is your occupation, Mr. Leal?

25              PROSPECTIVE JUROR:   I work as a birth certification

1    reviewer.

2            THE COURT:   What's that mean?

3            PROSPECTIVE JUROR:  I check medical referrals, medical

4    documents, and check it against the Medicare guidelines.

5            THE COURT:   And who do you do this for?

6            PROSPECTIVE JUROR:   CIGNA, Health Spring, Lowe Medical

7    Centers.

8            THE COURT:   For different insurance carriers?

9            PROSPECTIVE JUROR:   Everybody together, I don't know

10   which ones.

11           THE COURT:   How long have you been doing this?

12           PROSPECTIVE JUROR:   For six years.

13           THE COURT:   What part of the community do you live in?

14           PROSPECTIVE JUROR:   Doral.

15           THE COURT:   How long have you lived in the Greater

16   Miami area?

17           PROSPECTIVE JUROR:   Six years.

18           THE COURT:   What is your marital status?

19           PROSPECTIVE JUROR:   Married.

20           THE COURT:   And does your wife work outside the home?

21           PROSPECTIVE JUROR:   Yes.

22           THE COURT:   What does she do?

23           PROSPECTIVE JUROR:   She's a nurse.

24           THE COURT:   And how about children?

25           PROSPECTIVE JUROR:   I have three daughters.

1          THE COURT:   Ages, please.

2          PROSPECTIVE JUROR:   Fifteen, ten and seven.

3          THE COURT:   Well, since Nike doesn't have a factory

4    down here, I bet they don't work; do they?

5          PROSPECTIVE JUROR:   No, not yet.

6          THE COURT:   Good.  Pass the microphone to your left,

7    please.

8          Hi, what is your name?

9          PROSPECTIVE JUROR:   My name is Ricardo Rubio.

10         THE COURT:   And Mr. Rubio, what is your occupation?

11         PROSPECTIVE JUROR:  I'm a part-time teller at TD Bank

12   and a full-time student at FIU.

13         THE COURT:   And how long have you been working at

14   TD Bank?

15         PROSPECTIVE JUROR:   For about nine months.

16         THE COURT:   Before that, did you have any other work

17   or were you in school?

18         PROSPECTIVE JUROR:   I was also going to school, I was

19   summer camp counselor and after-school counselor for the

20   Y.M.C.A. for a year.

21         THE COURT:   And what part of the community do you live

22   in?

23         PROSPECTIVE JUROR:   Miami Lakes.

24         THE COURT:   How long have you lived in the Greater

25   Miami area?

1               PROSPECTIVE JUROR:   All my life.

2               THE COURT:   What is your marital status?

3               PROSPECTIVE JUROR:   Single.

4               THE COURT:   Any children?

5               PROSPECTIVE JUROR:   Nope.

6               THE COURT:   Thank you, sir.  Pass the microphone,

7      please.

8               Hi there, what's your name?

9               PROSPECTIVE JUROR:   Raymond Roger.

10              THE COURT:   Mr. Roger, what is it you do for a living?

11              PROSPECTIVE JUROR:   I'm a mechanic.

12              THE COURT:   And where are you a mechanic?

13              PROSPECTIVE JUROR:   FDOT, Florida Department of

14     Transportation.

15              THE COURT:   I'm sorry, say that again.

16              PROSPECTIVE JUROR:   Florida Department of

17     Transportation.

18              THE COURT:   I'm having trouble --

19              PROSPECTIVE JUROR:   FDOT.

20              THE COURT:   GOT.

21              PROSPECTIVE JUROR:   DOT.

22              THE COURT:   ZOT?

23              PROSPECTIVE JUROR:  No, D, Department.

24              THE COURT:   DOT, Department of Transportation?

25              PROSPECTIVE JUROR:   Exactly.

```
1                THE COURT:  I got you now.  Thank you.  I apologize.

2           And how long have you been doing that?

3                PROSPECTIVE JUROR:   For 20 years.

4                THE COURT:   And what part of the community do you live

5      in?

6                PROSPECTIVE JUROR:   South Miami.

7                THE COURT:   How long have you lived in the Greater

8      Miami area?

9                PROSPECTIVE JUROR:   Twenty years.

10               THE COURT:   What is your marital status?

11               PROSPECTIVE JUROR:   Married.

12               THE COURT:   Does your wife work outside the home?

13               PROSPECTIVE JUROR:   Yes.  She's a nurse.

14               THE COURT:   And how about children?

15               PROSPECTIVE JUROR:   Two, two boys.

16               THE COURT:   How old are the boys?

17               PROSPECTIVE JUROR:   Twenty and 22.

18               THE COURT:   Are they working or are they still

19     students?

20               PROSPECTIVE JUROR:   They still study at FIU.

21               THE COURT:   Thank you, sir.  Pass the microphone.

22          Yes, sir.  Please tell us your name.

23               PROSPECTIVE JUROR:  Ruben Rodriguez.

24          THE COURT:  You have to speak up a little bit.

25               PROSPECTIVE JUROR:  Ruben Rodriguez.
```

1               THE COURT:  And Mr. Rodriguez, what is your occupation?

2               PROSPECTIVE JUROR:   I'm an aviation mechanic.

3               THE COURT:   How long have you been an aviation

4    mechanic; is that what you said?

5               PROSPECTIVE JUROR:   Yes, correct.

6               THE COURT:   How long have you been an aviation

7    mechanic.

8               PROSPECTIVE JUROR:   Twenty-six, 26 years.

9               THE COURT:   And what part of the community do you live

10   in?

11              PROSPECTIVE JUROR:   Key Biscayne.

12              THE COURT:   How long have you lived in the Greater

13   Miami area?

14              PROSPECTIVE JUROR:   Thirty-three years.

15              THE COURT:   And what is your marital status?

16              PROSPECTIVE JUROR:   Divorced.

17              THE COURT:   How long you been divorced?

18              PROSPECTIVE JUROR:   Fifteen years.

19              THE COURT:   So we don't care again.  How about

20   children?

21              PROSPECTIVE JUROR:   Two.

22              THE COURT:   How old?

23              PROSPECTIVE JUROR:   Fourteen and 21.

24              THE COURT:   Is either of them employed?

25              PROSPECTIVE JUROR:   School, both.

```
 1              THE COURT:   Thank you, sir.  Pass the microphone.
 2              Hi, there.  What's your name?
 3              PROSPECTIVE JUROR:   My name is Joshua Cardona.
 4              THE COURT:   And Mr. Cardona, what is your occupation?
 5              PROSPECTIVE JUROR:   I work for AT&T Mobility, in
 6    sales.
 7              THE COURT:   And how long have you been so employed?
 8              PROSPECTIVE JUROR:   Seven years.
 9              THE COURT:   And what part of the community do you live
10    in?
11              PROSPECTIVE JUROR:   Kendall.
12              THE COURT:  How long have you lived in the Greater
13    Miami area?
14              PROSPECTIVE JUROR:   More than 25 years.
15              THE COURT:   And what part of the -- I'm sorry, what is
16    your marital status?
17              PROSPECTIVE JUROR:   Single.
18              THE COURT:   How -- any children?
19              PROSPECTIVE JUROR:   No.
20              THE COURT:   Thank you, sir.  Pass the microphone.  I
21    hope you guys understand how punchy you get reading these same
22    questions over and over and over again.
23              Yes, sir.  Please tell us your name.
24              PROSPECTIVE JUROR:   My name is Sergio Herrera.
25              THE COURT:   And what is your occupation, Mr. Herrera?
```

```
1              PROSPECTIVE JUROR:   I'm a State Farm insurance agent.

2              THE COURT:   And how long have you been a State Farm

3    insurance agent?

4              PROSPECTIVE JUROR:   Twenty-five years.

5              THE COURT:   What part of the community do you live in?

6              PROSPECTIVE JUROR:   Edgewater.

7              THE COURT:   Edgewater is the area up off of Boulevard

8    and --

9              PROSPECTIVE JUROR:   By Midtown and Wynwood.

10             THE COURT:   Yeah, okay.  And how long have you lived

11   in the Greater Miami area?

12             PROSPECTIVE JUROR:   All my life.

13             THE COURT:   What is your marital status?

14             PROSPECTIVE JUROR:   Married.

15             THE COURT:   Does your spouse work outside the home?

16             PROSPECTIVE JUROR:   No, she doesn't.

17             THE COURT:  And how about children?

18             PROSPECTIVE JUROR:   Two children, age 24 and 21.

19             THE COURT:   And are either of them employed?

20             PROSPECTIVE JUROR:   Yes, they're both employed.

21             THE COURT:   What do they do for a living?

22             PROSPECTIVE JUROR:  My son works in a restaurant in

23   Denver and my daughter works in a Uni-K Waxing Center down here

24   in Miami.

25             THE COURT:   Thank you, sir.  Pass the microphone.
```

```
 1              Notice how carefully I asked that question, "Does your

 2   spouse work outside the home?"

 3              I don't want to get in trouble.  My wife gets reports.

 4              Tell us your name, please.

 5              PROSPECTIVE JUROR:   Leah Roper Brown.

 6              THE COURT:   And what is your occupation?

 7              PROSPECTIVE JUROR:   I work for the State Attorney's

 8   Office as a case analyst.

 9              THE COURT:   And how long have you been doing that?

10              PROSPECTIVE JUROR:   Three years.

11              THE COURT:   And what did you do before that?

12              PROSPECTIVE JUROR:   I was an assistant women's

13   basketball coach at Gulf Coast State College.

14              THE COURT:  And how long did you do that?

15              PROSPECTIVE JUROR:   Four years.

16              THE COURT:   And what part of the community do you live

17   in?

18              PROSPECTIVE JUROR:   Naranja.

19              THE COURT:   How long have you lived in the Greater

20   Miami area?

21              PROSPECTIVE JUROR:   Three years.

22              THE COURT:   Where did you live before that?

23              PROSPECTIVE JUROR:   Panama city.

24              THE COURT:   And what is your marital status?

25              PROSPECTIVE JUROR:   I'm married.
```

```
 1              THE COURT:   And does your spouse work outside the

 2   home?

 3              PROSPECTIVE JUROR:   Yes, he does.

 4              THE COURT:   What does he do?

 5              PROSPECTIVE JUROR:   He flies for American and U.S.

 6              THE COURT:   All right.  And how about children?

 7              PROSPECTIVE JUROR:   We're working on it.

 8              THE COURT:   Okay.  I don't need any details.  Thank

 9   you.

10              Yes, sir, please tell us your name.

11              PROSPECTIVE JUROR:   My name is Yosvani Suarez.

12              THE COURT:   What is your occupation, Mr. Suarez?

13              PROSPECTIVE JUROR:  I install window film.

14              THE COURT:  Window film to tint windows?

15              PROSPECTIVE JUROR:   Yes.

16              THE COURT:   In cars or homes or both?

17              PROSPECTIVE JUROR:   Cars, home, everything.

18              THE COURT:   And how long have you been doing that?

19              PROSPECTIVE JUROR:   I -- 14 years.

20              THE COURT:   And what part of the community do you live

21   in?

22              PROSPECTIVE JUROR:   Miami Gardens.

23              THE COURT:  How long have you lived in the Greater

24   Miami area?

25              PROSPECTIVE JUROR:   Fifteen years.
```

```
 1              THE COURT:   And what part of -- sorry, what is your
 2    marital status?
 3              PROSPECTIVE JUROR:   Married.
 4              THE COURT:   Does your wife work outside the home?
 5              PROSPECTIVE JUROR:   Yes.  She's a respiratory
 6    therapist for Kendall Regional.
 7              THE COURT:   And how about children?
 8              PROSPECTIVE JUROR:   Nothing yet.
 9              THE COURT:   Thank you, sir.  Pass the microphone.
10              Yes, sir, please tell us your name.
11              PROSPECTIVE JUROR:   My name is Gerardo Pesina.
12              THE COURT:   And what is your occupation?
13              PROSPECTIVE JUROR:   I work for landscape company
14    Valley Crest.  I'm an account manager.
15              THE COURT:   And how long have you been doing that?
16              PROSPECTIVE JUROR:   For about 30 years.
17              THE COURT:   And Valley Crest is what, a company that
18    does what?
19              PROSPECTIVE JUROR:   It's a landscape, installs
20    everything with gardens.  They've been doing that for the past
21    69 years.
22              THE COURT:   So what part do you play?  What do you do?
23              PROSPECTIVE JUROR:   I'm an account manager at the
24    Ocean Reef Club.
25              THE COURT:   So you take care of the grounds at
```

1    Ocean Reef?

2              PROSPECTIVE JUROR:   Yes, sir.

3              THE COURT:   And how long have you been doing that?

4    You told me, but I forgot.

5              PROSPECTIVE JUROR:   About 30 years.

6              THE COURT:   Tell me what part of the community you

7    live in.

8              PROSPECTIVE JUROR:  I live in Homestead.

9              THE COURT:   What is your marital status?

10             PROSPECTIVE JUROR:   Married.

11             THE COURT:   I forgot to ask you, how long you have

12   lived in the Greater Miami area?

13             PROSPECTIVE JUROR:   About 42 years.

14             THE COURT:   And does your wife work outside the home?

15             PROSPECTIVE JUROR:   No.  She's retired, Dade County

16   Public Schools.

17             THE COURT:   And how about children?

18             PROSPECTIVE JUROR:   Two children, one is 29 and the

19   other one's 31.

20             THE COURT:   All right.  What do they do for a living,

21   if anything?

22             PROSPECTIVE JUROR:   One of them lives with me still at

23   the house and the other one works for an accountant -- she's in

24   accounting for a big, I think it's a credit union in

25   San Antonio, Texas.

 1             THE COURT:   And, you know, just because they live with

 2   you at home doesn't mean they don't work.

 3             Does she not work, too.

 4             PROSPECTIVE JUROR:   No, she's not working.

 5             THE COURT:   Thank you, sir.   Pass the microphone.

 6             Yes, sir.   Please tell us your name.

 7             PROSPECTIVE JUROR:   My name is Juan Carballo.

 8             THE COURT:   Mr. Carballo, talk to the lawyers because

 9   they're the ones who count.

10             And tell me what do you do for a living.

11             PROSPECTIVE JUROR:   I am a computer teacher in a

12   vocational school in Hialeah.

13             THE COURT:   Which vocational school?

14             PROSPECTIVE JUROR:   The Technology Center.   It's about

15   computer application, electronic record, something like that,

16   you know?   I'm a teacher.

17             THE COURT:   How long have you been doing that?

18             PROSPECTIVE JUROR:   Fourteen years.

19             THE COURT:   What part of the community do you live in?

20             PROSPECTIVE JUROR:   Hialeah City.

21             THE COURT:   How long have you lived in the Greater

22   Miami area?

23             PROSPECTIVE JUROR:   Fourteen years.

24             THE COURT:   What is your marital status?

25             PROSPECTIVE JUROR:   It's married.

```
1              THE COURT:   Does your wife work outside the home?

2              PROSPECTIVE JUROR:   Yeah, she's working.  She's

3    teacher's assistant.

4              THE COURT:   What does she teach?

5              PROSPECTIVE JUROR:   Chemical.

6              THE COURT:   Chemistry?

7              PROSPECTIVE JUROR:  Chemistry, that's it.

8              THE COURT:   How about children?

9              PROSPECTIVE JUROR:   I have two, 26 and 18.

10             THE COURT:   Is the 26-year-old employed?

11             PROSPECTIVE JUROR:   He is.  He's a webmaster

12   administrator.

13             THE COURT:   Webmaster and administrator.

14             How about the younger one?

15             PROSPECTIVE JUROR:   He's a student in high school

16   right now.

17             THE COURT:   Thank you, sir.

18             Pass the microphone, please.

19             Yes, ma'am.  Please tell us your name.

20             PROSPECTIVE JUROR:   Samantha Godfrey.

21             THE COURT:   What is your occupation, Ms. Godfrey?

22             PROSPECTIVE JUROR:   I'm a cashier at a local Family

23   Dollar Store.

24             THE COURT:   And how long have you been doing that.

25             PROSPECTIVE JUROR:   A month-and-a-half.
```

```
1              THE COURT:   What did you do before that?

2              PROSPECTIVE JUROR:   I was a hostess at Benihana.

3              THE COURT:   How long did you do that?

4              PROSPECTIVE JUROR:   One year.

5              THE COURT:   What did you do before that?

6              PROSPECTIVE JUROR:   I worked at the Hickman Building

7     right here, downtown, Park and Recreation.

8              THE COURT:   How long did you work there?

9              PROSPECTIVE JUROR:   About two years, I was a clerk.

10             THE COURT:   You were a clerk there?

11             PROSPECTIVE JUROR:   Yes.

12             THE COURT:   And what part of the community do you live

13    in?

14             PROSPECTIVE JUROR:   I live in Little Haiti.

15             THE COURT:   How long have you lived in the Greater

16    Miami area?

17             PROSPECTIVE JUROR:   All my life.

18             THE COURT:   What is your marital status?

19             PROSPECTIVE JUROR:   Single.

20             THE COURT:   Any children?

21             PROSPECTIVE JUROR:   No.

22             THE COURT:   Thank you, ma'am.  Pass the microphone,

23    please.

24             Yes, ma'am, please tell us your name.

25             PROSPECTIVE JUROR:   Dawn Browning.
```

```
1              THE COURT:   Hold that up a little bit.

2              PROSPECTIVE JUROR:   Dawn Browning.

3              THE COURT:   And what do you do for a living,

4     Ms. Browning?

5              PROSPECTIVE JUROR:   I work for South Florida Water

6     Management District.  I'm a mechanic.

7              THE COURT:   How long have you been working for them?

8              PROSPECTIVE JUROR:   Almost 30 years.

9              THE COURT:   What part of the community do you live in?

10             PROSPECTIVE JUROR:   I live in Homestead.

11             THE COURT:   How long have you lived in the Greater

12    Miami area?

13             PROSPECTIVE JUROR:   About 45 years.

14             THE COURT:   What is your marital status?

15             PROSPECTIVE JUROR:   Married.

16             THE COURT:   Does your spouse work outside the home?

17             PROSPECTIVE JUROR:   Yes, he does.

18             THE COURT:   What does he do?

19             PROSPECTIVE JUROR:   He works for the South Florida

20    Water Management District, also.

21             THE COURT:   And how about children?

22             PROSPECTIVE JUROR:   One.

23             THE COURT:   How old?

24             PROSPECTIVE JUROR:   Twenty-three.

25             THE COURT:   Is he or she employed?
```

```
 1              PROSPECTIVE JUROR:  Yes, she works at Trader Joe's.

 2              THE COURT:   Thank you, ma'am.

 3              Pass the microphone, please.

 4              PROSPECTIVE JUROR:   Thank you.

 5              THE COURT:   Yes, sir.  Please tell us your name.

 6              PROSPECTIVE JUROR:   Hi, my name is Chris Morales.

 7              THE COURT:   No, you got the wrong end of that row, I

 8  think.

 9              COURTROOM DEPUTY:  Yeah, he's right.

10              THE COURT:  Then I skipped somebody.  That's right, we

11  changed the number.  Sorry.

12              Tell us your name again, please.

13              PROSPECTIVE JUROR:   Well, my name is Chris Morales.

14              THE COURT:   And Mr. Morales, what is your occupation?

15              PROSPECTIVE JUROR:   I'm an information security

16  engineer.

17              THE COURT:   And for whom?

18              PROSPECTIVE JUROR:   Huh?

19              THE COURT:   For whom?

20              PROSPECTIVE JUROR:   Oh, for European Wax Center, in

21  the franchise and corporate office.

22              THE COURT:   And what -- how long have you been doing

23  that?

24              PROSPECTIVE JUROR:   Five years.

25              THE COURT:   What part of the community do you live in?
```

```
 1                 PROSPECTIVE JUROR:   Miami Gardens.

 2                 THE COURT:   How long have you lived in the Greater

 3     Miami area?

 4                 PROSPECTIVE JUROR:   All my life.

 5                 THE COURT:   What is your marital status?

 6                 PROSPECTIVE JUROR:   Single.

 7                 THE COURT:   Any children?

 8                 PROSPECTIVE JUROR:   Nope.

 9                 THE COURT:   Pass the microphone, please.   Thank you.

10                 Hi, there.   What is your name?

11                 PROSPECTIVE JUROR:   My name is Cassandra Lord.

12                 THE COURT:   What is your occupation?

13                 PROSPECTIVE JUROR:   I'm a licensed pharmacy

14     technician.

15                 THE COURT:   And how long have you been doing that?

16                 PROSPECTIVE JUROR:   Over 25 years.

17                 THE COURT:   What part -- tell me, what does a licensed

18     pharmacy technician do?

19                 PROSPECTIVE JUROR:   I make IDs, key molds, TPN,

20     dispense medications.

21                 THE COURT:   How long did you say you were doing this,

22     25 years?

23                 PROSPECTIVE JUROR:   Over 25 years, yes.

24                 THE COURT:   And what part of the community do you live

25     in?
```

```
 1              PROSPECTIVE JUROR:   Homestead.

 2              THE COURT:   And how long have you lived in the Greater

 3   Miami area?

 4              PROSPECTIVE JUROR:   Over 25 years.

 5              THE COURT:   And what is your marital status?

 6              PROSPECTIVE JUROR:   I'm married.

 7              THE COURT:   Does your spouse work outside the home?

 8              PROSPECTIVE JUROR:   He works for himself, he's in

 9   drywall construction.

10              THE COURT:   And how about children?

11              PROSPECTIVE JUROR:   I have two.

12              THE COURT:   How old?

13              PROSPECTIVE JUROR:   Twenty-three and 19, both

14   students.

15              THE COURT:   Both students.   Okay.

16              Thank you.   Pass the microphone, please.

17              Yes, sir, please tell us your name.

18              PROSPECTIVE JUROR:   Edgar Restrepo.

19              THE COURT:   And Mr. Restrepo, what is your occupation?

20              PROSPECTIVE JUROR:   I'm a freight forwarder.

21              THE COURT:   And how long have you been a freight

22   forwarder?

23              PROSPECTIVE JUROR:   Four years.

24              THE COURT:   What did you do before that?

25              PROSPECTIVE JUROR:   I worked for AT&T.
```

```
 1              THE COURT:   What did you do at AT&T?

 2              PROSPECTIVE JUROR:   Sales agent.

 3              THE COURT:   What is the part of the community that you

 4   live in?

 5              PROSPECTIVE JUROR:   Kendall.

 6              THE COURT:   How long have you lived in the Greater

 7   Miami area?

 8              PROSPECTIVE JUROR:   Fifteen years.

 9              THE COURT:   What is your marital status?

10              PROSPECTIVE JUROR:   Single.

11              THE COURT:   Any children?

12              PROSPECTIVE JUROR:   No children.

13              THE COURT:   Thank you, sir.

14              Pass the microphone, please.

15              Yes, sir, please tell us your name.

16              PROSPECTIVE JUROR:   Neil Mooloo.

17              THE COURT:   And Mr. Mooloo, what is your occupation?

18              PROSPECTIVE JUROR:   Student and self-employed.

19              THE COURT:   And what does your self-employment consist

20   of?

21              PROSPECTIVE JUROR:   I'm just opening up a car

22   dealership.

23              THE COURT:   You're going to be a used car dealership?

24              PROSPECTIVE JUROR:   Yes.

25              THE COURT:   And how long have you been employed --
```

1    well, as a student, you've been a student most of your life;

2    right?

3              PROSPECTIVE JUROR:   Yeah.

4              THE COURT:   And how long has it been since you got in

5    with this car business thing?

6              PROSPECTIVE JUROR:   It's just been about two months.

7              THE COURT:   Okay.  And what part of the community do

8    you live in?

9              PROSPECTIVE JUROR:   Sweetwater.

10             THE COURT:   How long have you lived in the Greater

11   Miami area?

12             PROSPECTIVE JUROR:   Two years.

13             THE COURT:   Where did you live before?

14             PROSPECTIVE JUROR:   New York.

15             THE COURT:   Okay.  How long did you live in New York?

16             PROSPECTIVE JUROR:   About five years.

17             THE COURT:   What is your marital status?

18             PROSPECTIVE JUROR:   Married.

19             THE COURT:   Does your wife work outside the home?

20             PROSPECTIVE JUROR:   No.

21             THE COURT:   How about children?

22             PROSPECTIVE JUROR:   None.

23             THE COURT:   Thank you, sir.  Pass the microphone,

24   please.

25             Hello.

1          PROSPECTIVE JUROR:   Hello.

2          THE COURT:   What's your name?

3          PROSPECTIVE JUROR:  Milagros Corvo.

4          THE COURT:   And Ms. Corvo, what is your occupation?

5          PROSPECTIVE JUROR:   I'm the director of operations for

6    a manufacturing company.

7          THE COURT:   And what -- how long have you been doing

8    that?

9          PROSPECTIVE JUROR:   Two-and-a-half years.

10         THE COURT:   And what did you do before that?

11         PROSPECTIVE JUROR:   I was an administrative assistant

12   in a patent company.

13         THE COURT:   What's a patent company?

14         PROSPECTIVE JUROR:   We provided patents with people

15   for invention ideas.

16         THE COURT:   People with invention ideas come to you

17   and you help them get a patent?

18         PROSPECTIVE JUROR:   Uh-huh.

19         THE COURT:   And where are you working now?

20         Who are you working for?

21         PROSPECTIVE JUROR:   Craig Doura, LLC.

22         THE COURT:   What do they do?  What do they make?

23         PROSPECTIVE JUROR:  We manufacture skin care and hair

24   care products.

25         THE COURT:   And what part of the community do you live

1   in?

2          PROSPECTIVE JUROR:   North Miami.

3          THE COURT:  How long have you lived in the Greater

4   Miami area?

5          PROSPECTIVE JUROR:   Twenty-seven years.

6          THE COURT:  And what is your marital status?

7          PROSPECTIVE JUROR:   Single.

8          THE COURT:   Any children?

9          PROSPECTIVE JUROR:   Nope.

10         THE COURT:   Thank you.  Pass the microphone, please.

11         PROSPECTIVE JUROR:   Thank you.

12         THE COURT:   Hello.

13         PROSPECTIVE JUROR:   Hi.

14         THE COURT:   What's your name, please?

15         PROSPECTIVE JUROR:   Rebeca Castro.

16         THE COURT:   And Ms. Castro, what is your occupation?

17         PROSPECTIVE JUROR:   I'm a paraprofessional at a

18   Catholic school.

19         THE COURT:   And how long have you been doing that?

20         PROSPECTIVE JUROR:   Ten years.

21         THE COURT:   And what exactly is a paraprofessional?

22         PROSPECTIVE JUROR:   I help the teacher, the teacher's

23   aide.

24         THE COURT:  And what is the area that you live in?

25         PROSPECTIVE JUROR:   South Miami.

1          THE COURT:   How long have you lived in the Greater

2    Miami area?

3          PROSPECTIVE JUROR:   Forty-five years.

4          THE COURT:   What is your marital status?

5          PROSPECTIVE JUROR:   Divorced.

6          THE COURT:   How long you been divorced?

7          PROSPECTIVE JUROR:   Twenty-five years.

8          THE COURT:   Yep, again, we don't care; how about kids?

9          PROSPECTIVE JUROR:   Two, two daughters.

10         THE COURT:   How old?

11         PROSPECTIVE JUROR:   Thirty-six and 34.

12         THE COURT:   And are either of them employed?

13         PROSPECTIVE JUROR:   I'm sorry?

14         THE COURT:   Are either of them employed?

15         PROSPECTIVE JUROR:   One is a housewife and the other

16   one works with her husband at their pharmacy.

17         THE COURT:   Thank you, ma'am.   Pass the mic.

18         PROSPECTIVE JUROR:   Thank you.

19         THE COURT:   Hi, there.   What's your name?

20         PROSPECTIVE JUROR:   Therese Lambert.

21         THE COURT:   And Ms. Lambert, what is your occupation?

22         PROSPECTIVE JUROR:   I am director of student

23   recruitment at the University of Miami Law School.

24         THE COURT:   How long have you been doing that?

25         PROSPECTIVE JUROR:   Thirty-two years.

1          THE COURT:   And what part of the community do you live

2     in?

3          PROSPECTIVE JUROR:   I live in Unincorporated Dade,

4     near South Miami.

5          THE COURT:   How long have you lived in the Greater

6     Miami area?

7          PROSPECTIVE JUROR:   Thirty-two years.

8          THE COURT:   What is your marital status?

9          PROSPECTIVE JUROR:   I'm divorced.

10         THE COURT:   How long you been divorced?

11         PROSPECTIVE JUROR:   Over 20 years, you don't care.

12         THE COURT:   I don't care.  How about kids, how about

13    children?

14         PROSPECTIVE JUROR:   I have two children, both in

15    New York, one 35 and one 30, and they're both employed -- well,

16    my son's an artist and my daughter's earning her Master degree.

17         THE COURT:   They're both unemployed, that's what

18    you're really saying; right?

19         PROSPECTIVE JUROR:   No, my son's very successful,

20    thank you very much.

21         THE COURT:  Good for him.  I have an granddaughter

22    that's an artist and, my goodness, I don't know how they do

23    that.  I can't draw a straight line with a ruler.

24         Thank you.  Pass the microphone.

25         PROSPECTIVE JUROR:  Thank you.

```
 1              THE COURT:   Hi, there.  What's your name?
 2              PROSPECTIVE JUROR:   Sonia Aguirre.
 3              THE COURT:   What is your occupation?
 4              PROSPECTIVE JUROR:   Medical and physical therapy
 5    assistant.
 6              THE COURT:   You're a physical therapy assistant?
 7              PROSPECTIVE JUROR:   Yeah.
 8              THE COURT:   Okay.  And where do you work?
 9              PROSPECTIVE JUROR:   Hand rehabilitation.
10              THE COURT:   I'm sorry, what is it?
11              PROSPECTIVE JUROR:   It's at a clinic.
12              THE COURT:   A clinic?
13              PROSPECTIVE JUROR:   Yeah.
14              THE COURT:   And what is it?  Can you tell me the name
15    again because I didn't catch it?
16              PROSPECTIVE JUROR:   It's a hand rehabilitation.
17              THE COURT:   Hand rehabilitation?
18              PROSPECTIVE JUROR:   Yeah.
19              THE COURT:   That's what they do, but what is the name
20    of the company?
21              PROSPECTIVE JUROR:   Oh, is that?  Hand Rehab is the
22    name.  Hand Rehab.
23              THE COURT:   Hand Rehab.  Got you, I'm sorry.  It took
24    me a long while.
25              PROSPECTIVE JUROR:   I'm sorry.
```

 1              THE COURT:   How long have you been working there?

 2              PROSPECTIVE JUROR:   Eight years.

 3              THE COURT:   And what part of the community do you live

 4    in?

 5              PROSPECTIVE JUROR:   On Kendall.

 6              THE COURT:   And what is your marital -- how long have

 7    you lived in the Greater Miami area?  I'm sorry.

 8              PROSPECTIVE JUROR:   From 2000, so it's 15 -- 15 years.

 9              THE COURT:   And what part of the community do you live

10    in?  You told me that, Kendall.

11              And what is your marital status?

12              PROSPECTIVE JUROR:   Single.

13              THE COURT:   Any children?

14              PROSPECTIVE JUROR:   A daughter.

15              THE COURT:   How old?

16              PROSPECTIVE JUROR:   Twenty.

17              THE COURT:   Is she employed or is she a student?

18              PROSPECTIVE JUROR:   Miami-Dade College.

19              THE COURT:   Okay.  Thank you, ma'am.

20              Pass the microphone, please.

21              Yes, sir.  Tell us your name.

22              PROSPECTIVE JUROR:   Christian Puyol.

23              THE COURT:   And Mr. Puyol, I don't see, what is your

24    occupation?

25              PROSPECTIVE JUROR:   Forklift operator and yard worker.

```
1              THE COURT:   And how long have you been doing that?

2              PROSPECTIVE JUROR:   Four years.

3              THE COURT:   And what did you do before that?

4              PROSPECTIVE JUROR:  Fire sprinkler foreman.

5              THE COURT:   And what part of the community do you live

6    in?

7              PROSPECTIVE JUROR:   Hialeah Gardens.

8              THE COURT:   How long have you lived in the Greater

9    Miami area?

10             PROSPECTIVE JUROR:   Born and raised.

11             THE COURT:   What is your marital status?

12             PROSPECTIVE JUROR:   Single.

13             THE COURT:   And what is your -- you got any children?

14             PROSPECTIVE JUROR:   No, sir.

15             THE COURT:   Thank you.  Pass the microphone, please.

16             Hi, there.  What's your name?

17             PROSPECTIVE JUROR:   Luz Osio.

18             THE COURT:   And Ms. Osio, what is your occupation?

19             PROSPECTIVE JUROR:   I work for Deel Sales, most known

20   as the Volvo and Volkswagen dealer, in the accounting

21   department.

22             THE COURT:   And how long have you been so employed?

23             PROSPECTIVE JUROR:   Almost nine years.

24             THE COURT:   And what part of the community do you live

25   in?
```

1            PROSPECTIVE JUROR:   West Kendall.

2            THE COURT:   How long have you lived in the Greater

3    Miami area?

4            PROSPECTIVE JUROR:   Thirty years.

5            THE COURT:   And what is your marital status?

6            PROSPECTIVE JUROR:   Happily divorced.

7            THE COURT:   How many years?

8            PROSPECTIVE JUROR:   Four years.

9            THE COURT:   We need to know, four years is too soon.

10   What does he do for a living, or he doesn't do anything, that's

11   why he is divorced?

12           PROSPECTIVE JUROR:   Mama's boy.

13           THE COURT:   What does he do for a living?

14           PROSPECTIVE JUROR:   He works in a bank.

15           THE COURT:   In a bank.  What does he do at the bank?

16           PROSPECTIVE JUROR:  Operations.

17           THE COURT:   Operations?

18           PROSPECTIVE JUROR:   Yes.

19           THE COURT:   And how about children?

20           PROSPECTIVE JUROR:   Two handsome boys, 25 and 22.

21           THE COURT:  Are either of them working?

22           PROSPECTIVE JUROR:   Both of them.

23           THE COURT:   What do they do?

24           PROSPECTIVE JUROR:   The older one works as a sports

25   director at the Y.M.C.A., and the other one works at AT&T in

1    sales.

2         THE COURT:    Thank you, ma'am.   Pass the microphone.

3         Hello.

4         PROSPECTIVE JUROR:    Hi.

5         THE COURT:    What is your name?

6         PROSPECTIVE JUROR:   Eric.

7         THE COURT:    And Eric, what is your last name, Barrios?

8         PROSPECTIVE JUROR:    Barrios, yeah.

9         THE COURT:    What is your occupation?

10        PROSPECTIVE JUROR:    I'm a facility manager.

11        THE COURT:    What does that mean?

12        PROSPECTIVE JUROR:   It means I manage parking.

13        THE COURT:    You manage the parking for -- oh, that's

14   right, you told me earlier, BankUnited Center and other places?

15        PROSPECTIVE JUROR:    Yeah.

16        THE COURT:   How long have you been doing that?

17        PROSPECTIVE JUROR:    It's been a little over a year.

18        THE COURT:    And what did you do before that?

19        PROSPECTIVE JUROR:    Before that, I was supervising at

20   a parking garage in Miami Beach.

21        THE COURT:    How long did you do that?

22        PROSPECTIVE JUROR:    About a year.

23        THE COURT:    And what did you do before that?

24        PROSPECTIVE JUROR:    Before that, I was a customer

25   service representative at a parking garage in Dadeland.

```
 1              THE COURT:   And how long did you do that?
 2              PROSPECTIVE JUROR:   I did that about a year.
 3              THE COURT:   Boy, you are ready to leave BankUnited
 4    Center now.
 5              PROSPECTIVE JUROR:   You know, probably.  Probably,
 6    from the pattern.
 7              THE COURT:   What did you do before that, tell me.
 8              PROSPECTIVE JUROR:   Before that, I was a security
 9    guard.  Yeah.
10              THE COURT:   How long did you do that, a year?
11              PROSPECTIVE JUROR:   It was about a year.
12              THE COURT:   I'm detecting a trend.  Tell me, what part
13    of the community do you live in?
14              PROSPECTIVE JUROR:   Westchester.
15              THE COURT:   How long have you lived in the Greater
16    Miami area?
17              PROSPECTIVE JUROR:   My whole life.
18              THE COURT:   And what is your marital status?
19              PROSPECTIVE JUROR:   Single.
20              THE COURT:   Any children?
21              PROSPECTIVE JUROR:   Nope.
22              THE COURT:   Thank you, sir.  Pass the microphone.
23              When you see me driving around, direct me into the back
24    lot over there.
25              Hold on a second, please.
```

1            I will tell you what, why don't we take about a five or

2    six-minute recess.  Please remember exactly where you are

3    because we need to come back to exactly the same seat or you

4    will throw us into a tizzy and we will never catch up again.

5            We will take about a five-minute break, so why don't

6    you go out and use the restroom and come back in.

7            Mr. Court security officer, take the microphone back,

8    okay.

9            All right.  Remember that you're the one that's up,

10   okay?  We will be in a short recess.

11           COURT SECURITY OFFICER:  All rise.

12           (Recess taken from 3:35 p.m. to 3:50 p.m.)

13           THE COURT:  Be seated, please, except the gentleman

14   with the microphone.

15           PROSPECTIVE JUROR:   My name is Ronnie Britton.

16           THE COURT:   Mr. Britton, what do you do for a living?

17           PROSPECTIVE JUROR:  I have a double role, Judge.  I am

18   a local pastor and I work at the Miami-Dade Public Schools,

19   Flamingo Elementary, in Hialeah.

20           THE COURT:   And what do you do for the school system?

21           PROSPECTIVE JUROR:   I'm custodian, sir.

22           THE COURT:   How long have you been working for the

23   school system?

24           PROSPECTIVE JUROR:   Seventeen years, sir.

25           THE COURT:   And how long have you been a pastor?

1            PROSPECTIVE JUROR:    Twenty-six years.

2            THE COURT:    And what part of the community do you live

3    in?

4            PROSPECTIVE JUROR:    I live in Miami Gardens, sir.

5            THE COURT:   How long have you lived in the Greater

6    Miami area?

7            PROSPECTIVE JUROR:    All my life.

8            THE COURT:    And what is your marital status?

9            PROSPECTIVE JUROR:    I'm married.

10           THE COURT:    And does your spouse work outside the

11   home?

12           PROSPECTIVE JUROR:    She's retired, sir.

13           THE COURT:    Retired from what?

14           PROSPECTIVE JUROR:    Landmark Learning Center, she

15   worked with the mentally disabled.

16           THE COURT:    Okay.  And tell me about children.

17           PROSPECTIVE JUROR:    I have four kids, sir.

18           THE COURT:    How old?

19           PROSPECTIVE JUROR:    32, 28, soon to be, 25 and 23.

20           THE COURT:    Well, we're going to tell them if you

21   don't know their exact ages.  Tell me what do they do for a

22   living.

23           PROSPECTIVE JUROR:    The eldest son has a lawn service,

24   the next oldest daughter works in an accounting firm, and my

25   two youngest daughters are working at the Dade County Federal

1    Credit Union and they are FSR persons that work with loans.

2              THE COURT:   Thank you, sir.

3              Pass the microphone to your left.

4              Yes, sir, please tell us your name.

5              PROSPECTIVE JUROR:   Fred Deno.

6              THE COURT:   And what is your occupation?

7              PROSPECTIVE JUROR:   I work for Florida Power & Light

8    and recreation director for Virginia Gardens.

9              THE COURT:   And how long have you worked for Florida

10   Power & Light?

11             PROSPECTIVE JUROR:   Over 21 years, 24 years, somewhere

12   around there.

13             THE COURT:   And what do you do for -- as the

14   recreation director, is that like a part-time job or what?

15             PROSPECTIVE JUROR:   Part-time, I run the programs over

16   there in the afternoons, soccer programs.

17             THE COURT:   And how long have you been doing that?

18             PROSPECTIVE JUROR:   Oh, Lord, a long time, over 30

19   years.

20             THE COURT:   Okay.  And tell me about the part of the

21   community that you live in.

22             PROSPECTIVE JUROR:   Excuse me?

23             THE COURT:   Where do you live, what area?

24             PROSPECTIVE JUROR:   Virginia Gardens.

25             THE COURT:   And how long have you lived in the Greater

1    Miami area?

2         PROSPECTIVE JUROR:   All my life.

3         THE COURT:   And what is your marital status?

4         PROSPECTIVE JUROR:   Married.

5         THE COURT:  Does your spouse work outside the home?

6         PROSPECTIVE JUROR:   Retired post office worker.

7         THE COURT:   And how about kids?

8         PROSPECTIVE JUROR:   I have four kids, 42, 40 -- can I

9    call the wife?

10        THE COURT:   No, you can't.  We're going to tell them,

11   too, we can put it on the record.

12        PROSPECTIVE JUROR:   42, 36, 30, and 29, I believe.

13        THE COURT:   One second.

14        PROSPECTIVE JUROR:   I don't know.

15        THE COURT:   Every six years?  You're supposed to wait

16   until they're 24.

17        PROSPECTIVE JUROR:   Built-in baby-sitters.

18        THE COURT:   Okay.  And are any of them employed?

19        PROSPECTIVE JUROR:   Yes, my oldest son, he works for

20   the post office and has been there in Virginia Gardens.  My

21   daughter is a mother at home, home mom.

22        THE COURT:   Okay.

23        PROSPECTIVE JUROR:   My other son works for Hollywood

24   Fire Department and my youngest son, United States Coast Guard.

25        THE COURT:   Okay, thank you sir.

1           Pass the microphone to your left.

2           PROSPECTIVE JUROR:   No problem.

3           THE COURT:   Hello.

4           PROSPECTIVE JUROR:   Hello.

5           THE COURT:  What is your name, please?

6           PROSPECTIVE JUROR:   Ynes Pedroso.

7           THE COURT:   Ms. Pedroso, what is your occupation?

8           PROSPECTIVE JUROR:   I'm a medical billing supervisor

9   for ChenMed.

10          THE COURT:   What is that company, what do they do?

11          PROSPECTIVE JUROR:   They own several locations for PCP

12  offices and specialists.

13          THE COURT:   What are PCP, what does that mean?

14          PROSPECTIVE JUROR:   Primary care providers.

15          THE COURT:   I don't know that, and I don't want to

16  know.  Tell me, how long have you been doing that?

17          PROSPECTIVE JUROR:   It's going to be a year.

18          THE COURT:   What did you do before that?

19          PROSPECTIVE JUROR:   I worked at Digestive Medicine

20  Associates.

21          THE COURT:   What does that mean?  That sounds yummy.

22          PROSPECTIVE JUROR:   Gastroenterologist.

23          THE COURT:   Oh, no.  How long did you work there?

24          PROSPECTIVE JUROR:   Two-and-a-half years.

25          THE COURT:  That gives us three-and-a-half.

1          What did you do before that?

2          PROSPECTIVE JUROR:  I worked nine years at Sheridan

3    Health Corp.

4          THE COURT:   Doing what?

5          PROSPECTIVE JUROR:   Billing supervisor.

6          THE COURT:   What part of the community do you live in?

7          PROSPECTIVE JUROR:   Miami Gardens.

8          THE COURT:   How long have you lived in the Greater

9    Miami area?

10         PROSPECTIVE JUROR:   All my life.

11         THE COURT:   What is your marital status?

12         PROSPECTIVE JUROR:   Single.

13         THE COURT:   Any children?

14         PROSPECTIVE JUROR:   Yes.

15         THE COURT:   How old?

16         PROSPECTIVE JUROR:   Seven year old son.

17         THE COURT:   Unemployed, I'm sure?

18         PROSPECTIVE JUROR:   He works, plays football.

19         THE COURT:   Works knocking things around; doesn't he?

20    I know how that works.

21         Thank you, ma'am.

22         Pass the microphone, please.

23         Hello, what is your name?

24         PROSPECTIVE JUROR:   My name is Mayra Delgado.

25         THE COURT:   And Ms. Delgado, what is your occupation?

```
1              PROSPECTIVE JUROR:   Housewife.

2              THE COURT:   Housewife?

3              PROSPECTIVE JUROR:   Yes.

4              THE COURT:   Okay.  And how about, what part of the

5    community do you live in?

6              PROSPECTIVE JUROR:   Hialeah.

7              THE COURT:   How long have you lived in the Greater

8    Miami area?

9              PROSPECTIVE JUROR:   Eight years.

10             THE COURT:   What is your marital status?

11             PROSPECTIVE JUROR:   Married.

12             THE COURT:   And does your husband work?

13             PROSPECTIVE JUROR:   No.  He's retired.

14             THE COURT:  What did he retire from?

15             PROSPECTIVE JUROR:   Body shop.

16             THE COURT:   Body shop?

17             PROSPECTIVE JUROR:   Yes.

18             THE COURT:   Okay.  How about children?

19             PROSPECTIVE JUROR:   One girl.

20             THE COURT:   How old?

21             PROSPECTIVE JUROR:   Thirty-six years.

22             THE COURT:   And what does she do for a living?

23             PROSPECTIVE JUROR:   In Miami Springs.

24             THE COURT:   What does she do, occupation, work?

25             PROSPECTIVE JUROR:   She's a massage student.
```

```
 1              THE COURT:   Massage therapist?

 2              PROSPECTIVE JUROR:   Design graphic.

 3              THE COURT:   How did we get massage out of that?

 4              PROSPECTIVE JUROR:   Massage, too.

 5              THE COURT:   Oh, she does massage and design graphics?

 6              PROSPECTIVE JUROR:   Yes.

 7              THE COURT:   So these could wake up with a really

 8    strange pattern on their back.

 9              PROSPECTIVE JUROR:   Don't work.

10              THE COURT:   She doesn't do them together?

11              PROSPECTIVE JUROR:   No.

12              THE COURT:   Okay, good.  Thank you.

13              Pass the microphone, please.

14              Hi, there.  What's your name?

15              PROSPECTIVE JUROR:   Miriam Flora Quintero.

16              THE COURT:  Ms. Quintero, what is your occupation?

17              PROSPECTIVE JUROR:  I work for mechanical contractors.

18              THE COURT:   And what do you do for the mechanical

19    contractors?

20              PROSPECTIVE JUROR:   What don't I do?  I'm the owner's

21    administrative assistant, 24-7 dispatcher and air conditioning

22    project manager.

23              THE COURT:   What's the name of the company?  We will

24    give you some free publicity.

25              PROSPECTIVE JUROR:   Reliable Contractors Group.
```

```
1              THE COURT:   Are they?

2              PROSPECTIVE JUROR:   Reliable?  That's my pitch, yeah.

3              THE COURT:   Okay, just wondered.

4         How long have you been working there?

5              PROSPECTIVE JUROR:   Fourteen years, I think.

6              THE COURT:   It seems like forever; right?

7              PROSPECTIVE JUROR:   Not really.

8              THE COURT:   Good.  Tell me what part of the community

9    you live in.

10             PROSPECTIVE JUROR:   Central Miami.

11             THE COURT:   Like where?

12             PROSPECTIVE JUROR:   The Palmetto and Flagler, I don't

13   know, in the area there.

14             THE COURT:   Tell me what -- how long have you lived in

15   the Greater Miami area?

16             PROSPECTIVE JUROR:   Forty-four years.

17             THE COURT:   What is your marital status?

18             PROSPECTIVE JUROR:   Married.

19             THE COURT:   And your husband works?

20             PROSPECTIVE JUROR:   Yes.

21             THE COURT:  What does he do?

22             PROSPECTIVE JUROR:   He works for an enterprise,

23   Interior Construction, superintendent.

24             THE COURT:   Superintendent of a construction company

25   that does interior work?
```

1          PROSPECTIVE JUROR:   Yes.   High-rises.

2          THE COURT:   How about children?

3          PROSPECTIVE JUROR:   Yes, we have two.

4          THE COURT:   How old?

5          PROSPECTIVE JUROR:   I have a 22-year-old daughter and

6     10-year-old son.

7          THE COURT:   And does your daughter work?

8          PROSPECTIVE JUROR:   Yes, she does.

9          THE COURT:   What does she do?

10          PROSPECTIVE JUROR:   She's a supervisor for "It's

11    Sugar" in the International Mall.   It's a candy store.

12          THE COURT:   Candy store, okay.   Thank you.

13          Pass the microphone.

14          PROSPECTIVE JUROR:   You're welcome.

15          THE COURT:   Please tell us your name.

16          PROSPECTIVE JUROR:   My name is Sergio, last name

17    Jiron.

18          THE COURT:   And what do you do for a living,

19    Mr. Jiron?

20          PROSPECTIVE JUROR:   I'm a service provider for U.P.S.

21          THE COURT:   What does that mean?

22          PROSPECTIVE JUROR:   I'm a truck driver.

23          THE COURT:   You drive the truck for them?

24          PROSPECTIVE JUROR:   It's my accent, heavy.

25          THE COURT:   And tell me how long you've been doing

1  that.

2          PROSPECTIVE JUROR:   For 25 years.

3          THE COURT:   What is your -- I'm sorry, what part of

4  the community do you live in?

5          PROSPECTIVE JUROR:   I live in Midway.

6          THE COURT:   And how long have you lived in the Greater

7  Miami area?

8          PROSPECTIVE JUROR:   Over 30 years.

9          THE COURT:   And what is your marital status?

10         PROSPECTIVE JUROR:   Married.

11         THE COURT:   Does your wife work outside the home?

12         PROSPECTIVE JUROR:   Yes.

13         THE COURT:   Doing what?

14         PROSPECTIVE JUROR:   She's a computer teacher.

15         THE COURT:   And where is she a computer teacher?

16         PROSPECTIVE JUROR:   She works at -- it's a new school.

17  I don't know the name.

18         THE COURT:   She works --

19         PROSPECTIVE JUROR:   She works at a new school.

20         THE COURT:   Is it a private school or public school?

21         PROSPECTIVE JUROR:   Private school.  She also works

22  for a public school.  She got two jobs.

23         THE COURT:   She got two jobs, she works at schools and

24  teaches computers?

25         PROSPECTIVE JUROR:   Yeah.

```
 1              THE COURT:   And how about children?

 2              PROSPECTIVE JUROR:   I got two childrens.

 3              THE COURT:   How old?

 4              PROSPECTIVE JUROR:   A daughter, 20 and 19.

 5              THE COURT:   Are they still both students?

 6              PROSPECTIVE JUROR:   Yes.

 7              THE COURT:   Thank you, sir.

 8              Pass the microphone, please.

 9              Yes, sir, please tell us your name.

10              PROSPECTIVE JUROR:   Olavo Gouveia.

11              THE COURT:   Mr. Gouveia, what is your occupation?

12              PROSPECTIVE JUROR:   I work for AT&T as a facility

13    technician.

14              THE COURT:   As a what?

15              PROSPECTIVE JUROR:   Facility technician.

16              THE COURT:   What does that mean?

17              PROSPECTIVE JUROR:   We get, like, cable failures,

18    cable repair, things like that.

19              THE COURT:   How long have you been doing that?

20              PROSPECTIVE JUROR:   Fifteen years.

21              THE COURT:   What is your marital -- what part of the

22    community do you live in?

23              PROSPECTIVE JUROR:   North Miami Beach.

24              THE COURT:   How long have you lived in the Greater

25    Miami area?
```

1          PROSPECTIVE JUROR:   About 25, 26 years.

2          THE COURT:   What is your marital status?

3          PROSPECTIVE JUROR:   Married.

4          THE COURT:   Does your wife work outside the home?

5          PROSPECTIVE JUROR:   No.

6          THE COURT:   How about children?

7          PROSPECTIVE JUROR:   I have two.

8          THE COURT:   How old?

9          PROSPECTIVE JUROR:   Eleven, 10.

10         THE COURT:   Okay.  Thank you, sir.

11         Pass the microphone.

12         Hi, what's your name.

13         PROSPECTIVE JUROR:   My name, Armelle Hosty.

14         THE COURT:   Ms. Hosty, what is your occupation?

15         PROSPECTIVE JUROR:   I am a registered nurse.

16         THE COURT:   And how long have you been a registered

17    nurse?

18         PROSPECTIVE JUROR:   Nine years, and I'm also a

19    full-time student.

20         THE COURT:   Okay.  And where are you a full-time

21    student?

22         PROSPECTIVE JUROR:   At the WGU University.  It's an

23    online college.

24         THE COURT:   You're going full-time to an online

25    college to get what degree?

```
 1              PROSPECTIVE JUROR:   Bachelor degree.

 2              THE COURT:   Bachelor degree in nursing?

 3              PROSPECTIVE JUROR:   Yes.

 4              THE COURT:   Tell me what part of the community you

 5    live in.

 6              PROSPECTIVE JUROR:   North Miami.

 7              THE COURT:   How long have you lived in the Greater

 8    Miami area?

 9              PROSPECTIVE JUROR:   Since 1998.

10              THE COURT:   And what is your marital status?

11              PROSPECTIVE JUROR:   Married.

12              THE COURT:   Does your husband work?

13              PROSPECTIVE JUROR:   My husband is a full-time student,

14    nursing full-time student, and also, he works part-time at

15    Jackson Hospital.

16              THE COURT:   Doing what?

17              PROSPECTIVE JUROR:   As a transporter.

18              THE COURT:   What does he do at Jackson?

19              PROSPECTIVE JUROR:   Transportation.

20              THE COURT:   How about children?

21              PROSPECTIVE JUROR:   I have five children.

22              THE COURT:   How old are they?

23              PROSPECTIVE JUROR:   The oldest is going to be 17 this

24    month and the youngest is six.

25              THE COURT:   And they're all students; right?
```

```
1              PROSPECTIVE JUROR:   Yes.

2              THE COURT:   Thank you, ma'am.

3              Pass the microphone, please.

4              Hello.

5              PROSPECTIVE JUROR:   Hello.

6              THE COURT:  What's your name?

7              PROSPECTIVE JUROR:   Ivette Ruiz.

8              THE COURT:   And it was your occupation, Ms. Ruiz?

9              PROSPECTIVE JUROR:   Controller of car dealership.

10             THE COURT:   And how long have you been doing that?

11             PROSPECTIVE JUROR:   Twenty-seven years.

12             THE COURT:   And what part of the community do you live

13    in?

14             PROSPECTIVE JUROR:   West Kendall.

15             THE COURT:   How long have you lived in the Greater

16    Miami area?

17             PROSPECTIVE JUROR:   Forty-two years.

18             THE COURT:   And tell me the name of your dealership

19    again.

20             PROSPECTIVE JUROR:   Potamkin.

21             THE COURT:   And which car is it?

22             PROSPECTIVE JUROR:   Hyundai.

23             THE COURT:   Is that a Hyundai, okay.

24             PROSPECTIVE JUROR:   Yeah, but I work at the Kendall

25    South store.
```

1              THE COURT:   And what -- I'm sorry -- you told me where

2    you lived.  But did you tell me how long you lived -- yeah, you

3    did.

4              PROSPECTIVE JUROR:   Yes.

5              THE COURT:   Tell me, what is your marital status?

6              PROSPECTIVE JUROR:   Married.

7              THE COURT:   Does your husband work outside the home?

8              PROSPECTIVE JUROR:   Yes.

9              THE COURT:   What does he do?

10             PROSPECTIVE JUROR:   Export/import at DHL.

11             THE COURT:   And how about children?

12             PROSPECTIVE JUROR:   Two.

13             THE COURT:   How old are they?

14             PROSPECTIVE JUROR:   Twenty-seven, 22.

15             THE COURT:   And is either of them employed?

16             PROSPECTIVE JUROR:   They're both employed.  One works

17   at Doral Hyundai and my daughter works at Morrison, Brown

18   Argiz, audit.

19             THE COURT:   That's an accounting firm?

20             PROSPECTIVE JUROR:   Yes.

21             THE COURT:   Thank you, ma'am.

22             Pass the microphone, please.

23             Hello.  What's your name?

24             PROSPECTIVE JUROR:   Maria Pedreno.

25             THE COURT:   And what is your occupation?

1             PROSPECTIVE JUROR:   I am a medical code specialist.

2             THE COURT:   What does that mean?

3             PROSPECTIVE JUROR:   Well, I analyze all the patient

4    charts and get some kind of codes.

5             THE COURT:   You make up a number that kind of will

6    make them pay you; right?

7             PROSPECTIVE JUROR:   Yes, that's correct.   I work for

8    the VA Hospital.

9             THE COURT:   And how long have you been doing that?

10            PROSPECTIVE JUROR:   Fifteen years.

11            THE COURT:   And what is your -- part of the community

12   that you live in?

13            PROSPECTIVE JUROR:   I live in Southwest Miami.

14            THE COURT:   And how long have you lived in the Greater

15   Miami area?

16            PROSPECTIVE JUROR:   Like about 20.

17            THE COURT:   And what's your marital status?

18            PROSPECTIVE JUROR:   Divorced.

19            THE COURT:   How long you been divorced?

20            PROSPECTIVE JUROR:   Twelve years.

21            THE COURT:   Eh; how about kids?

22            PROSPECTIVE JUROR:   I have two.

23            THE COURT:   How old?

24            PROSPECTIVE JUROR:   I have a girl of 31 and a boy of

25   30.

 1          THE COURT:  Are they employed?

 2          PROSPECTIVE JUROR:   Yes, my daughter is a cardiologist

 3   and my son doing the Ph.D. in neuroscience.

 4          THE COURT:  So they're well employed.

 5          PROSPECTIVE JUROR:   Yes, they are doing very well.

 6          THE COURT:  Okay.  Good for you.  Congratulations.

 7          PROSPECTIVE JUROR:   Thank you.

 8          THE COURT:   Thank you.  Pass the microphone.

 9          Yes, sir, please tell us your name.

10          PROSPECTIVE JUROR:   My name is Ross Holdahl.

11          THE COURT:  Mr. Holdahl, what is your occupation?

12          PROSPECTIVE JUROR:  I do roofing sales for Roofs To Go.

13          THE COURT:   Roofs To Go.  You can take them with you?

14   What does that mean?

15          PROSPECTIVE JUROR:   That means whatever you want.

16          THE COURT:   Okay, that's good.  That means a good

17   company.

18          Tell me -- how long have you been doing that?

19          PROSPECTIVE JUROR:   I've been doing this with him

20   about five years.

21          THE COURT:   And what did you do before that?

22          PROSPECTIVE JUROR:   I did real estate investments.

23          THE COURT:   Okay.  And on your own or did you work for

24   a company?

25          PROSPECTIVE JUROR:   Our family business.

1           THE COURT:   Okay.  Tell me what part of the community

2    you live in.

3           PROSPECTIVE JUROR:   Coconut Grove, South Florida.

4           THE COURT:   How long have you lived in the Greater

5    Miami area?

6           PROSPECTIVE JUROR:   Three years.

7           THE COURT:   What is your marital status?

8           PROSPECTIVE JUROR:   Very happily divorced.

9           THE COURT:   How long?

10          PROSPECTIVE JUROR:   Since 2004.

11          THE COURT:   And how about children?

12          PROSPECTIVE JUROR:   I have an 18-year-old daughter in

13   college, a 28-year-old son and a 30-year-old son.

14          THE COURT:   What do the sons do for a living?

15          PROSPECTIVE JUROR:  They sell.

16          THE COURT:  They sell what?

17          PROSPECTIVE JUROR:  They sell for the family business.

18          THE COURT:   What is the family business then?

19          PROSPECTIVE JUROR:   Family business up in Minnesota is

20   candy.

21          THE COURT:   Candy.

22          PROSPECTIVE JUROR:   Yep.

23          THE COURT:   Any candy I ever heard of?

24          PROSPECTIVE JUROR:   Candy's Candy.

25          THE COURT:   Candy's Candy?

```
1              PROSPECTIVE JUROR:   Yeah.

2              THE COURT:   I probably eaten that more than once, more

3    than I should have.   Thank you very much, sir.

4              Pass the microphone.

5              PROSPECTIVE JUROR:   You're welcome.

6              THE COURT:   Yes, sir.   Please tell us your name.

7              PROSPECTIVE JUROR:   Barry Wulwick.

8              THE COURT:   And what is your occupation, Mr. Wulwick?

9              PROSPECTIVE JUROR:   Until about ten days ago, real

10   estate management.

11             THE COURT:   And what happened ten days ago?

12             PROSPECTIVE JUROR:   I was laid off.

13             THE COURT:   And so you're unemployed at the present

14   time?

15             PROSPECTIVE JUROR:   Yes, sir.

16             THE COURT:   And what type of work are you looking for?

17             PROSPECTIVE JUROR:   The same, real estate management.

18             THE COURT:   Okay.   And what part of the community do

19   you live in?

20             PROSPECTIVE JUROR:   North Miami Beach.

21             THE COURT:   How long have you lived in the Greater

22   Miami area?

23             PROSPECTIVE JUROR:   Fourteen years.

24             THE COURT:   What is your marital status?

25             PROSPECTIVE JUROR:   Married.
```

```
 1              THE COURT:   Does your wife work outside the home?

 2              PROSPECTIVE JUROR:   Yes.  She's a bookkeeper.

 3              THE COURT:   And how about children?

 4              PROSPECTIVE JUROR:   Yes.

 5              THE COURT:   How many?

 6              PROSPECTIVE JUROR:   Eight.

 7              THE COURT:   And what are their ages?

 8              PROSPECTIVE JUROR:   Twenty-six, he's in sales; 25,

 9     she's an accountant; 24, he's in law school.

10              THE COURT:   Keep going.

11              PROSPECTIVE JUROR:   Twenty-one, she's in PA school;

12     19, she's enrolled to go to FIU in January; 14, ninth grade; --

13              THE COURT:   You did good.

14              PROSPECTIVE JUROR:   I'm thinking.  Nine years old, in

15     fourth grade; and six years old, in first grade.

16              THE COURT:   All right.  You better get a job fast.

17              PROSPECTIVE JUROR:   Don't ask me to say their

18     birthdays, please.

19              THE COURT:   Pass the microphone, please.

20              Please tell us your name.

21              PROSPECTIVE JUROR:   Berta Rios.

22              THE COURT:   And Ms. Rios, what is your occupation?

23              PROSPECTIVE JUROR:   I'm a program manager at

24     Miami-Dade College and I also teach at Miami-Dade College.

25              THE COURT:   And a program manager, you do what?
```

```
 1              PROSPECTIVE JUROR:   I manage all the noncredit
 2    offerings at Miami-Dade College West.
 3              THE COURT:   What part of the community do you live in?
 4              PROSPECTIVE JUROR:   Kendall.
 5              THE COURT:   How long have you lived in the Greater
 6    Miami area?
 7              PROSPECTIVE JUROR:   Fifteen years.
 8              THE COURT:   What is your marital status?
 9              PROSPECTIVE JUROR:   Single.
10              THE COURT:   Any children?
11              PROSPECTIVE JUROR:   No.
12              THE COURT:   Thank you, ma'am.
13              Pass the microphone, please.
14              Yes, sir, please tell us your name.
15              PROSPECTIVE JUROR:   Omar Bailey.
16              THE COURT:  Mr. Bailey, what do you do for a living?
17              PROSPECTIVE JUROR:   I'm in ED registration, I guess
18    "lead" is the position.
19              THE COURT:   I don't know what that means.  Tell me
20    what "ED registration" means.
21              PROSPECTIVE JUROR:   I work in an ED, Emergency
22    Department, down in Homestead Hospital.  I kind of play a part
23    of the lead of the financial reps that collect information.
24              THE COURT:   So you're the one that picks their pocket
25    before they can get fixed?
```

     1          PROSPECTIVE JUROR:   Yeah, pretty much.

     2          THE COURT:   Tell me -- how long have you been doing

     3   that?

     4          PROSPECTIVE JUROR:   Five years.

     5          THE COURT:   What part of the community do you live in?

     6          PROSPECTIVE JUROR:   Homestead.

     7          THE COURT:   How long have you lived in the Greater

     8   Miami area?

     9          PROSPECTIVE JUROR:   Five years -- I'm sorry, nine

    10   years.

    11          THE COURT:   What is your marital status?

    12          PROSPECTIVE JUROR:   Single.

    13          THE COURT:   Any children?

    14          PROSPECTIVE JUROR:   I have two.

    15          THE COURT:   How old?

    16          PROSPECTIVE JUROR:  Twelve and 11.

    17          THE COURT:   Thank you, sir.  Pass the microphone.

    18          Hello.

    19          PROSPECTIVE JUROR:   Hi.

    20          THE COURT:   What's your name?

    21          PROSPECTIVE JUROR:   Wendy Morhaim.

    22          THE COURT:   And Ms. Morhaim, what is your occupation?

    23          PROSPECTIVE JUROR:   I'm a teacher.

    24          THE COURT:   And what do you teach?

    25          PROSPECTIVE JUROR:   I teach three year olds in a

1    private school.

2          THE COURT:   And how long have you been doing that?

3          PROSPECTIVE JUROR:   Thirty years.

4          THE COURT:   What is your part of the community that

5    you live in?

6          PROSPECTIVE JUROR:   Miami Beach.

7          THE COURT:   How long have you lived in the Greater

8    Miami area?

9          PROSPECTIVE JUROR:   Forty-five years.

10         THE COURT:   What is your marital status?

11         PROSPECTIVE JUROR:   Married.

12         THE COURT:   Does your husband work outside the home?

13         PROSPECTIVE JUROR:   He is unemployed at the moment.

14   He's a CPA.

15         THE COURT:   All right.  He's a CPA unemployed from the

16   accounting field; correct?

17         PROSPECTIVE JUROR:   Correct.

18         THE COURT:   And how about children?

19         PROSPECTIVE JUROR:   I have two daughters, one is 35,

20   she's a psychologist for Dade County Schools; and another

21   daughter, she's 33 and she's a teacher, also.

22         THE COURT:   Okay.  Great.  Thank you very much.

23         Pass the microphone to your left, please.

24         Hi, what's your name?

25         PROSPECTIVE JUROR:   Sara Fornos.

```
1          THE COURT:   And Ms. Fornos, what is your occupation?

2          PROSPECTIVE JUROR:   I do sales for iRobot Corporation.

3          THE COURT:   And what type of corporation is that?

4          PROSPECTIVE JUROR:   It's a robotic vacuum cleaner.

5          THE COURT:   Oh, the one my cat rides around on?   I

6   seen it on television.

7          PROSPECTIVE JUROR:   Yep, that's the one.

8          THE COURT:   I don't actually have one of those, but I

9   think my cat would be really mad if I set one of those loose in

10  the house; and I don't know what my dog would do.

11         Tell me how long you've been doing that.

12         PROSPECTIVE JUROR:   About 11 years now.

13         THE COURT:   And what part of the community do you live

14  in?

15         PROSPECTIVE JUROR:   Palmetto Bay.

16         THE COURT:   What a second, have they had those for 11

17  years?

18         PROSPECTIVE JUROR:   I'm sorry?

19         THE COURT:   Have they had those robotic things for 11

20  years?

21         PROSPECTIVE JUROR:   I'm an independent contractor

22  and -- so what that means is I represent different factories.

23  So that's my biggest line right now.

24         THE COURT:   Biggest line now, but you've been selling

25  other things?
```

1                    PROSPECTIVE JUROR:   Yes, yes.

2                    THE COURT:   And what part of the community do you live

3      in?

4                    PROSPECTIVE JUROR:   Palmetto Bay.

5                    THE COURT:   How long have you lived in the Greater

6      Miami area?

7                    PROSPECTIVE JUROR:   All my life.

8                    THE COURT:   And what is your marital status?

9                    PROSPECTIVE JUROR:   Married.

10                   THE COURT:   Does your spouse work outside the home?

11                   PROSPECTIVE JUROR:   Yes.

12                   THE COURT:   Doing what?

13                   PROSPECTIVE JUROR:   He's a sales manager for Conair

14     Corporation.

15                   THE COURT:   What is Conair Corporation?

16                   PROSPECTIVE JUROR:   The hair product.

17                   THE COURT:   Oh, yeah, okay.  I don't have a lot of

18     that anymore, I don't worry about that too much.

19                   How about children?

20                   PROSPECTIVE JUROR:   I have two, 7 and 11.

21                   THE COURT:   Thank you.  They're still in school, I'm

22     sure?

23                   PROSPECTIVE JUROR:   Yes.

24                   THE COURT:   Thank you.  Pass the microphone, please.

25                   Please tell us your name.

```
 1              PROSPECTIVE JUROR:   Jean Rubio.

 2              THE COURT:   And Mr. Rubio, and what is your

 3   occupation?

 4              PROSPECTIVE JUROR:   I'm purchasing manager for a truck

 5   leasing company.

 6              THE COURT:   And how long have you been doing that?

 7              PROSPECTIVE JUROR:  Seven years.

 8              THE COURT:   What part of the community do you live in?

 9              PROSPECTIVE JUROR:   Miami-Dade.

10              THE COURT:   How long have you lived in the Greater

11   Miami area?

12              PROSPECTIVE JUROR:   Twenty-five years.

13              THE COURT:   What is your marital status?

14              PROSPECTIVE JUROR:   Married.

15              THE COURT:   Does your wife work outside the home?

16              PROSPECTIVE JUROR:   Yes, sir.

17              THE COURT:   Doing what?

18              PROSPECTIVE JUROR:   She's HR analyst for Southern Wine

19   and Spirits.

20              THE COURT:   And how about children?

21              PROSPECTIVE JUROR:   I have three kids, 14, 8 and 4.

22              THE COURT:   All students, I'm sure?

23              PROSPECTIVE JUROR:   Yes, sir.

24              THE COURT:   Okay.  Great.  Thank you.

25              Pass the microphone, please.
```

1              Hello.

2              PROSPECTIVE JUROR:   Hello.

3              THE COURT:   What is your name?

4              PROSPECTIVE JUROR:   Deborah Del Valle.

5              THE COURT:   Ms. Del Valle, what is your occupation?

6              PROSPECTIVE JUROR:   I'm a business service manager.

7              THE COURT:   What does that mean?

8              PROSPECTIVE JUROR:   I work for Rolls-Royce Power

9     System and I take care of their contracts and access to our

10    systems and anything else that has to do with running their

11    businesses.

12             THE COURT:   Rolls-Royce Power Systems, is that

13    generally aircraft?

14             PROSPECTIVE JUROR:   I work for their power generation

15    and industrial engine division.

16             THE COURT:   And how long have you been doing that?

17             PROSPECTIVE JUROR:   Over six years.

18             THE COURT:   And what part of the community do you live

19    in?

20             PROSPECTIVE JUROR:   West Kendall.

21             THE COURT:   How long have you lived in the Greater

22    Miami area?

23             PROSPECTIVE JUROR:   Seventeen years.

24             THE COURT:   And what is your marital status?

25             PROSPECTIVE JUROR:   Married.

```
 1              THE COURT:   And is your spouse --

 2              PROSPECTIVE JUROR:   Yes, he does.

 3              THE COURT:   What does he do?

 4              PROSPECTIVE JUROR:   He's a paralegal for Customs and

 5   Border Protection.

 6              THE COURT:   Okay.  And how about kids?

 7              PROSPECTIVE JUROR:   Two.

 8              THE COURT:   How old?

 9              PROSPECTIVE JUROR:   Twenty-two and 17.

10              THE COURT:   Either of them work?

11              PROSPECTIVE JUROR:   Nope, students.

12              THE COURT:   Thank you.  Pass the microphone.

13              Hello.

14              PROSPECTIVE JUROR:   Hello.

15              THE COURT:   What's your name?

16              PROSPECTIVE JUROR:   Maria Diaz.

17              THE COURT:   And what is your occupation, Ms. Diaz?

18              PROSPECTIVE JUROR:   Tax preparer.

19              THE COURT:   Say that again.

20              PROSPECTIVE JUROR:   Tax preparer, I prepare tax.

21              THE COURT:   You prepare tax forms?

22              PROSPECTIVE JUROR:   Uh-huh.

23              THE COURT:   Do you do that for yourself or do you work

24   for a company?

25              PROSPECTIVE JUROR:   For a company.
```

```
1              THE COURT:   What's the name of the company?

2              PROSPECTIVE JUROR:   H&R Block.

3              THE COURT:   I've heard of them.  Tell me how long have

4     you worked there.

5              PROSPECTIVE JUROR:   Ten years.

6              THE COURT:   What part of the community do you live in?

7              PROSPECTIVE JUROR:   South Miami.

8              THE COURT:   How long have you lived in the Greater

9     Miami area?

10             PROSPECTIVE JUROR:   Thirteen years.

11             THE COURT:   And what is your marital status?

12             PROSPECTIVE JUROR:   Divorced.

13             THE COURT:   How long you been divorced?

14             PROSPECTIVE JUROR:   Six years.

15             THE COURT:   That's marginal.  What did he do for a

16    living, or did he do nothing?

17             PROSPECTIVE JUROR:   Who?

18             THE COURT:   Him.  See how fast they forget.

19             Your ex-husband.

20             PROSPECTIVE JUROR:   I don't know.  He's in Argentina.

21             THE COURT:   So we don't care.  Thank you.  How about

22    children?  How about kids?

23             PROSPECTIVE JUROR:   Two kids.

24             THE COURT:   How old?

25             PROSPECTIVE JUROR:   Sixteen and 13.
```

1              THE COURT:   Students?

2              PROSPECTIVE JUROR:   Yes.

3              THE COURT:   Okay.  Thank you, ma'am.

4              Pass the microphone, please.

5              Hello, what's your name?

6              PROSPECTIVE JUROR:   Hi.  Milagro Mena.

7              THE COURT:   And Ms. Mena, what is your occupation?

8              PROSPECTIVE JUROR:   Well, I'm a cosmetologist, but I'm

9    not working right now.

10             THE COURT:   So you're an unemployed cosmetologist?

11             PROSPECTIVE JUROR:   Yes.

12             THE COURT:   How long have you been a cosmetologist?

13             PROSPECTIVE JUROR:   Since 1981.

14             THE COURT:   How long have you been unemployed?

15             PROSPECTIVE JUROR:   A year.

16             THE COURT:   And what part of the community do you live

17   in?

18             PROSPECTIVE JUROR:   Miami Beach.

19             THE COURT:   How long have you lived in the Greater

20   Miami area?

21             PROSPECTIVE JUROR:   Four years.

22             THE COURT:   Where did you live before that?

23             PROSPECTIVE JUROR:   New Jersey.

24             THE COURT:   And what part of the -- I'm sorry, what is

25   your marital status?

```
 1              PROSPECTIVE JUROR:   I'm divorced.  Happily divorced.

 2              THE COURT:   Happily divorced.  How long?

 3              PROSPECTIVE JUROR:   For 15 years.

 4              THE COURT:   And how about children?

 5              PROSPECTIVE JUROR:   Yes, I have an 18-year-old in high

 6      school and I have an 11-year-old girl.

 7              THE COURT:   Thank you very much.  I think you're the

 8      last one so you don't have to pass it anywhere.

 9              PROSPECTIVE JUROR:   Yes.  Thank you.

10              THE COURT:  Thank you, Miss.

11          All right.  Now, I'm going to ask you general questions

12      and the way I'm going to do it is, listen to the questions

13      carefully, I'm going to start with the front row, the four

14      people in the front row; then the front row of the jury box;

15      then the back row of the jury box; then I will go to the front

16      row of the audience; and then the second row; and the third

17      row.  I guess there are four rows out there.  It's hard to

18      tell, but whatever.

19              And then we may start back there and come this way;

20      either way, it's a way of asking each section so we get an

21      answer.  If I skip your row or section, put your hand up if you

22      need to answer because I need to go.  All right.

23              Let's start with the front row.

24              Have you ever previously served or are presently

25      serving in the military?
```

1          Anybody in the front row in the jury box?

2          Anybody in the back row of the jury box?

3          Anybody in the front row of the audience?

4          Second row?

5          Third row?

6          All right, there you go.  We got two people together.

7    Let's hear it.

8          All right what is your name, sir?

9          PROSPECTIVE JUROR:  My name is Sergio.

10         THE COURT:  And what branch of the military were you

11   in?

12         PROSPECTIVE JUROR:  Army.

13         THE COURT:  Were you ever in the military police?

14         PROSPECTIVE JUROR:  No, sir.

15         THE COURT:  Ever have any disciplinary action taken

16   against you?

17         PROSPECTIVE JUROR:  No, never.

18         THE COURT:  Okay.  Good, that's all I need to know.

19   Thank you.

20         Tell us your name again.

21         PROSPECTIVE JUROR:  Air Force, but back home.

22         THE COURT:  Air Force back home.  Where is "back home?"

23         PROSPECTIVE JUROR:  Brazil.

24         THE COURT:  See, I wasn't talking about the Air Force

25   or any other paramilitary organization like the postal service

1    or Sears Roebuck, I was talking about Army, Navy, Marine Corps,

2    the real services, but I appreciate it.  Thank you anyway.

3    Thank you, sir.

4            Anybody else?  Yes, sir.  Tell us your name again.

5            PROSPECTIVE JUROR:  Jean Rubio.  I was in the National

6    Guard.

7            THE COURT:  Were you ever in the military police?

8            PROSPECTIVE JUROR:  No, sir.

9            THE COURT:  And did you have any disciplinary action

10   taken against you?

11           PROSPECTIVE JUROR:  No, sir.

12           THE COURT:  All right.  Next question, I'll start in

13   the back row and come this way.

14           Listen to the question carefully and wait until I

15   finish with the question because I will explain it when I'm

16   done.

17           Are you or any family members or friends employed in

18   the Criminal Justice System, for example, law enforcement

19   officers, probation officers, lawyers, judges?

20           What I mean by that is lawyers and judges, probation

21   officers, people that deal with the Criminal Justice System.

22           I don't want -- you don't need to tell us about lawyers

23   that do real estate law or personal injury law or defense work;

24   criminal defense work or prosecutors, that's what we're asking

25   about, is people that are involved in the Criminal Justice

1    System.

2         You, any family members, or close friends employed in

3    the Criminal Justice System.  Back row, anybody?

4         There you go.  Pass the microphone to Mr. Bailey.

5         Yes, sir.  Tell us your name.

6         PROSPECTIVE JUROR:  Omar Bailey.

7         THE COURT:  Yes, sir.  What is your answer?

8         PROSPECTIVE JUROR:  I just raised my hand because two

9    of my best friends up in Jersey are law enforcement officers

10   and I have a friend here who's a Dade County cop.

11        THE COURT:  Let's start with the officers in

12   New Jersey.  What service are they in, what branch?

13        PROSPECTIVE JUROR:  They -- well, my main friend he's a

14   Franklin Township -- I think he's a sergeant now, and his

15   brother is a lieutenant for Piscataway Township in New Jersey.

16        THE COURT:  And they are uniformed police officers?

17        PROSPECTIVE JUROR:  Yes.

18        THE COURT:  How about the one in Dade County, is that a

19   uniformed police officer?

20        PROSPECTIVE JUROR:  Uniformed.

21        THE COURT:  Doing, basically, street patrol as far as

22   you know; right?

23        PROSPECTIVE JUROR:  Yes.

24        THE COURT:  Let me ask you this:  Is there anything

25   about the relationship that you have with any of these folks

1    that would make it difficult or impossible for you to be fair

2    and impartial in this case?

3              PROSPECTIVE JUROR:   No.

4              THE COURT:   Thank you, sir.  Anybody else in that back

5    row?

6              The next row?

7              You got somebody else?  Okay.

8              Hi.  Tell us your name again.

9              PROSPECTIVE JUROR:  Berta Rios.

10             THE COURT:  And what is your answer?

11             PROSPECTIVE JUROR:  It's actually past tense, my father

12   was a judge.

13             THE COURT:   Your father was a judge; where?

14             PROSPECTIVE JUROR:   In Puerto Rico.

15             THE COURT:   Did he do criminal work?

16             PROSPECTIVE JUROR:   Criminal and civil.

17             THE COURT:   Is there anything in that relationship

18   that would make it difficult for you to be fair and impartial

19   in this case?

20             PROSPECTIVE JUROR:   No, Your Honor.

21             THE COURT:   I saw another hand.

22             Pass the microphone over.  Yes, sir, tell us your name.

23             PROSPECTIVE JUROR:  Ross Holdahl.

24             THE COURT:  Yes, sir.

25             PROSPECTIVE JUROR:   I have a first cousin who's the

1    Kanabec County Public Defender in Minnesota.

2           THE COURT:  Anything about that relationship that would

3    make you lean towards the defense or against the defense?  I

4    don't know what your relationship is with your cousin.

5           PROSPECTIVE JUROR:  We were pretty close.  It had me

6    disqualified last time I went to jury duty in Minnesota.

7           THE COURT:  That was a soft judge, I don't disqualify

8    for that.  You got to tell me if there is anything about that

9    that you think would make it difficult or impossible for you to

10   be fair and impartial in this case.

11          PROSPECTIVE JUROR:  They asked me when I last saw him

12   at the inquiry -- well, lunch that day; they said, "Okay, thank

13   you very much."

14          THE COURT:  You didn't have lunch with him today, did

15   you?

16          PROSPECTIVE JUROR:  Not today.

17          THE COURT:  Thank you, sir.

18          Yes, ma'am.

19          PROSPECTIVE JUROR:  My significant other --

20          THE COURT:  You have to tell us your name, please.

21          PROSPECTIVE JUROR:  I'm sorry.  Maria Pedreno.

22          THE COURT:  Yes, ma'am, tell us, what is your answer?

23          PROSPECTIVE JUROR:  My significant other works for 12

24   years, he's the chief for Homeland Security.

25          THE COURT:   He's the chief for Homeland Security?

1   What do you mean, "he's the chief?"

2        PROSPECTIVE JUROR:   Well, a "chief" is the status that

3   he have -- he worked for Homeland Security.

4        THE COURT:   I don't know what the ranks are in

5   Homeland Security.

6        PROSPECTIVE JUROR:   He worked for Homeland Security,

7   we have not been together for a year, but we were together for

8   12 years.

9        THE COURT:   Is there anything about that relationship

10  that would cause you to be really mad at any federal

11  enforcement --

12       PROSPECTIVE JUROR:   Me, yes, yes.

13       THE COURT:   -- or in favor of them?

14       Is there anything that would make it difficult for you

15  to be fair and impartial to both sides in this case.

16       PROSPECTIVE JUROR:   No, no, not for the Court but we

17  have bad relation, and he's very bad.

18       THE COURT:   As far as I know, he's not a witness in

19  this case.

20       PROSPECTIVE JUROR:   Yes.

21       THE COURT:   So the question is, is there anything

22  about that relationship that would make you so embittered and

23  so mean and so nasty that you're not going to be fair in this

24  case?

25       PROSPECTIVE JUROR:   No, it's not.

```
 1                THE COURT:   Anybody else in that row?  I thought

 2    somebody else raised their hand.

 3                Pass the microphone.  Next row up.

 4                Pass the microphone over, please.

 5                Yes, ma'am.  Tell us your name.

 6                PROSPECTIVE JUROR:   Ynes Pedrosa.

 7                THE COURT:   What's your answer?

 8                PROSPECTIVE JUROR:   I have a first cousin that is a

 9    sergeant for Miami-Dade; I have godparents who are sergeants

10    for Miami Gardens.

11                THE COURT:   Your godparents?

12                PROSPECTIVE JUROR:   Yes.

13                THE COURT:   Okay.

14                PROSPECTIVE JUROR:  And I have a second cousin who is

15    undercover for Miami-Dade.

16                THE COURT:   All right.  Now, is there anything about

17    the relationship with any of those people that would make it

18    difficult or impossible for you to be fair and impartial in

19    this case?

20                PROSPECTIVE JUROR:   Nope.

21                THE COURT:  Thank you, ma'am.

22                PROSPECTIVE JUROR:  You're welcome.

23                THE COURT:  Anybody else in that row?  And please

24    remember, as you've seen, pass the microphone back to the court

25    security officer.
```

1          When you get the microphone back, always tell us your

2    name because, otherwise, the record is just going to show

3    somebody because we don't know you yet.

4          Anybody in the row in front that's got an answer to

5    that question?  How about the front row over here?  Don't be

6    shy, raise your hand up.

7          Tell us your name, please.

8          PROSPECTIVE JUROR:   Rebeca Castro, and my two

9    brother-in-laws are criminal attorneys, and my one of them was

10   the former chief of police of Doral.

11         THE COURT:  Okay.  What are their names?

12         PROSPECTIVE JUROR:  Ricardo Gomez and Hernando

13   Sevilla (phonetic.)

14         THE COURT:  Is there anything about that relationship

15   that would make it difficult for you to be fair and impartial

16   in this case, which, to my knowledge, doesn't have anything to

17   do with Doral?

18         PROSPECTIVE JUROR:   No.  No, sir.

19         THE COURT:  Thank you, ma'am.

20         Anybody else over there?  If not, let's go to the front

21   row over here.  Anybody in the front row that can answer this

22   question, you or any family members, close friends that are

23   employed in the Criminal Justice System?

24         Tell us your name again.

25         PROSPECTIVE JUROR:   Deborah Cross-Williams.

1          THE COURT:   Face them, because they're the ones that

2    matter.   Tell us, what is your answer?

3          PROSPECTIVE JUROR:   My oldest niece is a probation

4    officer in Tampa, Florida.

5          THE COURT:   All right.   Is there anything about that

6    relationship that would make it difficult or impossible for you

7    to be fair and impartial in this case?

8          PROSPECTIVE JUROR:   No, no, sir.

9          THE COURT:   Thank you, ma'am.   Anybody else?

10         Yes, sir.   Tell us your name again.

11         PROSPECTIVE JUROR:   Joseph Simpson.

12         THE COURT:   What is your answer, Mr. Simpson?

13         PROSPECTIVE JUROR:   My friend and neighbor is an

14   immigration attorney that does defend criminals.

15         THE COURT:   What's his name?

16         PROSPECTIVE JUROR:   Her name is Doris Galindo.

17         THE COURT:   I'm sorry, say that again.

18         PROSPECTIVE JUROR:   Doris Galindo.

19         THE COURT:   Is there anything about that relationship

20   that would make it difficult or impossible for you to be fair

21   and impartial in this case?

22         PROSPECTIVE JUROR:   No.

23         THE COURT:   Thank you, ma'am -- thank you, sir.   I'm

24   getting my genders mixed up.

25         Anybody in the front row of the jury box?

1                Pass the microphone, please.  Okay.

2                PROSPECTIVE JUROR:   My name is Ricardo Rubio.

3                THE COURT:   Yes, sir.  What's your answer?

4                PROSPECTIVE JUROR:   My best friend, his father's a

5       correctional officer, and my best friend just got accepted into

6       the academy for correctional officers.

7                THE COURT:  So your best friend is waiting to be a

8       corrections officer and his father already is a corrections

9       officer; is that correct?

10               PROSPECTIVE JUROR:   Yes, sir.

11               THE COURT:   Is there anything about the relationship

12      with either of those that would make it difficult or impossible

13      for you to be fair and impartial in this case?

14               PROSPECTIVE JUROR:   No, sir.

15               THE COURT:  Pass it over to your right.

16               Yes, ma'am, tell us your name again.

17               PROSPECTIVE JUROR:   My name is Alexi Richards.

18               THE COURT:   And what is your answer, Ms. Richards?

19               PROSPECTIVE JUROR:   My best friend is a prosecutor up

20      in Worcester, Massachusetts.

21               THE COURT:   Is there anything about that relationship

22      that would make it difficult or impossible to be fair and

23      impartial in this case?

24               PROSPECTIVE JUROR:   Maybe just because she shares a

25      lot of her war story issues that she faces, criticism of the

1    system, things that she deals with, so I've heard --

2           THE COURT:   She's never had the benefit of being

3    before me.

4           PROSPECTIVE JUROR:   No, she's in Massachusetts.

5           THE COURT:   So you think you might be biased for the

6    prosecution because your friend whined to you about some things

7    that she didn't like the way they went?

8           PROSPECTIVE JUROR:   Well, I'm just saying, something

9    that she may have brought up, I don't know if it would make me

10   think one way or another, I'm just putting it out there.

11          THE COURT:   I  understand, and that's what I'm asking

12   you, do you think any of that would make it difficult for you

13   to be fair and impartial in this case?

14          PROSPECTIVE JUROR:   It may, I'm not a hundred percent

15   sure.

16          THE COURT:   Thank you, ma'am.

17          Pass the microphone, please.

18          Yes, ma'am.  Tell us your name again.

19          PROSPECTIVE JUROR:   Casandra Pastrana, and my uncle is

20   a uniformed police officer for Miami-Dade.

21          THE COURT:   Is there anything about that fact that

22   your uncle is a uniformed police officer that would make it

23   difficult for you to be fair and impartial in this case?

24          PROSPECTIVE JUROR:   No.

25          THE COURT:   Thank you, ma'am.  Anybody in the back row

1    of the jury?  All right.  Pass the microphone back.

2            I guess you people can see why you get punchy doing

3    this after a while.

4            Yes, sir.  Tell us your name again.

5            PROSPECTIVE JUROR:   Julio Rodriguez.  I have four

6    friends, City of Key Biscayne and Miami Police.

7            THE COURT:   You have four friends that are police

8    officers with the City of Miami and the City Key Biscayne,

9    correct?

10           PROSPECTIVE JUROR:   That's correct.

11           THE COURT:  Is there anything about the relationship

12   that you have with those people that would make it difficult or

13   impossible for you to be fair and impartial in this case?

14           PROSPECTIVE JUROR:   No.

15           THE COURT:   Thank you.  Pass the microphone.

16           Yes, sir.  Tell us your name.

17           PROSPECTIVE JUROR:   I am Sergio Herrera.  I have two

18   nephews who are City of Miami police officers.  I have many

19   friends who are police officers, detectives, and a very good

20   friend of mine is the chief of police.

21           THE COURT:   Where?

22           PROSPECTIVE JUROR:   F.I.U. campus chief of police.

23           THE COURT:   Is there anything about the relationship

24   with any or all of these people that would make it difficult

25   for you to be fair and impartial in this case?

1        PROSPECTIVE JUROR:   I am partial to the benefit of the

2   police officers.  Many of them are my friends.

3        THE COURT:  I don't think that my -- really, I don't

4   think any police officers are involved in this case.

5        PROSPECTIVE JUROR:  Okay.

6        THE COURT:   I mean law enforcement is.

7        PROSPECTIVE JUROR:   All right.

8        THE COURT:   Would your knowledge of these police

9   officers make it difficult for you to be fair and impartial in

10  this case, which, to my knowledge, doesn't involve any police

11  officers?

12       PROSPECTIVE JUROR:   Okay.  I don't know the facts of

13  this case, I'm just saying I lean towards the benefit of the

14  police officers.

15       THE COURT:   What I'm asking you is, since there's no

16  police officers involved in this case, do you think you can be

17  fair and impartial in this case?

18       PROSPECTIVE JUROR:   Sure, yes.

19       THE COURT:   Thank you.  Pass the microphone, please.

20  Is there anybody else back there?  Okay.

21       Next question, we will start with the back row there.

22  Have any of you ever applied for or sought employment in law

23  enforcement?  Anybody in the back row?

24       Anybody in the front row of the jury box?

25       There you are.  Tell us your name again.

1           PROSPECTIVE JUROR:   Ricardo Rubio.

2           THE COURT:   What department did you apply for?

3           PROSPECTIVE JUROR:   Correctional officer as well.

4           THE COURT:   Anything about the fact that -- you know,

5    you understand that even if your application's pending,

6    whatever happens here has nothing to do with that?

7           PROSPECTIVE JUROR:   Oh, no, I know.

8           THE COURT:   Anything about the fact that you had

9    applied for employment that would make it difficult for you to

10   be fair and impartial in this case?

11          PROSPECTIVE JUROR:   No, sir.

12          THE COURT:   Anybody in the front row outside the jury

13   box?  How about the front row of the audience?

14          Next row?  Anybody out there?  Okay.  Thank you.

15          We'll start with the back row back there then.

16          Listen to this question very carefully because all the

17   details, I want.  Have you ever been the victim of a crime,

18   you, or an immediate family member; and then I'm going to ask

19   you the nature of the crime, was it reported, was anyone

20   arrested, what happened with the case, were you generally

21   satisfied or dissatisfied with the way you were treated by the

22   law enforcement and the judicial system.

23          There's no right answer to this, just tell us what

24   happened, tell us if anybody was arrested.

25          Let's start with the back row.  Have you ever been the

1    victim of a crime, you, or an immediate family member?

2              Pass the microphone.  Yes, sir, Mr. Bailey.

3              PROSPECTIVE JUROR:  I bought a vehicle and the person

4    who sold me the vehicle improperly repossessed it from somebody

5    else.  I got stopped and got charged with grand theft auto.

6              THE COURT:  A-ha, but you were the victim of the crime?

7              PROSPECTIVE JUROR:  Say it again.

8              THE COURT:  But you were the victim of the crime?

9              PROSPECTIVE JUROR:  Yeah.

10             THE COURT:  Was it reported to police?  Obviously,

11   somebody got ahold of it.

12             PROSPECTIVE JUROR:  Yeah.

13             THE COURT:  Was anyone arrested?

14             PROSPECTIVE JUROR:  I was.

15             THE COURT:  And what happened?

16             PROSPECTIVE JUROR:  I had to go through a lot of court,

17   courtroom appearances, the guy got charged and I eventually got

18   the incident expunged.

19             THE COURT:  All right.  And you -- the other fellow was

20   charged, and was he convicted?

21             PROSPECTIVE JUROR:  I believe he was convicted.  He had

22   a history of some bad issues in his records and all this, so --

23   you know.

24             THE COURT:  Were you generally satisfied or

25   dissatisfied with the way you were treated by law enforcement

1    and the judicial system?

2            PROSPECTIVE JUROR:  Wow...

3            THE COURT:  I can't imagine you would have felt real

4    good about it, but let me ask you --

5            PROSPECTIVE JUROR:  No, because --

6            THE COURT:  -- is there anything that happened that

7    would make it difficult for you to be fair and impartial in

8    this case?

9            PROSPECTIVE JUROR:  No.

10           THE COURT:  Thank you, sir.

11           PROSPECTIVE JUROR:  Okay.

12           THE COURT:  Anybody else back there?  Pass the

13   microphone, please.  Yes, ma'am.

14           PROSPECTIVE JUROR:  Name again?

15           THE COURT:  Yes, please.

16           PROSPECTIVE JUROR:   Wendy Morhaim.

17           THE COURT:  Yes, Ms. Morhaim.

18           PROSPECTIVE JUROR:   I've been robbed, my house has

19   been burglarized and I've had my identity stolen.

20           THE COURT:   Let's start with the first one.  How many

21   times have you been robbed?  When you say "robbed," do you mean

22   at gunpoint, assaulted?

23           PROSPECTIVE JUROR:   No, no.  I was on Lincoln Road

24   buying coffee and I had my wallet in my hand and my purse and

25   somebody just took it all.

1              THE COURT:   Purse snatcher?

2              PROSPECTIVE JUROR:   And my wallet, yeah.   My house was

3   burglarized.

4              THE COURT:   Was that case reported to police?

5              PROSPECTIVE JUROR:   It was.

6              THE COURT:   Was anyone arrested?

7              PROSPECTIVE JUROR:   No.

8              THE COURT:   Were you generally satisfied or

9   dissatisfied with the way you were treated by the law

10  enforcement?

11             PROSPECTIVE JUROR:   I don't think I really thought

12  anything either way as far as they were concerned.

13             THE COURT:   Neutral.   Okay.   Let's talk about the

14  burglary, your house was burglarized?

15             PROSPECTIVE JUROR:  Yes, it was.

16             THE COURT:   How many times?

17             PROSPECTIVE JUROR:   Twice.

18             THE COURT:   And was it reported to police on each

19  occasion.

20             PROSPECTIVE JUROR:   Yes.

21             THE COURT:   Was anyone arrested?

22             PROSPECTIVE JUROR:   No.

23             THE COURT:   Were you generally satisfied or

24  dissatisfied by the way you were treated by law enforcement?

25             PROSPECTIVE JUROR:   No.

```
 1              THE COURT:   No, what?

 2              PROSPECTIVE JUROR:   No, I wasn't satisfied.

 3              THE COURT:   Neither.

 4              PROSPECTIVE JUROR:   It took them actually 24 hours the

 5    first time to come and even check for fingerprints.

 6              THE COURT:   So you were dissatisfied?

 7              PROSPECTIVE JUROR:   I was.

 8              THE COURT:   And is there anything about that that

 9    would make it difficult -- in other words, are you going to

10    hold that against all law enforcement people?

11              PROSPECTIVE JUROR:   No.

12              THE COURT:   So is there anything about that incident

13    that would make it difficult for you to be fair and impartial

14    in this case, which, to my knowledge, does not involve the City

15    of Miami Beach Police or wherever.

16              PROSPECTIVE JUROR:   No.  Last was I had my identity

17    stolen.

18              THE COURT:   Oh, yeah, that's fun.  Tell me, was it

19    reported to police?

20              PROSPECTIVE JUROR:   Not to the police.  This was over

21    ten years ago, I reported it to the credit card company that

22    was involved and it took almost two years to straighten it out.

23              THE COURT:   Which credit card company was it?

24              PROSPECTIVE JUROR:   It was AT&T Universal card.  I

25    don't know if it still exists.
```

1          THE COURT:   I don't know either.

2          PROSPECTIVE JUROR:   It's a kind of Visa.

3          THE COURT:   Okay.   That was a brand of Visa card.

4    Okay.   And was anyone arrested?

5          PROSPECTIVE JUROR:   No, it took -- whoever it was, was

6    up in Staten Island.

7          THE COURT:   Oh, great.   Anything about that incident

8    that would make it difficult for you to be fair and impartial

9    in this case?

10          PROSPECTIVE JUROR:   I don't know.   I'm not so sure

11    what this case is about.

12          THE COURT:   It doesn't have much to do with credit

13    cards that I know of.

14          PROSPECTIVE JUROR:   Okay, so then I guess it wouldn't.

15          THE COURT:   Well, we'll see.   All right.   Thank you,

16    ma'am.

17          Anybody else in that back row?

18          Pass the microphone to the left.

19          Yes, sir.   Please tell us your name.

20          PROSPECTIVE JUROR:   Jean Rubio.

21          THE COURT:   And what are we talking, how many times;

22    once?

23          PROSPECTIVE JUROR:   My house got broken into 12 years

24    ago, and I was pretty -- not too happy with the police service

25    that I received.   It took them almost a-day-and-a-half to get

1     there.  You know, my house was broken into, my stuff was taken.

2          THE COURT:   The cars are very slow, you understand

3     they don't give them really fast cars.  What city was it?

4          PROSPECTIVE JUROR:   Miami-Dade.

5          THE COURT:   Miami-Dade?

6          PROSPECTIVE JUROR:   Miami Lakes.

7          THE COURT:   Miami Lakes.

8          PROSPECTIVE JUROR:   Yes, sir.

9          THE COURT:   Let me ask you this.  Was anyone arrested?

10         PROSPECTIVE JUROR:   I'm sorry, no.

11         THE COURT:   And were you generally -- apparently, you

12    were dissatisfied with the way you were treated; correct?

13         PROSPECTIVE JUROR:   Correct, just like no -- lack of

14    urgency.

15         THE COURT:   Is there anything about that incident that

16    would make it difficult or impossible for you to be fair and

17    impartial in this case?

18         PROSPECTIVE JUROR:   I'm not sure.  I don't know what

19    the case is about, but I just want to, you know, put it out

20    there.

21         THE COURT:  Bearing in mind that that happened 12 years

22    ago and it was Miami Lakes Police Department and, to my

23    knowledge, this case has nothing to do with them, are you going

24    to hold it against all law enforcement?

25         PROSPECTIVE JUROR:   Maybe not, I don't know.

1            THE COURT:   Do you think you might?

2            PROSPECTIVE JUROR:   I don't think so, sir.

3            THE COURT:   What else do you got; is that it?

4            PROSPECTIVE JUROR:   That's it.

5            THE COURT:   Thank you.  Next row.  Yes, sir, tell us

6     your name, please.

7            PROSPECTIVE JUROR:   Hi.  Barry Wulwick.

8            THE COURT:   Yes, sir.

9            PROSPECTIVE JUROR:   Two incidents come to mind.   In

10    the mid-nineties, I took a company public and my CEO, CFO, CEO,

11    everybody that I hired, did some things they shouldn't have and

12    I ended up in a courtroom like this in front of the SEC, in

13    Seven World Trade Center, for a nice period of time, and they

14    all went away -- most of them went away, and no, I was not

15    satisfied with the outcome.

16           THE COURT:   Okay.  But you weren't charged?

17           PROSPECTIVE JUROR:   No money trailed to me.  They went

18    after the money.

19           THE COURT:   So the people that worked for you were

20    charged?

21           PROSPECTIVE JUROR:  Yes.

22           THE COURT:   And what -- did anything happen with them,

23    were they --

24           PROSPECTIVE JUROR:   Yes.  They all went away.

25           THE COURT:   Okay.  And were you generally satisfied or

1    dissatisfied with the way you were treated by law enforcement

2    and its system?

3          PROSPECTIVE JUROR:   I wasn't very satisfied.

4          THE COURT:   Okay.  Anything about that that would make

5    it difficult for you to be fair and impartial in this case?

6          PROSPECTIVE JUROR:   I don't know.

7          THE COURT:   Okay.

8          PROSPECTIVE JUROR:   I don't know.

9          THE COURT:   What would that be, give me your train of

10   thought as to why it would be.

11         PROSPECTIVE JUROR:   I don't think I would be

12   impartial.

13         THE COURT:   You mean you don't think you would be

14   partial?

15         PROSPECTIVE JUROR:   I'm sorry, I think I can --

16         THE COURT:  You think you could be impartial?

17         PROSPECTIVE JUROR:   Yes.

18         THE COURT:   I didn't want to put words in your mouth,

19   but I didn't --

20         PROSPECTIVE JUROR:   I think I could be impartial.

21         THE COURT:   I didn't think that's what you meant.  All

22   right.  All right, sir.  Thank you.  Anybody else back there?

23         Pass it over, please.

24         PROSPECTIVE JUROR:   My name is Maria Pedreno.  It's me

25   again.  When I put that -- I have a court-restricted order

1    against my ex-boyfriend.

2              THE COURT:   That did you a lot of good, I bet.  I'm

3    sure.

4              PROSPECTIVE JUROR:   I don't know if that applies here.

5              THE COURT:   No, it's not really.  The question is, did

6    he do something that was a crime to you?

7              PROSPECTIVE JUROR:   He was trying to, yes, that's why

8    I called the police and then I guess they issued the order.

9              THE COURT:   And did they respond?

10             PROSPECTIVE JUROR:   I had the -- no, yeah, we went to

11   court and I --

12             THE COURT:   Let me ask you this.  Do you believe that

13   you were the victim of a crime?

14             PROSPECTIVE JUROR:   In a way, yes.

15             THE COURT:   What's the nature of the crime?

16       What do you think it was?

17             PROSPECTIVE JUROR:   He tried to get -- he put a knife

18   to me, he didn't touch me, but he put a knife to me.

19             THE COURT:   That's an assault.

20             PROSPECTIVE JUROR:   Assault.

21             THE COURT:   Did you report it to the police?

22             PROSPECTIVE JUROR:   I called the police and then --

23             THE COURT:   Then they came?

24             PROSPECTIVE JUROR:   Yeah, the police came and --

25             THE COURT:   It didn't take them a-day-and-a-half to

1    get there?

2         PROSPECTIVE JUROR:   No, because he didn't touch me at

3    all, he just showed me the knife.  The day after I went to

4    court and had a restrictive order against him.

5         THE COURT:   Restraining order is not a criminal thing.

6         PROSPECTIVE JUROR:   Okay.

7         THE COURT:   Restraining order is a civil thing.  But

8    let me ask you this:  Did they take a complaint against him for

9    holding a knife on you?

10        PROSPECTIVE JUROR:   No.

11        THE COURT:   So nothing would have happened as a result

12   of that?

13        PROSPECTIVE JUROR:   No, it's still on the order, last

14   month, for a year.

15        THE COURT:   And is there anything about that that

16   would make it difficult for you to be fair and impartial in

17   this case?

18        PROSPECTIVE JUROR:   It depends what is the --

19        THE COURT:   Well, I don't think anybody's held a knife

20   to anybody in this case.

21        PROSPECTIVE JUROR:   No, then no.

22        THE COURT:   Thank you, ma'am.

23        PROSPECTIVE JUROR:   Okay.

24        THE COURT:   Anybody else in that row?

25             Pass the microphone that way, please.

```
 1              PROSPECTIVE JUROR:  Ivette Ruiz.

 2              THE COURT:  Yes, ma'am.

 3              PROSPECTIVE JUROR:  I had an employee that I caught

 4     stealing, forging my signature, stole over $200,000.

 5              THE COURT:  Did you report it to the police?

 6              PROSPECTIVE JUROR:  Yes, was arrested.

 7              THE COURT:  What happened?

 8              PROSPECTIVE JUROR:  She was found guilty actually last

 9     month because this happened in September of last year, and we

10     went --

11              THE COURT:  What happened as a result of that?

12              PROSPECTIVE JUROR:  And they gave her 30 years in

13     house prison.

14              THE COURT:  You mean she stays at home?

15              PROSPECTIVE JUROR:  House arrest.

16              THE COURT:  Thirty years at home?

17              PROSPECTIVE JUROR:  House arrest, yes.

18              THE COURT:  Wow, I don't want to be sentenced to 30

19     years at home.

20              So were you generally satisfied or dissatisfied with

21     the way you were treated?

22              PROSPECTIVE JUROR:  Well, I would have preferred her

23     do one year in jail and 29 years in house prison, honestly.

24              THE COURT:  Yeah, I can understand that.

25              PROSPECTIVE JUROR:  But was I satisfied, yes.
```

1          THE COURT:   Is there anything about that incident that

2     would make it difficult or impossible for you to be fair and

3     impartial in this case?

4          PROSPECTIVE JUROR:   No.

5          THE COURT:   Thank you.  Is there anybody else in that

6     row?  I think there is.  Yes, ma'am.  Tell us.

7          PROSPECTIVE JUROR:   Armelle Hosty.  And I was a victim

8     of identity theft.

9          THE COURT:   Did you report it to police?

10         PROSPECTIVE JUROR:   Yes, to police and to the credit

11    card company.

12         THE COURT:   And was anyone arrested?

13         PROSPECTIVE JUROR:   No.

14         THE COURT:   Were you generally satisfied or

15    dissatisfied with the way you were treated?

16         PROSPECTIVE JUROR:   Neither one.

17         THE COURT:   Neither.  Okay.  Anything about the

18    incident that would make it impossible or difficult for you to

19    be fair and impartial in this case?

20         PROSPECTIVE JUROR:   No.

21         THE COURT:   Thank you, ma'am.  Pass the microphone.

22    There's somebody else over there.  Somebody behind you.

23         Who is it?  What are we doing?

24         COURTROOM DEPUTY:   This gentleman here.

25         PROSPECTIVE JUROR:   I'm sorry, there's a second

1   incident I just wanted to disclose, Barry Wulwick.

2           THE COURT:  Yes, tell us about it.

3           PROSPECTIVE JUROR:  A family member was caught in a

4   Ponzi scheme about three-and-a-half years ago.

5           THE COURT:  Okay.

6           PROSPECTIVE JUROR:  I picked him up at the airport when

7   he got out of prison last Wednesday, and he's currently

8   residing at my house with an ankle bracelet.

9           THE COURT:  That's actually a question I ask later, but

10  that's okay, as long as you've answered it now, you don't have

11  to answer it later.

12          A cousin of yours was charged with --

13          PROSPECTIVE JUROR:  Father-in-law.

14          THE COURT:  Father-in-law was charged with a Ponzi

15  scheme and he was convicted, and what sentence did he receive?

16          PROSPECTIVE JUROR:  It was three years, but he got

17  two-and-a-half years.

18          THE COURT:  And he's out now and doing the rest of his

19  time with some restrictions on, an ankle bracelet?

20          PROSPECTIVE JUROR:  Yes.

21          THE COURT:  And that is your father-in-law?

22          PROSPECTIVE JUROR:  Uh-huh.

23          THE COURT:  And where was he convicted?

24          PROSPECTIVE JUROR:  New York.

25          THE COURT:  Later, if we need to ask more questions

1    about that, we will.  Right now, we're asking about crimes

2    against you.

3            PROSPECTIVE JUROR:  I was a victim of it.

4            THE COURT:  So you forgave him at least enough to let

5    him live in your house.  No comment.  Got you.

6            Thank you.  Next, anybody else?

7            PROSPECTIVE JUROR:  Berta Rios.

8            THE COURT:  Yes, ma'am.

9            PROSPECTIVE JUROR:  Like ten years ago they stole my

10   wallet in Doral and they made some checks.  I reported to the

11   police, nothing happened.

12           THE COURT:  They never caught anybody?

13           PROSPECTIVE JUROR:  No.

14           THE COURT:  Were you generally satisfied or

15   dissatisfied with the way they treated you?

16           PROSPECTIVE JUROR:  I was satisfied.

17           THE COURT:  Thank you, ma'am.  Anybody else?

18           Pass the microphone over that way.

19           PROSPECTIVE JUROR:  Miriam Quintero, I'm just

20   remembering, I used to work, before I worked where I worked, in

21   a company, I didn't last there too long, about

22   a-week-and-a-half, maybe two weeks.

23           When they paid me, I went to the bank to cash the check

24   and they denied it.  I was a victim because I didn't get paid

25   for that week, so, and I had gone back --

 1          THE COURT:  They stole your services.

 2          PROSPECTIVE JUROR:  No, I got it, but it turns out the

 3    lady, the owner, she would sign for her husband to pay me.  So

 4    I went back to the bank, didn't accept it again, so I went back

 5    to her and I was really mad, but she ended up paying me with

 6    another check, I got paid.

 7          Since that happened, I seen so many things, even where

 8    I work, people forge signatures all the time.  I can't stand

 9    that, so it happens, and I don't trust anybody with a check.

10          THE COURT:  I can understand from your experiences, but

11    the fact is that you apparently were the victim of the theft of

12    your services.  Did you report it to police?

13          PROSPECTIVE JUROR:  No.

14          THE COURT:  You got paid?

15          PROSPECTIVE JUROR:  I was young, I don't know, I didn't

16    think.  I did, I ended up getting paid, but I fought for it.  I

17    get it.

18          THE COURT:  You're holding the microphone out here.

19          PROSPECTIVE JUROR:  It wasn't easy.  I'm just saying

20    that I've seen a lot of that.

21          THE COURT:  But that wasn't the question.  The question

22    wasn't if you have seen a lot.  The question was, were you the

23    victim of a crime, and apparently the answer is yes.

24          PROSPECTIVE JUROR:  Yes, that, and my credit card.

25          THE COURT:  Stop.  If we both talk at the same time she

1    can't write it down, remember?

2          So you were the victim of a crime and you reported it

3    to the police, no, so you couldn't be satisfied or

4    dissatisfied.  I appreciate it.

5          Thank you very much, ma'am.

6          Next?  Yes, ma'am.  Tell us your name.

7          PROSPECTIVE JUROR:   My name is Cassandra Lord, and I

8    had a check stolen from a mailbox and the person where I put in

9    the memo numbers, they let -- they wrote it into letters, let

10   it sound like repairs for cabinets, which were numbers.

11         THE COURT:  Yeah.

12         PROSPECTIVE JUROR:  So, and my name, they rewrite it

13   and they went to the credit union with it to try to cash it,

14   but they were -- because of the check at the time was 19.95 and

15   they wrote it to make it look like 595, but the "95" gave them

16   away because they would say who's going to write something for

17   some cabinet to be repaired and put 95 cents?

18         THE COURT:  Yeah.

19         PROSPECTIVE JUROR:  So I called the police and

20   everything like that and the person -- their IDs was also false

21   but --

22         THE COURT:  So they didn't catch anybody?

23         PROSPECTIVE JUROR:  I don't know.  I didn't follow up

24   on it.

25         THE COURT:  But you told the police, but as far as you

1    know, no one was arrested?

2            PROSPECTIVE JUROR:  Correct.

3            THE COURT:  Were you generally satisfied or

4    dissatisfied with the way you were treated?

5            PROSPECTIVE JUROR:  No, I was satisfied.  The police,

6    they did respond.

7            THE COURT:  What you know about that, would it make it

8    difficult for you to be fair and impartial in this case?

9            PROSPECTIVE JUROR:  No.

10           THE COURT:  Thank you very much.  Pass the microphone.

11           Anybody else in that row?

12           PROSPECTIVE JUROR:  My name is Therese Lambert, I've

13   been burglarized once in Cleveland and once here in Miami --

14   well, twice here in Miami.

15           THE COURT:  You didn't come from Cleveland with Donna

16   Shalala; did you?

17           PROSPECTIVE JUROR:  No, I didn't.  I was here before

18   Donna Shalala.

19           THE COURT:  Oh, good.

20           PROSPECTIVE JUROR:  I also was robbed at knifepoint and

21   a baseball bat in New York City with several other people.

22           THE COURT:  That's why you moved down here.  Good for

23   you.

24           Let me ask you, first of all, about the first one in

25   Cleveland.  Was the -- did you report it to the police?

1           PROSPECTIVE JUROR:  We did, yes.

2           THE COURT:  Was anyone arrested?

3           PROSPECTIVE JUROR:  No.

4           THE COURT:  Were you generally satisfied or

5    dissatisfied by the way you were treated by the police?

6           PROSPECTIVE JUROR:  I was satisfied.

7           THE COURT:  How about the second one in New York, did

8    you report it to police?

9           PROSPECTIVE JUROR:  Yes.

10          THE COURT:  Was anyone arrested?

11          PROSPECTIVE JUROR:  No.

12          THE COURT:  Were you generally satisfied or

13   dissatisfied by the way you were treated by police?

14          PROSPECTIVE JUROR:  I guess satisfied, they were

15   overwhelmed.

16          THE COURT:  You said there was a third one.

17          PROSPECTIVE JUROR:  I was robbed twice here in Miami,

18   stuff stolen out of our shed and bicycles, that sort of thing.

19          THE COURT:  Did you report it to police?

20          PROSPECTIVE JUROR:  Yes.

21          THE COURT:  On each occasion?

22          PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Was anyone arrested?

24          PROSPECTIVE JUROR:  No.

25          THE COURT:  Were you generally satisfied or

1    dissatisfied with the way you were treated?

2              PROSPECTIVE JUROR:  Yes, I guess so.

3              THE COURT:  Which?

4              PROSPECTIVE JUROR:  I was satisfied, yes.

5              THE COURT:  Is there anything about any of those

6    incidents or all of them -- is there another one?

7              PROSPECTIVE JUROR:  Yes.

8              THE COURT:  Tell me about it.

9              PROSPECTIVE JUROR:  Well, this was unreported.  In

10   college, I was raped.

11             THE COURT:  And so you did not report it to police?

12             PROSPECTIVE JUROR:  I did not, it was by someone I

13   knew.

14             THE COURT:  So it's not anything to be satisfied or

15   dissatisfied about, except maybe --

16             PROSPECTIVE JUROR:  There's always dissatisfaction when

17   you're raped.

18             THE COURT:  Well, I would suppose so, but the fact is

19   nobody in the system --

20             PROSPECTIVE JUROR:  Right.  I didn't mean to be

21   contentious.

22             THE COURT:  That's okay, you're allowed to be

23   contentious, there's no problem with that.

24             Is there anything about any of those incidents that

25   would make it difficult for or impossible for you to be fair

1    and impartial in this case?

2              PROSPECTIVE JUROR:  I don't think so.

3              THE COURT:  Thank you, ma'am.

4              PROSPECTIVE JUROR:  Thank you.

5              THE COURT:  All right.  Anybody in the front row over

6    here?  Or did I already do this section.  It's been awhile.

7              Let's ask again, the victim of a crime, you or

8    immediate family member, front row of the jury box?  There you

9    go.  Pass the microphone over, please.

10             PROSPECTIVE JUROR:  Alberto Leal.

11             Does it count, out of the country?

12             THE COURT:  Sure.  A crime is a crime.

13             PROSPECTIVE JUROR:   Several times in Venezuela.

14             THE COURT:  Face the lawyers, please.

15             PROSPECTIVE JUROR:  Burglarized, house broke in, guns

16   in my face; everything, but I'm alive.

17             THE COURT:  Was anyone arrested?

18             PROSPECTIVE JUROR:  No, in Venezuela, policeman, they

19   don't work very good.

20             THE COURT:  Okay.  So is there anything about that

21   incident that would make it difficult for you to be fair and

22   impartial here in this case?

23             PROSPECTIVE JUROR:  I don't think so.

24             THE COURT:  Thank you.

25             PROSPECTIVE JUROR:  And the other thing was -- you

1    know, some kind of kids stealing bikes in Naples, Florida, like

2    six or seven years ago, we went after that, we recovered the

3    bikes, the police came and everything, but, you know, we press

4    charges, but I don't know what happened with the case.

5            THE COURT:  Okay.

6            PROSPECTIVE JUROR:  That's it.

7            THE COURT:  All right.  Next?

8            PROSPECTIVE JUROR:  Alexi Richards.  Do I need to

9    stand?

10           THE COURT:  Please, and face the lawyers.

11           PROSPECTIVE JUROR:  My grandparents were killed in a

12   car accident when someone who had stolen a car hit them, so --

13           THE COURT:  Was it reported to police or it didn't need

14   to be, they were there, I'm sure.

15           PROSPECTIVE JUROR:  Yes.  The police was chasing the

16   kid who stole the car.

17           THE COURT:  Was anyone arrested?

18           PROSPECTIVE JUROR:  I believe so, yeah.  It was many

19   years.

20           THE COURT:  Is there anything about that incident that

21   would make it difficult or impossible for you to be fair and

22   impartial in this case?

23           PROSPECTIVE JUROR:  Well, from the recounting of the

24   stories that my dad gave me and not having parents because of

25   the crime, it's definitely had me to have a certain opinion

1    about people who break the law.

2         THE COURT:  Okay.  Thank you, ma'am.

3         Anybody else in that row?  Anybody in the back row?

4         There you go, pass the microphone.

5         PROSPECTIVE JUROR:  Sergio Herrera.  We've been

6    burglarized a couple of times, victim of bank fraud, credit

7    card, debit card, and that kind of stuff.

8         THE COURT:  How many times have you been victim of a

9    crime?

10        PROSPECTIVE JUROR:  I would say more than five.

11        THE COURT:  All right.  Well, let's start with the

12   first one.

13        PROSPECTIVE JUROR:  Okay.

14        THE COURT:  You said you were burglarized.

15        PROSPECTIVE JUROR:  The big one is the bank where they

16   got access to my bank card and they took about three or four

17   thousand dollars.

18        THE COURT:  All right.  Let's start with that one.

19        Did you report it to the police?

20        PROSPECTIVE JUROR:  No.

21        THE COURT:  Who did you report it to?

22        PROSPECTIVE JUROR:  The bank took care of it.

23        THE COURT:  Were you generally satisfied or

24   dissatisfied with the way you were treated?

25        PROSPECTIVE JUROR:  At the end of the day, I was

1    satisfied.

2          THE COURT:  Anything about that incident that would

3    make it difficult for you to be fair and impartial in this

4    case?

5          PROSPECTIVE JUROR:  No.

6          THE COURT:  Talk about the next one then.

7          PROSPECTIVE JUROR:  Burglary of the home, burglary of

8    the business, broken into the vehicle several times, those were

9    all reported to police, insurance paid, and that kind of stuff.

10          THE COURT:  Okay.  All right.  Were you generally

11    satisfied or dissatisfied with the way you were treated?

12          PROSPECTIVE JUROR:  The way I was treated, I was

13    satisfied.

14          THE COURT:  Anything about any of those incidents or

15    any others that you haven't mentioned that would make it

16    difficult or impossible to be fair and impartial in this case?

17          PROSPECTIVE JUROR:  No.

18          THE COURT:  Thank you, sir.  Pass the microphone, I

19    think there's somebody there.

20          Yes, sir.  Tell us your name.

21          PROSPECTIVE JUROR:  Gerardo Pesina.  I was broken in

22    twice at my residence where I have been living for 31 years.

23          THE COURT:  Did you report it to police?

24          PROSPECTIVE JUROR:  Yes, sir.

25          THE COURT:  Was anyone arrested on either occasion?

1           PROSPECTIVE JUROR:  No.

2           THE COURT:  Were you generally satisfied or

3    dissatisfied with the way you were treated?

4           PROSPECTIVE JUROR:  I was satisfied, yes, we have an

5    alarm and they were there, like, within 10, 15 minutes.  One of

6    them -- I was out of town -- but they were able to get there,

7    but nobody got arrested, so --

8           THE COURT:  Is there anything about either of those

9    incidents that would make it difficult or impossible for you to

10   be fair and impartial in this case?

11          PROSPECTIVE JUROR:  No, sir.

12          THE COURT:  Thank you.  Anybody else in that row?  Hold

13   onto the microphone for a second, just hold onto it because the

14   next question a simple one.

15          We're going to ask, starting with the back row, anybody

16   that has as answer, and if you've already talked to us about

17   it, you don't need to repeat it, have you or any family member

18   or close friend ever been accused of a crime.

19          Anybody?  All right.  Pass the microphone that way.

20          Yes, ma'am.  Please tell us your name.

21          PROSPECTIVE JUROR:  Samantha Godfrey.

22          THE COURT:  Who was it?

23          PROSPECTIVE JUROR:  My only uncle served --

24          THE COURT:  Can you hold that microphone up and speak

25   up?

1            PROSPECTIVE JUROR:  Sorry.  My only uncle served ten

2    years in federal prison for counterfeiting bills.

3            THE COURT:  All right.  Okay.  Thank you, ma'am.

4    Anybody else in that row?  Tell us your name again.

5            PROSPECTIVE JUROR:  Gerardo Pesina.  I have a few

6    cousins and a few nephews that have been convicted for drug

7    trafficking, and the nephew is doing ten years, the cousin did

8    about three years.

9            THE COURT:  All right.  And that's it for any member of

10   your immediate family or a close friend?

11           PROSPECTIVE JUROR:  That's it.

12           THE COURT:  Pass the microphone to your left, please.

13   Yes, ma'am, tell us your name again.

14           PROSPECTIVE JUROR:  Leah Roper.

15           THE COURT:  What's your answer?

16           PROSPECTIVE JUROR:  I had a father who was arrested; he

17   was preaching on the street and the cops mentioned to him that

18   he couldn't, I guess, preach on the streets, and he actually

19   had a guitar on his back and when the cop tried to detain him

20   the belt of the guitar was choking him so he tried to remove it

21   but the policeman mentioned that he was trying to fight him

22   back, so he was arrested for that.

23           THE COURT:  Okay.  Anything about that incident that

24   would make it difficult or impartial for you to be fair and

25   impartial in this case?

1          PROSPECTIVE JUROR:  I would say yes, because I really

2     hated how they treated him.

3          THE COURT:  Well, that case isn't before us.

4          PROSPECTIVE JUROR:  I am aware of that.

5          THE COURT:  And it isn't likely to be a case involving

6     any sort of even alleged police brutality, I don't think.  I

7     don't know the entire case, but I don't think that we're

8     talking about any type of confrontation or anything of the

9     sort, but do you think that would mess up your ability to be

10    fair and impartial even when it doesn't involve local police

11    officers?

12         PROSPECTIVE JUROR:  Of course, I don't know the full

13    access of what was actually taking place regarding this case

14    here.  I know you mentioned to me that law is not involved with

15    this case, but -- if that's the case, then no, it would not

16    affect my decision.

17         THE COURT:  Okay.  Thank you, ma'am.

18         Anybody else in that back row?

19         PROSPECTIVE JUROR:  My name is Joshua Cardona.

20         THE COURT:  Yes, sir.

21         PROSPECTIVE JUROR:  My uncle was charged with fraud,

22    insurance fraud and something else.  Honestly, I don't remember

23    the exact nature of it.

24         THE COURT:  What happened as a result of his being

25    charged?

 1          PROSPECTIVE JUROR:  He was found guilty and actually

 2   deported back to the Dominican Republic.

 3          THE COURT:  Thank you, sir.  Anybody else?  Anybody in

 4   the front row?

 5          Anybody in the outside row?  There you go.

 6          PROSPECTIVE JUROR:  Deborah Cross-Williams.  I have two

 7   cases.  My niece served a year and a day in Tallahassee for

 8   check fraud.  And then I have my -- right now, I have my

 9   granddaughter's mother is in jail now, serving three years and

10   a day for credit card fraud, check fraud, grand theft auto,

11   so --

12          THE COURT:  All right.  Thank you, ma'am.  Anybody else

13   in the front row here?  All right.  Front row of the audience?

14          Anybody there?

15          PROSPECTIVE JUROR:  Therese Lambert.  Many years ago in

16   college my brother was arrested for ostensibly growing a few

17   plants of marijuana in a public park.

18          THE COURT:  Okay.  Anything else?

19          PROSPECTIVE JUROR:  My daughter, a few years ago, was

20   arrested for drug paraphernalia.  That's it.

21          THE COURT:  Anything else?

22          Pass the microphone to your left, please.

23          Hello.

24          PROSPECTIVE JUROR:   Hi.  Milagros Corvo.

25          THE COURT:  Yes, ma'am.

1              PROSPECTIVE JUROR:  I currently have an uncle who's

2     serving multiple life sentences for murder.

3              THE COURT:  Where?  In what system is he?

4              Was it the state system?

5              PROSPECTIVE JUROR:  Here, in Florida.

6              THE COURT:  Florida, the state system.  Where was he

7     convicted?

8              PROSPECTIVE JUROR:  I'm not sure if it was here or in

9     Illinois.  I believe it was Illinois.

10             THE COURT:  If it was in Illinois, he wouldn't be in

11    Florida.

12             PROSPECTIVE JUROR:  Okay.  Florida, I guess.

13             THE COURT:  I would suspect.  I don't think they have a

14    lot of that.

15             PROSPECTIVE JUROR:  It was about 40 years ago.  He's

16    still there.

17             THE COURT:  If you put him in jail, you've got to pay

18    for his imprisonment.  They don't get to send him to another

19    state, usually.  Okay.  And what is his name?

20             PROSPECTIVE JUROR:  Juan Abreu Ramos.

21             THE COURT:  All right.  Thank you, ma'am.

22             Anybody else in that row?

23             PROSPECTIVE JUROR:  I'm not done.  Also, I was accused

24    of drug trafficking.

25             THE COURT:  Were you arrested?

 1              PROSPECTIVE JUROR:  Yes.

 2              THE COURT:  And what happened?

 3              PROSPECTIVE JUROR:  I -- the case ended with a withhold

 4     adjudication.

 5              THE COURT:  In the state system?

 6              PROSPECTIVE JUROR:  Yes.

 7              THE COURT:  Was any sentence given?

 8              PROSPECTIVE JUROR:  Probation.

 9              THE COURT:  How long ago was this?

10              PROSPECTIVE JUROR:  Two-and-a-half-years ago.

11              THE COURT:  And was it in the state system over by

12     Jackson Hospital?

13              PROSPECTIVE JUROR:  Yes.  Well, it was -- it started

14     three-and-a-half years ago, I was off probation two-and-a-half

15     years ago.

16              THE COURT:  Thank you, ma'am.  Pass the microphone to

17     your left.  Anybody else in that row?

18              PROSPECTIVE JUROR:  My name is Chris Morales.

19              THE COURT:   Yes, sir.

20              PROSPECTIVE JUROR:  I was arrested for a DUI.

21              THE COURT:  That's not criminal.  But when was that,

22     how long ago?

23              PROSPECTIVE JUROR:  Last year.

24              THE COURT:  That's all we needed to know.  Anybody in

25     the next row back?

```
 1              PROSPECTIVE JUROR:  My ex-coworker --

 2              THE COURT:  We don't know who you are.

 3              PROSPECTIVE JUROR:  Miriam Flora Quintero.

 4              THE COURT:  Okay.

 5              PROSPECTIVE JUROR:  My ex-coworker, she was arrested,

 6    they came to get her for some Medicaid fraud, depositing checks

 7    for clinics.

 8              THE COURT:  This is you, family member or close friend.

 9              PROSPECTIVE JUROR:  My coworker.

10              THE COURT:  I know.

11              PROSPECTIVE JUROR:  Friend.

12              THE COURT:  If you're telling me she's a close friend,

13    that's fine.

14              PROSPECTIVE JUROR:  Well --

15              THE COURT:  No, I'm not saying you shouldn't tell me.

16    I'm just saying --

17              PROSPECTIVE JUROR:  I saw her the other day.  She came

18    by.

19              THE COURT:  That's close.  If you want her to be your

20    close friend, you've got it.

21              PROSPECTIVE JUROR:  No, no, no, I haven't seen her in a

22    long time.  But I'm just saying, you know, you said whoever I

23    know.

24              THE COURT:  Anything else?  Anybody else?  Yes, ma'am.

25              PROSPECTIVE JUROR:  Ynes Pedroso.
```

1            THE COURT:  Yes, Ms. Pedroso.

2            PROSPECTIVE JUROR:  I have an aunt who just finished

3    serving 15 years for trafficking.  I have a deceased

4    grandfather who did 20 years for trafficking.  I have another

5    grandfather who did 15 years for trafficking, and that's it.

6            THE COURT:  Okay.  Thank you very much, ma'am.

7            Yes, sir.

8            PROSPECTIVE JUROR:  Fred Deno.

9            THE COURT:  Yes, sir.

10           PROSPECTIVE JUROR:  How far do we go back?

11           THE COURT:  Forever.

12           PROSPECTIVE JUROR:  Forever?

13           THE COURT:  Yep.  The question isn't in the last few

14   years, the question is you or any family member ever been

15   accused of a crime.

16           PROSPECTIVE JUROR:  I've been accused of assault on a

17   police officer.

18           THE COURT:  Okay.  When was that?

19           PROSPECTIVE JUROR:  Long time ago.  Seventy -- I don't

20   remember, '78 -- I don't remember, a long time ago.  Okay.

21           THE COURT:  Okay.

22           PROSPECTIVE JUROR:  It got thrown out, I had a hundred

23   dollar fine.  I was convicted for interstate transportation of

24   marijuana, served three years.

25           I don't know, my brother-in-law served ten, my other

1    brother-in-law served three for smuggling.  My cousin's in for

2    life for -- he's the one who escaped from San Quentin, he was

3    the old-timer gang, seen the movie on, so he's a bad streak,

4    so...

5            THE COURT:  Okay.  All right.  Thank you, sir.

6            PROSPECTIVE JUROR:  There's a few more out there.

7            THE COURT:  Well, wait, if there's a few more, we want

8    to hear about it.

9            PROSPECTIVE JUROR:  I can't remember right now.

10           THE COURT:  Okay.  Thank you.

11           PROSPECTIVE JUROR:  I'm Eric Barrios.  I was once

12   accused of being in a park after dark, it got dropped because

13   it was ridiculous.  But I forgot to mention in the previous

14   question, that one time all the money got stolen from my bank

15   account.

16           THE COURT:  Okay.

17           PROSPECTIVE JUROR:  It took a long time to get the

18   money back.

19           THE COURT:  Oh, it always does.  They're really good at

20   taking money but they're hard to give money back.

21           PROSPECTIVE JUROR:  Yes, definitely.  I was pretty

22   upset about that, about that money taken from my bank account.

23           THE COURT:  All right.  Anything else?  Thank you.

24   Anybody else?  Next?

25           PROSPECTIVE JUROR:  Ross Holdahl.

1          THE COURT:  Yes, sir.

2          PROSPECTIVE JUROR:  My best friend was convicted of

3   bank fraud.

4          THE COURT:  Okay.  And how long ago was that?

5          PROSPECTIVE JUROR:  One year ago.

6          THE COURT:  Okay.  What was the nature of the bank

7   fraud?  There's a lot of different ways of bank fraud, if you

8   know.

9          PROSPECTIVE JUROR:  Well, I don't know all the details,

10  but they borrowed money, they couldn't pay it back, it was a

11  real estate development transaction and him and his wife went

12  to jail for a year.

13         THE COURT:  What was the name of your best friend, so

14  we know?

15         PROSPECTIVE JUROR:  Phillip Carlson.

16         THE COURT:  What was the name of the bank, do you know?

17         PROSPECTIVE JUROR:  It was in Minnesota.

18         THE COURT:  Thank you very much.  Anybody else?

19         PROSPECTIVE JUROR:  Wendy Morhaim.

20         THE COURT:  Yes, ma'am.

21         PROSPECTIVE JUROR:  My brother-in-law went to federal

22  prison for mail fraud.

23         THE COURT:  How long ago?

24         PROSPECTIVE JUROR:  Maybe ten years, at the most.

25         THE COURT:  And where was this?

1          PROSPECTIVE JUROR:  Here.

2          THE COURT:  Here, in Miami?  You know, federal is

3    everywhere, so that's why I asked you.

4          PROSPECTIVE JUROR:  I don't know what prison.  I never

5    went to see him.

6          THE COURT:  It doesn't matter what prison.  South

7    Florida is the general area that he was convicted in?

8          PROSPECTIVE JUROR:  Oh, Miami-Dade.

9          THE COURT:  Okay.  That's why I'm asking, it was

10   federal?

11         PROSPECTIVE JUROR:  Yeah.

12         THE COURT:  And you say about ten years ago.  What was

13   his name?

14         PROSPECTIVE JUROR:  Bichachi, Moises Bichachi.

15         THE COURT:  How about anything else?

16         PROSPECTIVE JUROR:  No.

17         THE COURT:  Anybody else back there?

18         PROSPECTIVE JUROR:  Jean Rubio.  I had a second cousin,

19   that she served three years for several charges, battery and,

20   you know, a couple things like that.

21         THE COURT:  Okay.  When and where?

22         PROSPECTIVE JUROR:  Dade County, about five years ago.

23         THE COURT:  State system?

24         PROSPECTIVE JUROR:  Yes, sir.

25         THE COURT:  That's the only answer you have?

```
 1              PROSPECTIVE JUROR:  Yes, sir.

 2              THE COURT:  Thank you very much.

 3              All right.  This question is a simple one and it

 4    usually will be dealt with before you get here at this level

 5    but I always have to ask it because once in awhile it will come

 6    up, and that is:

 7              There are certain religions that prohibit you from

 8    sitting in judgment of another person or deliberating with

 9    others; and do any of you belong to any of those religions or

10    have those moral beliefs that do not permit you to sit in

11    judgment of another person or deliberate with others, any of

12    you -- if so, this is a better time to know about it than when

13    you're back trying to deliberate with other people in judgment

14    of other people, okay, it's not a good time to start finding

15    out about it.

16              You know what we're going to do?  We're going to break

17    for the day and come back tomorrow morning at 9:30 and continue

18    this and get it done tomorrow.

19              We will be done in the morning for sure.

20              Please do not discuss what's going on with anyone else.

21    Please come back tomorrow and come -- Wanda, do you want them

22    to the jury pool or do you want them to come here?

23              Wanda, where do you want them?

24              COURTROOM DEPUTY:  I'm sorry, jury pool.

25              THE COURT:  Where's that?
```

1          COURTROOM DEPUTY:  Fifth floor, and I will go get them.

2          THE COURT:  Fifth floor, and Wanda will come get you

3     and she'll put you in the same order that you're in now; and

4     then we'll have you back here, because, like I say, she's

5     organized, I'm not.  If she puts you in a different place, I

6     would be calling you different names and getting all mixed up.

7          PROSPECTIVE JUROR:  What time?

8          THE COURT:  Hold on a second.

9          Can I see the lawyers up here on the side?

10         (Sidebar discussion held as follows:)

11         THE COURT:  Juror Number 23, Leah Roper, I have no

12    idea.

13         MR. DUFFY:  Her husband's a pilot, he's leaving

14    tomorrow morning on a trip and she was planning on going with

15    him and coming back Thursday.  I'll do whatever you guys want.

16    She's got enough.

17         MR. RODRIGUEZ:  She had some apprehensions.

18         THE COURT:  I don't think she can pass.

19         MR. RODRIGUEZ:  I was going to move to strike her for

20    cause.

21         THE COURT:  I would have struck.  She said she couldn't

22    be fair and was being obstinate about it; I was afraid she

23    might have wanted to go out of town.

24         MR. WATTS-FITZGERALD:  Strike her out on the --

25         THE COURT:  No, I will strike her for cause, okay.

1           MR. RODRIGUEZ:  We talked to the Government.  So we

2    anticipate evidence tomorrow, so we've asked for their

3    witnesses and exhibits for tomorrow, and we will give them our

4    witnesses for tomorrow, too, so they will not be bothered.  I'm

5    not bothered.  I enjoy nitpicking and --

6           MR. DUFFY:  Your Honor, I'm not sure you told the jury

7    what time to come back tomorrow.

8           MR. WATTS-FITZGERALD:  I thought you said 9:30, but

9    they were joking in back.

10          THE COURT:  I did say 9:30.

11      (Sidebar concluded, proceedings continued in open court:)

12          THE COURT:  Okay.  We're gone until 9:30 tomorrow

13   morning.  Please remember, do not discuss what's going on with

14   anybody else, it's nobody else's business.

15          Ms. Roper, stay and talk to Wanda before you leave; and

16   we will be here tomorrow morning at 9:30.  If there is any

17   doubt that I said 9:30, 9:30 tomorrow morning, not 9:40, not

18   9:45, not 10:00; 9:30.  Downstairs to the fifth floor, Wanda

19   will come get you, okay.

20          COURT SECURITY OFFICER:  All rise for the jurors.

21          THE COURT:  All right, we will be in recess.

22          (Proceedings adjourned at 5:08 p.m.)

23

24

25

```
 1                    C E R T I F I C A T E

 2
          I hereby certify that the foregoing is an
 3
     accurate transcription of the proceedings in the
 4
     above-entitled matter.
 5

 6
          April 24th, 2016      /s/Glenda M. Powers_____
 7          DATE                 GLENDA M. POWERS, RPR, CRR, FPR
                                 Official Federal Court Reporter
 8                               United States District Court
                                 400 North Miami Avenue, 08S33
 9                               Miami, Florida 33128

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```